## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JOSEPHAT HENRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | CIVIL NO. 1999/0036 |
| ST. CROIX ALUMINA, LLC, ALCOA | ) | |
| INC., and GLENCORE, LTD., f/k/a | ) | |
| CLARENDON, LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————— | ) | |

## <u>MEMORANDUM OPINION</u>

FINCH, J.

THIS MATTER comes before the Court on Defendant Glencore, Ltd.'s, f/k/a Clarendon, Ltd. (hereinafter "Glencore") Motion for Summary Judgment and Plaintiffs' Motion to File Supplemental Affidavit in Further Support of Plaintiffs Opposition to the Motion For Summary Judgment.  On June 20, 2006, this Court heard oral arguments regarding Glencore's motion for summary judgment, at which time the Court took these matters under advisement.  After careful consideration and review, the Court issues the following ruling.

### I.       FACTUAL BACKGROUND

The facts of this case are well known to the parties.  Therefore, the Court will recount only those facts relevant to this motion.

Plaintiffs are class representatives suing on behalf of themselves and other similarly situated individuals who resided, worked, and/or owned property downwind from the former St. Croix

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 2

Alumina Refinery located on St. Croix, U.S. Virgin Islands.  Defendant Glencore is a company

formed in Switzerland and is in the business of commodity trading.  Prusak Aff. ¶ 2, Dec. 8, 2003;

Prusak Depo. 17:22-24, Feb. 22, 2002.  Glencore is also the parent company of Clarendon Holdings,

which is the parent company of VIALCO Holdings, Ltd., which in turn was the parent company of

VIALCO.  Prusak Aff.  ¶ 3.  In 1995, VIALCO Holdings sold its interest in VIALCO to a company

called Century Chartering Company.  *Id*. at ¶ 6.  Century Chartering Co. is not affiliated with

Glencore or any of its subsidiaries.  *Id.*  Under this new ownership, VIALCO then sold its interest in

the alumina refinery to St. Croix Alumina, LLC.  *See* Acquisition Agreement between VIALCO and

St. Croix Alumina, LLC dated July 19, 1995.  St. Croix Alumina and ALCOA, a parent company of

St. Croix Alumina, are the two other defendants in this case.

  As part of its commodity trading business, Glencore supplied VIALCO and St. Croix

Alumina with bauxite during the time that each company operated the aluminum refinery.  Prusak

Depo. 120: 10-23.  Bauxite is used as part of the refining process to form aluminum.  A by-product

of this refining process is red bauxite mud.  This red mud was stored outside of the facility in large

piles.

  On September 21, 1998, Hurricane Georges struck the island of St. Croix and blew portions

of the red mud piles into the surrounding neighborhoods.  At the time Hurricane Georges hit St.

Croix, St. Croix Alumina was the owner and operator of the refinery.  Plaintiffs' allege in their Third

Amended Complaint that they and their property have been harmed by Defendants' failure to

properly contain the red bauxite dust and red mud.  Specifically, with respect to Glencore, Plaintiffs

allege that Glencore owned the alumina refinery, shipped bauxite to VIALCO (Third Am. Compl. ¶

13) and oversaw its production into alumina (Third Am. Compl. ¶ 14).  Plaintiffs further allege that Glencore "failed to correctly control the storage and containment of the bauxite and its manufacturing process by-products, such that persons adjacent to the Refinery and down wind from the Refinery were exposed to contaminants" (Third Am. Compl. ¶ 15) and that Glencore "failed to properly store, contain and/or remove the 'red dust' but instead left it in piles on its property" (Compl. ¶ 18).

As a result of these allegations, Plaintiffs assert the following Counts against Glencore: (1) maintaining an abnormally dangerous condition (count I); (2) nuisance per se (count II); (3) public nuisance (count III); (4) private nuisance (count IV); (5) intentional infliction of emotional distress (count VI); (6) negligent infliction of emotional distress (count VII); (7) negligence (count VIII); and (8) punitive damages (count IX).

## II.     DISCUSSION

### A.     PLAINTIFFS' MOTION TO FILE SUPPLEMENTAL AFFIDAVITS

Before turning to the merits of Glencore's motion for summary judgment, the Court must address Plaintiffs' motion to file supplemental affidavits in support of their opposition to Glencore's motion.  Plaintiffs seek the admission of affidavits from three individuals: 1) Charles Jaquays; 2) Claudette Andersen; and 3) Paul Arnold.   Glencore has filed objections to the admission of these affidavits contending that they do not comply with the requirements of Rule 56(e).

Affidavits submitted in support of or in opposition to a motion for summary judgment must comply with Rule 56(e) of the Federal Rules of Civil Procedure, which provides, in relevant part:

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 4

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Fed. R. Civ. P. 56(e). "The policy behind Rule 56(e) is to allow the affidavit to contain all evidentiary matters which, if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony." *Paton v. La Prade*, 524 F.2d 862, 871 (3d Cir. 1975) (citing 6 J. Moore, Federal Practice P. 56.22(1), at 2812 (2d ed. 1974)). With this standard in mind, the Court will determine the admissibility of the affidavits.

## 1.     Affidavits of Charles Jaquays

Plaintiffs submitted three separate affidavits from Charles Jaquays dated January 22, 2005, June 25, 2005, and July 1, 2006. The Court takes notice that the June 25, 2005 affidavit was submitted after Glencore filed objections to the January 22, 2005 affidavit and, similarly, the July 1, 2006 affidavit was submitted after Glencore filed objections to the June 25, 2006. Glencore contends that that these affidavits do not meet the requirements of Rule 56(e). The Court will address each these affidavits in reverse chronological order.

### a.     Affidavit of Charles Jaquays Dated July 1, 2006

Plaintiffs submitted this affidavit on July 21, 2006, approximately one month after this Court held oral arguments on the motion for summary judgment on June 20, 2006. The Court will not allow this affidavit and will strike it in its entirety.

The Federal Rules of Civil Procedure provides that an "adverse party prior to the day of the

hearing may serve opposing affidavits." Fed. R. Civ. P. 56(c). Similarly, Rule 6(d) provides "when a motion is supported by affidavit, the affidavit shall be served with the motion…opposing affidavits may be served not later than 1 day before the hearing unless the court permits them to be served at some other time." A court has discretion to allow an untimely filed affidavit under Rule 6 "for cause shown." *Lujan v. Natn'l Wildlife Federation*, 497 U.S. 871, 895-97 (1990). Plaintiffs have not shown cause nor have they stated why this affidavit was filed one year after this Court held oral arguments on the motion for summary judgment. The Court will, therefore, strike this affidavit in its entirety.

> **b.      Affidavit of Charles Jaquays Dated June 25, 2005[1]**

The Court will also not consider the Jaquays affidavit dated June 25, 2005. "Rule 56(e) mandates that affidavits submitted in opposition to a motion for summary judgment must state that they are based upon 'personal knowledge' of the affiant." *Lowe v. Philadelphia Newspapers, Inc.*, 594 F.Supp. 123, 126 (E.D. Pa. 1984). Affidavits that do not state that it was based on personal knowledge must be stricken. *See Kern v. Tri-State Ins. Co.*, 386 F.2d 754, 756 (8th Cir. 1967) (striking physician's affidavit because it did not state that it was based on personal knowledge). Jacquays' affidavit does not state that it was based on personal knowledge, and thus, the Court will strike this affidavit in its entirety.

> **c.      Affidavit of Charles Jaquays Dated January 22, 2005**

---

[1] It appears that Plaintiffs initially failed to file this affidavit with the Court as the Court was unable to find this affidavit in the record. However, Glencore was in fact served with this affidavit and was given full opportunity to file written objections and also noted its objections during oral argument. On April 19, 2007, Plaintiffs filed a Notice with this Court

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 6

Having struck the June 25, 2005 and the July 20, 2006 affidavits, the Court is now left with Jaquays' affidavit that was sworn to on January 22, 2005 and filed with this Court on January 25, 2005. Glencore launches a volley of objections to the paragraphs in these affidavits. The Court also takes notice that Plaintiffs submitted the June 25, 2005 affidavit in an attempt to cure the deficiencies listed in the January 22, 2005 affidavit.

Glencore generally objects to the admission of this affidavit because it was not made under "penalty of perjury," does not appear to have been properly signed by a notary public, and does not state facts within Jacquays' "personal knowledge." Def.'s Objections to the Unsworn Statement of Charles Jacquays at p. 2 (Docket No. 817).

In paragraph 1 of his affidavit, Jacquays states that "I make this affidavit of my own knowledge and belief." It is a mandatory requirement that affidavits submitted in support of, or in opposition to, a motion for summary judgment be made on "personal knowledge". *See* Rule 56(e) ("supporting and opposing affidavits shall be made on personal knowledge"); *Homebingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1238 (S.D. Ala. 2006) ("[a]n affidavit may only be considered to the extent that it is based on personal knowledge"); *Lowe v. Philadelphia Newspapers, Inc.*, 594 F.Supp 123, 126 (E.D. Pa. 1984) ("Rule 56(e) mandates that affidavits submitted in opposition to a motion for summary judgment must state that they are based upon 'personal knowledge' of the affiant."). Courts have held that affidavits based on an affiant's "knowledge and belief" do not meet the requirements of Rule 56(e). *See Malek v. Martin Marietta Corp.*, 859 F.

---

informing it of the inadvertent filing. The parties proceeded as if the affidavit was filed in a timely manner. Thus, finding no prejudice to Glencore, the Court will consider this affidavit to be timely filed.

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 7

Supp. 458, 460-61 (D. Kan. 1994) (holding affidavit stating statements "are true and correct to the best of my knowledge and belief" not in compliance with Rule 56(e)).  Without this mandatory language, courts will not be able to ascertain whether the statements were made on personal knowledge or whether the statements were made on speculation or conjecture.  The Court is unable to determine whether the statements made in this affidavit are based the affiant's personal knowledge or his belief.  For this reason, the Court will strike Jacquays' affidavit dated January 22, 2005.

**2.      Affidavit of Claudette Anderson**

On June 28, 2005, Plaintiffs' filed an affidavit of Claudette Anderson ("Anderson Affidavit") in support of their opposition to Glencore's motion for summary judgment.  This affidavit contains eight numbered paragraphs with the first paragraph stating "I make this affidavit of my own personal knowledge and belief."  *See* Anderson Aff. ¶ 1.  This Court does not favor this language because now it must determine which statements were based on the affiant's personal knowledge and which statements were based on her belief.  Nonetheless, after reviewing this affidavit along with Glencore's objections, the Court will strike paragraphs 3, and 8, in its entirety and certain portions of paragraph 6 as not being in compliance with Rule 56(e).

In paragraph 3 of her affidavit, Anderson states "Clarendon who sold to Glencore was the owner of the refinery.  I know that from the documents that I reviewed in my position."  Anderson Aff. ¶ 3.  Rule 56(e) "requires a party who files an affidavit to 'attach thereto and serve therewith' sworn or certified copies of all papers referred to in the affidavit."  *Petersen v. United States*, 694

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 8

F.2d 943, 945 (3d Cir. 1982). Plaintiffs have failed to attach the documents that purport to be the basis of Anderson's knowledge that Clarendon was sold to Glencore or that Glencore was the owner of the refinery. Similarly, in paragraph 8, Anderson makes statements referring to provisions in a contract purportedly made by Glencore without attaching the contract. Further, in paragraph 6, Anderson also references Glencore's ownership of the refinery similar to the statements made in paragraph 3. These statements are also inadmissible due to Plaintiffs' failure to attach the required documents. In addition, the statement in paragraph 6 stating "They were hands on management" will also be stricken because it is a conclusory statement and is improper in an affidavit. *See U.S. v John-Manville Corp.*, 245 F.Supp. 74, 85 n. 13 (E.D. Pa. 1965) (stating affidavits that contain facts which are intermingled with conclusions of law, court may disregard conclusions of law and consider the remainder of the affidavit). The Court finds that the remaining paragraphs of the Anderson Affidavit comply with Rule 56(e). *See Homebingo Network, Inc. v. Chayevsky*, 2006 WL 1047252, *3 (S.D. Ala. 2006) (opining that when affidavit contains inadmissible evidence, court may strike inadmissible portions and consider admissible portions of affidavit).

**3.      Affidavit of Paul Arnold**

The affidavit of Paul Arnold was filed on September 15, 2005 and contains eight numbered paragraphs. The first paragraph contains the same disfavored language as the Andersen affidavit stating "I make this affidavit of my own personal knowledge and belief". *See* Arnold Aff. ¶ 1. Nonetheless, after consideration of Glencore's objections to this affidavit, the Court will strike paragraphs 4, 7, and 8 for the reasons stated below.

Paragraph 4 of the Arnold affidavit states that "Clarendon contracted with a company called Ormet who then was the overall manager of human resources issues and whose approval we had to get for human resource issues." Again, Plaintiffs have not attached a certified copy of this contract as is required by Rule 56(e). The Court will, therefore, strike this paragraph in the affidavit.

The Court will also strike paragraphs 7 and 8 due to the fact these statements are not made with personal knowledge. Each of these paragraphs begins with the phrase "It is my understanding". Such a preface does not comply with Rule 56(e). *See Cohen v. Kurtzman*, 45 F.Supp.2d 423, 432 (D.N.J. 1999) (statements which constitute the opinion or belief of the affiant, or matters outside the personal knowledge of the affiant, are not "competent" evidence). The Court finds that the remaining paragraphs of this affidavit are in compliance with Rule 56(e).

## B.  GLENCORE'S MOTION FOR SUMMARY JUDGMENT

A party is entitled to summary judgment if there exists "no genuine issue of material fact and…the moving party is entitled to judgment as a latter of law." Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232, 237 (3d Cir. 2007). The party opposing a motion for

summary judgment must present affirmative evidence, whether direct or circumstantial, to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account. *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). When a nonmoving party bears burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that nonmoving party's evidence is insufficient to carry that burden. *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1988). In deciding a motion for summary judgment, a court must view the evidence presented in light of what substantive evidentiary burden will be at trial. *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 129 (3d Cir. 2005).

Glencore files this motion for summary judgment based on three arguments. First, Glencore argues that it cannot be held liable for Plaintiffs' injuries because they never owned the aluminum refinery. Second, Glencore argues that although it is a thrice-removed parent company of VIALCO, Glencore cannot be held liable because VIALCO, as a former owner of the refinery, cannot be held liable because it sold the property three years before hurricane Georges struck the island. Third, Glencore argues that even if VIALCO is subject to liability for Plaintiffs' injuries, Glencore does not share in that liability because Glencore is a separate legal entity apart from VIALCO. While addressing each of Glencore's arguments, Plaintiffs posit several legal theories that suggest that Glencore can be subject to liability separate and apart from ownership of the land.

## 1.       Whether Glencore Can Be Held Liable Despite Never Owning the Property

Glencore first argues that it cannot be held liable for Plaintiffs' injuries from the blowing of the red mud piles into the surrounding neighborhoods because Glencore never owned or operated the

refinery.  Glencore reiterates that it is a thrice-removed parent company of VIALCO and was the commodities broker that supplied VIALCO with the bauxite that VIALCO used to produce aluminum.  Thus, as Glencore argues, if it never owned or operated the refinery, Glencore never owed any duty to Plaintiffs and cannot be held liable for any injuries that they might have sustained from the blowing of the red mud piles due to Hurricane Georges.

In an attempt to establish that Glencore played a role in operating the refinery while under VIALCO's ownership, Plaintiffs cite to a report by Ormet Corporation and a purported press release.  As explained in further detail below, these documents are inadmissible due to the fact that they are not properly authenticated.  *See* Section II(B)(4)(c), *infra*.  Thus, the Court finds that Plaintiffs have failed to provide sufficient evidence that create genuine issues of material fact that Glencore operated the refinery.

**2.      Whether VIALCO Can Be Held Liable for Plaintiffs' Injuries**

Glencore also argues that VIALCO cannot be held liable for Plaintiffs' injuries because VIALCO sold the property in 1995, three years before Hurricane Georges hit the island in 1998.  Glencore correctly points out that, as a general rule, a vendor of land is not liable for physical harm caused to a third party due to a dangerous condition on the land after a buyer takes possession of the land.  Restatement (Second) of Torts § 352.[2]  However, as Plaintiffs correctly point out, liability based on a nuisance claim can be maintained against a defendant even if the defendant sold the property.  Section 373 of Restatement (Second) of Torts provide:

---

[2] Absent local law to the contrary, the restatement provide the substantive law of the Virgin Islands.  *See* 1 V.I.C. § 4.

§ 373 – Dangerous Conditions Created Before Vendor Transfers Possession

(1) A vendor of land who has created or negligently permitted to remain on the land a structure or other artificial condition which involves an unreasonable risk of harm to others outside of the land, because of it plan, construction, location, disrepair, or otherwise, is subject to liability to such persons for physical harm caused by the condition after his vendee has taken possession of the land.

(2) If the vendor has created the condition, or has actively concealed it from the vendee, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Similarly, section 840A provides:

§ 840A – Continuing Liability After Transfer Of Land

(1) A vendor or lessor of land upon which there is a condition involving a nuisance for which he would be subject to liability if he continued in possession is subject to liability for the continuation of the nuisance after he transfers the land.

(2) If the vendor or lessor has created the condition or has actively concealed it from the vendee or lessee the liability stated in Subsection (1) continues until the vendee or lessee discovers the condition and has reasonable opportunity to abate it. Otherwise the liability continues only until the vendee or lessee has had reasonable opportunity to discover the condition and abate it.

Both of these sections establish that a seller of land can still be held liable for a nuisance on

the premises even after the land has been sold until the purchaser has discovered the condition and

has had a reasonable opportunity to abate it.  *See* Restatement (2d) of Torts § 373, cmt. c. (stating

section 840A parallels section 373 which premises liability for physical harm resulting from

conditions on the land after transfer); *see also West v. CSX Transp., Inc.,* 498 S.E.2d 67, 70-71 (Ga.

App. 1988) (one who creates a nuisance is liable even if it has sold property containing the

nuisance); *Minaya v. Massachusetts Credit Union Share Ins.*, 467 N.E.2d 874, 876 (Mass. 1984) (opining transferor of land may remain liable for the continuation of a nuisance after he transfers the land until new titleholder has had reasonable opportunity to correct the nuisance).

Glencore contends that sections 373 and 840A do not apply in this case because "there was no structure or other artificial condition involving an 'unreasonable risk of harm to others outside of the land' because of its plan, construction, location, disrepair, or otherwise." Def.'s Mot. Summ. J. at 23. The summary judgment evidence demonstrates that VIALCO was provided with Material Safety Data Sheets (MSDS) that indicated that bauxite is dangerous if inhaled. The evidence also demonstrates that the aluminum plant was in a hurricane zone and the possibility of the red mud piles blowing into the surrounding neighborhoods posed a significant danger to the property owners. Thus, under sections 373 and 840A, there is a genuine issue of material fact regarding whether the blowing of the red mud into the surrounding neighborhoods posed an unreasonable risk of harm to Plaintiffs.

Glencore also argues that even if there was a structure that posed an unreasonable risk of harm to others, the fact that St. Croix Alumina had three years to abate the red mud piles would absolve VIALCO of any liability. It is, indeed, undisputed that VIALCO sold the facility to St. Croix Alumina in 1995, along with the red mud piles. It is also undisputed that Hurricane Georges struck the island in 1998. Glencore, however, has not provided any evidence to demonstrate that this three-year timeframe was sufficient for St. Croix Alumina to take reasonable precautions to abate the red mud piles. Glencore, instead, cite several cases which the Court finds factually distinguishable and not involving the abatement of a chemical product.

In *Narsh v. Zirbser Bros. Ins.*, 268 A.2d 46 (N.J. Super. 1970), the court held that eleven months was a reasonable time for a purchaser of land to take adequate precautions of a rotten tree that posed an unreasonable risk of harm to persons traveling on the adjacent highway. *Id.* at 54. This matter came before the court on a motion for a new trial after a jury returned a verdict against a previous landowner. In *Hut v. Antonio*, 229 A.2d 823 (N.J. Super. 1967), the court held that summary judgment was proper when a defendant demonstrated that four years was a reasonable time period for a purchaser of property to abate a hollow tile wall that collapsed on an infant. Similarly, in *O'Connor v. Altus*, 335 A.2d 545 (N.J. 1975), the court opined that nine years was a reasonable time for a new owner to take precautions to cure for a defective glass sidelight that injured a child.

Indeed, it is possible that VIALCO could be subject to liability if it continued to possess the land when the red mud and bauxite were blown to the surrounding neighborhoods. It is also possible that St. Croix Alumina discovered and knew of the red mud piles and the bauxite. Thus, the question that remains is whether three years is a reasonable amount of time for St. Croix Alumina to abate the nuisance. However, unlike the cases cited above, there is no evidence on the record for this Court to determine what precautions are necessary to properly store and/or contain bauxite and red mud. For instance, Glencore has not presented any statements from any expert witnesses that would demonstrate the amount of time needed for St. Croix Alumina to abate the red mud piles taking into consideration the size of the red mud piles along with the type of material needed to properly store and maintain it. Thus, there remain questions of fact as to whether VIALCO can be held liable based on Restatement sections 373 and 840A.

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 15

**3.      Whether Glencore Can Be Derivatively Liable for Plaintiffs' Injuries**

Finally, Glencore argues that even if VIALCO can be held liable for a failure to take appropriate precautions to abate the red mud piles, Glencore's liability for Plaintiffs' injuries hinges on whether Glencore, as a thrice-removed parent company of VIALCO, can be derivatively liable. Plaintiffs would have to "pierce the corporate veil" to find Glencore derivatively liable for Plaintiffs' injuries.

Under Virgin Islands law, a court applies the law of the state of incorporation to determine whether to pierce the corporate veil.  *See* Restatement (Second) Conflicts § 307; *see also*, *In re Tutu Wells Contamination Litigation*, 909 F.Supp. 1005, 1009 (D.V.I. 1995).  According to the record, VIALCO was incorporated in the United States Virgin Islands but later reincorporated in the state of Delaware.  *See* Hodge Aff. – Certificate of Incorporation of Virgin Islands Alumina Corporation dated April 25, 1995 attached as Ex. L.  Thus, at the time of the occurrence of the events that led to this lawsuit, VIALCO was a Delaware corporation.  Accordingly, this Court will apply the law of Delaware in order to determine whether to pierce VIALCO's corporate veil.

Courts have repeatedly stated that a plaintiff seeking to pierce the corporate veil in a Delaware court faces "a difficult task."  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995) (quoting *Harco Nat. Ins. Co. v. Green Farms, Inc.*, 1989 WL 110557, *4 (Del. Ch. 1989)).  In Delaware, "[a] court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner", *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del. Ch. 1992), or under an agency theory where the parent exercises dominion over the subsidiary, *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 658 F.Supp. 1061, 1084

(D.Del. 1984).  The alter-ego theory and the agency theory are interrelated legal theories in as much as a subsidiary corporation might be deemed to be the "alter ego" of the parent corporation "where a corporate parent exercises complete domination and control over the subsidiary."  *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F.Supp. 260, 268 (D.Del. 1989).  Thus, both theories require the parent corporation to exercise a certain degree of control over the subsidiary that would warrant piercing the corporate veil.

"To prevail on an alter-ego theory under Delaware law, a plaintiff must show (1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness …[i]s present'."  *Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) (quoting *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D. Del. 1990)).  In articulating the alter-ego theory, the court in *United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (D.Del. 1998) stated:

> [A]n alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation.  These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

No one single factor is outcome-determinative, but a combination of these is required, and that an overall element of injustice or unfairness must be present.  *Id.*  Furthermore, Delaware courts have built on its veil piercing analysis and require an element of fraud to pierce the corporate veil. *See Id.; see also*, *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,* 752 A.2d 1175, 1184

(Del. Ch.1999) ("Piercing the corporate veil under the alter-ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud").

"Under the agency theory, the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary.  The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities."  *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 658 F.Supp. 1061, 1084 (D.Del. 1984).  There must be "exclusive domination and control…to the point that the [subsidiary] no longer has legal or independent significance of [its] own."  *Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, 1992 WL 127567, *11 (Del. Ch. 1992)

The summary judgment evidence does not provide sufficient evidence for a reasonable jury to conclude that VIALCO is the alter-ego of Glencore.  Plaintiffs have provided no evidence that VIALCO failed to follow the factors listed in *Golden Acres*.  On the other hand, Glencore has submitted the uncontested affidavit of Robert Prusak which states: (1) VIALCO was adequately capitalized and not insolvent; (2) Glencore maintained their own Boards of Directors, and had separate officers; and (3) VIALCO and Glencore assets were not intermingled.  Prusak Aff. ¶¶ 7-10.  Glencore contends that these undisputed facts establish that VIALCO was not the alter-ego of Glencore.

Plaintiffs, however, have submitted several affidavits in an attempt to establish that there are genuine issues of material fact that VIALCO was the alter-ego of Glencore.  The admissible portions of Claudette Anderson's affidavit do not establish a genuine issue of material as to whether Glencore

dominated those activities of VIALCO that would cause this Court to pierce the corporate veil.  In her affidavit, Anderson states that she was required to provide VIALCO financial reports to Glencore, Glencore financed a VIALCO bank account, Glencore funded all refinery activities and that VIALCO needed to obtain Glencore's permission to make certain asset expenditures.  *See* Anderson Aff. ¶¶ 4, 7.

None of these facts, if true, establish an "alter-ego" or an agency theory of liability for piercing VIALCO's corporate veil.   It is assumed to be the norm that a parent will have "not only ... the potential to exercise control [over the subsidiary], but to exercise it to a substantial degree." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) *quoting* P. Blumberg, *The Law of Corporate Groups: Tort, Contract, and Other Common Law Problems in the Substantive Law of Parent and Subsidiary Corporations* § 10.02, at 187 (1987).   Further, it is a common business practice for a parent company to review the financial reports of its subsidiaries, finance subsidiary activities, and approve asset expenditures.  *See e.g., Fletcher*, 68 F.3d at 1456-60 (finding no domination of subsidiary activities where parent required to approved major expenditures, leases, and sale of assets); *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (no alter-ego liability when parent finances subsidiary activities); *Joiner v. Ryder Sys., Inc.*, 966 F.Supp. 1478, 1485 (C.D. Ill. 1996) (stating not improper for parent company to approve subsidiaries' capital budget and expenditures).

The Court also finds that the summary judgment evidence does not demonstrate "an overall element of injustice of unfairness."  It appears that Plaintiffs have decided not to name VIALCO as a party to this lawsuit despite the fact the VIALCO was a former owner and operator of the aluminum

refinery.  Thus, it would not be unjust or unfair if Glencore, as a parent company, was dismissed as one of the defendants.  Undoubtedly, the burden of proving a "veil piercing" claim rests with the party seeking to negate the existence of corporate separateness.  *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003).  Here, Plaintiffs have failed to meet that burden.  Accordingly, summary judgment will be granted in Glencore's favor on this issue.

**4.      Plaintiffs' Non-Ownership Arguments**

Plaintiffs, however, assert several legal theories upon which Glencore can be held liable separate and apart from owning or operating the refinery, namely: (1) as a supplier of bauxite; (2) if it participated in creating a nuisance; and (3) if it assumed a duty of care for operations at the refinery.

**a.      Whether Glencore Can Be Liable as a Supplier of Bauxite**

Before turning to the merits of Plaintiffs argument premised on supplier liability, the Court must determine whether Plaintiffs' theory that Glencore can be liable as a supplier of bauxite should be considered in deciding this motion for summary judgment.  Glencore asserts that Plaintiffs should be estopped from presenting any arguments based on supplier liability due to the fact that, throughout the litigation of this case, it was never put on notice that Plaintiffs intended to pursue claims based upon a third party supplier and refers this Court to the Third Amended Complaint, Class Certification Order, and certain discovery responses submitted by the individual plaintiffs. Upon a review of the record, this Court is satisfied that Glencore had sufficient notice that Plaintiffs would pursue claims based upon the fact that Glencore was a supplier of bauxite.

When filing a claim in federal court a plaintiff is required only to state "a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a). The statements in the complaint must provide a defendant with fair notice of what a plaintiff's claim is and grounds upon which it rests. *Williams v. New Castle County*, 970 F.2d 1260, 1265-66 (3d Cir. 1992). Fair notice is given when the complaint includes the operative facts upon which a plaintiff bases his or her claims. *See Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998).

In the Third Amended Complaint, Plaintiffs allege that Glencore shipped bauxite to VIALCO and oversaw its production into alumina (Third Am. Compl. ¶ 14), that Glencore failed to correctly control the storage and containment of the bauxite and its manufacturing process by-products (Third Am. Compl. ¶ 15), and that Glencore failed to properly store, contain and/or remove the "red dust" but, instead left it in poles on its property (Third Amend. Compl. ¶ 18). The Complaint further states that the actions by Glencore constitute the creation of abnormally dangerous conditions (count 1), nuisance (counts 2-4), and negligence (count 8). Thus, based on these allegations, the Complaint can be reasonably read that Glencore supplied bauxite to VIALCO and as a result, Glencore is liable for not only negligently storing the bauxite but also for causing a nuisance as a result of supplying the bauxite. Plaintiffs should not be punished for not disclosing their legal theories in their complaint, as the federal rules do not mandate that requirement. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). All that is required is that defendant is put on fair notice of plaintiffs' claims and the grounds upon which it rests. The Court will not read the Complaint in a restrictive manner, but instead, will read the Complaint liberally. *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 567 (3d Cir. 2002). As the Supreme Court noted, "[T]he Federal Rules reject the approach

that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Moreover, the Court does not find that Plaintiffs' supplier liability theory is beyond the scope of the Class Certification Order.  The Order identifies that the Defendants are potentially liable to those individuals in the class based on the Defendants' "conduct with regard to the containment and storage of red dust containing bauxite and red mud."  Class Certification Order dated April 24, 2006, as *amended by* June 1, 2006 Order.[3]  If Plaintiffs can provide sufficient evidence that Glencore had a duty to properly contain and store the red bauxite mud due to its role as a supplier, this Court is of the opinion that Plaintiffs' supplier liability theory falls within the scope of the Class Certification Order.

Plaintiffs' premises Glencore's liability as a supplier based on the fact that Glencore supplied bauxite to VIALCO and St. Croix Alumina and that certain duties arose as a result of supplying that product and that the supplied product posed a nuisance to the neighboring landowners.  Therefore, for purposes of this summary judgment motion, the Court will consider Plaintiffs' supplier liability theories.

_____

[3] The Class Certification Order identifies the class in this case as:

> [A]ll individuals, who as of September 21, 1998 [the date of Hurricane Georges], resided, worked, and/or owned property located in the following six communities adjacent to and downwind from St. Croix Alumina Refinery Plant – the projects of Harvey and Clifton Hill and the estates of Barron Spot, Profit, Clifton Hill, and La Reine – who, due to Defendants' conduct with regard to the containment and storage of red dust containing bauxite and red mud, suffered damages and/or injuries as a result of exposure during and after Hurricane Georges to red dust and red mud blown during Hurricane Georges.

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 22

Turning to the merits of Plaintiffs' supplier liability theory, Plaintiffs contend that Glencore's liability is premised on their actions as a supplier of bauxite to VIALCO. Plaintiffs cite to sections 388, 389, and 392 of the Restatement (Second) of Torts in support of their argument that Glencore can be liable despite not owning the property. The Court will analyze these restatement provisions to determine whether summary judgment should be granted.

### (i)    *Restatement (Second) of Torts § 388*

Section 388 of Restatement (Second) of Torts provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

  (a)    knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
  (b)    has no reason to know that those for whose use the chattel is supplied will realize its dangerous condition, and
  (c)    fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Section 388 articulates the "general principles concerning a product supplier's obligation to warn users of hazards associated with that product." *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 739 (3d Cir. 1990). Glencore contends that it cannot be liable to Plaintiffs under this section because it did not have a duty to warn Plaintiffs under the knowledgeable purchaser defense.

The knowledgeable purchaser defense identifies several factors to determine when a supplier was reasonable in relying on a third party to pass on any warnings to any individuals who could "be endangered by its probable use." Restatement (Second) of Torts § 388, cmt. n. These factors

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 23

include: (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that he directly warn all individuals endangered by the products probable use. *Smith*, 927 F.2d at 739-40.

In *Martin v. S.C. Johnson & Sons, Inc.*, 1996 WL 165039,*7 (D.V.I. 1996), this Court held that a supplier of a chemical cleaning substance was not liable to a hotel employee for failure to warn when a chemical substance splashed in her eye causing her to fall and suffering a detached retina. In applying the knowledgeable purchaser defense, the Court focused on the knowledge of the hotel and the warnings given which explained the dangerous conditions of the chemical product. The defendant provided the hotel with warning labels and a material safety data sheet, which explained the dangerous conditions of the chemical products that splashed in the employee's face. *Id*. at 7. The Court further stated that the defendant's reliance on the hotel was reasonable as a matter of law because the hotel was one of the largest hotel companies in the world, had previous experience dealing with that product and can reasonably be expected to have policies and procedures for passing on necessary warnings to its employees. The Court concluded by stating the defendant acted reasonably in relying on the hotel to convey all necessary warnings to its employees. *Id.* at *8.

Just as in *Martin*, this Court holds that Glencore was reasonable in relying on VIALCO and St. Croix Alumina in passing on any warnings to Plaintiffs. The undisputed summary judgment evidence demonstrates that Glencore provided VIALCO with material safety data sheets (MSDS) regarding the bauxite. The bauxite MSDS explains that bauxite contains crystalline silica and that

repeated exposures may cause fibrotic lung injury (silicosis). The MSDS further indicate that inhalation studies in experimental animals in certain doses have resulted in lung tumors and that crystalline silica is a Group 2A carcinogen, which means that there is "limited evidence of the carcinogenicity of crystalline in humans. *See* Affirmation of Juliet Markowitz – Exhibit J – Material Safety Data Sheet for Bauxite dated February 1, 1985 (Docket No. 577). A warning is adequate, as a matter of law, if the warning puts the purchaser on notice of the dangerous conditions of the product. *Martin*, 1996 WL at 7. This Court finds that the MSDS adequately put VIALCO and St. Croix Alumina on notice regarding the dangerous conditions of bauxite.

The other factors found in comment n also weigh in favor of Glencore. First, the bauxite that Glencore supplied is an ingredient in refining of aluminum. Plaintiffs were neither direct users of the bauxite nor were they employees of the refinery, instead, Plaintiffs are individuals who owned property or land near the refinery. Thus, the refining process had no direct relationship to Plaintiffs. Second, the burden imposed on Glencore is significant. Assuming, as it must, that Glencore is a separate legal entity located in Switzerland and had no employees in St. Croix, it would be much more reasonable for Glencore to rely on VIALCO and St. Croix Alumina to convey any warnings to Plaintiffs. Lastly, both VIALCO and St. Croix Alumina were in the business of refining aluminum and knew of the dangers associated with bauxite. Thus, the Court finds that Glencore was reasonable in relying on VIALCO or St. Croix Alumina to pass on any warnings to Plaintiffs.

### (ii)     *Restatement (Second) of Torts § 392*

Section 392 provides no additional support to Plaintiffs' cause. Similar to section 388, under

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 25

section 392, a supplier is liable for harm caused to those who endangered by its probable use if: (a) the supplier fails to exercises reasonable care to make the chattel safe for the use for which it is supplied; or (b) the supplier fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.[4]

First, the Court finds that there is no evidence that Glencore failed to exercise reasonable care to make the bauxite safe for use in the refining process. In fact, Plaintiffs have not made any argument with respect to this issue. Second, there also is no issue of material fact as to the second criteria: whether Glencore had no reason to believe that VIALCO or St. Croix Alumina will realize the dangerousness of bauxite. Subsection (b) of this Restatement instructs that there is no liability if the supplier exercises reasonable care to discover a product's dangerous condition and then informs the expected users of that condition. Having found that Glencore supplied VIALCO and St. Croix Alumina with the MSDS, informing them of the dangerous conditions of the product, this Court holds that Glencore cannot be liable under section 392.

**(iii)    *Restatement (Second) of Torts § 389***

---

[4] Section 392 of the Restatement (Second) of Torts provides:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 26

Section 389, on the other hand, presents different issues than that of sections 388 and 392.

Section 389 of the Restatement (Second) of Torts provides:

> One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.[5]

As stated in *Buckingham v. R.J. Reynolds Tobacco Co.*, 713 A.2d 381 (N.H. 1998), "[s]ection 389 is simply a statement of basic negligence principles of foreseeability and fault in the supplier context." *Id.* at 385. The relevant inquiry under section 389 is whether there is an unreasonable hazard to a plaintiff that is foreseen from the use of the product. *See Maguire v. Pabst Brewing Co.*, 387 N.W.2d 565, 572 (Iowa 1986). Most importantly, a supplier can be held liable under section 389 despite the fact that warnings were given to the end user. *See Maguire*, 387 N.W.2d at 571 (stating section 389 is a "statement of principles ascribing liability on the part of the supplier of chattels even though warning of their dangerous propensities has been given to the users.").

In *Lockett v. General Electric Company*, the court summarized section 389 as follows:

> Under section 389 a supplier of a chattel who has informed the persons to whom he supplied the chattel of its dangerous condition may be held liable to persons ignorant of the dangerous condition of the chattel if he knows or has reason to know that the chattel is unlikely to be made reasonably safe before being put to its expected use. If the supplier of a chattel knows or has information from which a person of reasonable

---

[5] This section falls under a claim of negligence, as a plaintiff must establish foreseeability and fault on the part of the supplier. *See Rodriguez v. Besser Co.*, 565 P.2d 1315, 1320 (Ariz. 1977). As such, liability is imposed when the plaintiff shows that supplier knew, or should have known, that the chattel supplied is unsafe for its expected use. *See Maguire v. Pabst Brewing Co.*, 387 N.W.2d 565, 572 (Iowa 1986).

> intelligence would infer that it is unlikely that the chattel will be made reasonably safe, the fact the he has informed the person through whom the chattel is supplied does not absolve him from liability…[L]iability arises only when the supplier knows or has information from which he should know that there is a substantial probability that the chattel will not be made safe before it is used.

*Lockett v. General Electric Company*, 376 F.Supp. 1201, 1209 (E.D.Pa. 1974), *aff'd*, 511 F.2d 1394 (3d Cir. 1975).

In *Lockett*, a supplier supplied a shipbuilding company gears and sensors for the assembly of a driveshaft. An employee of the shipbuilding company was injured when his arm got caught in the driveshaft and sued the supplier under section 389 for failure to warn that the product did not have a guard for the gears. The court held that the supplier could not be held liable under section 389 because there was insufficient evidence that the supplier knew or had reason to know that it was unlikely that the shipbuilding company would guard the gears before they were operated. *Id*. at 1213.

In this case, unlike *Lockett*, there is sufficient evidence for a jury to conclude that Glencore knew or had reason to know that the bauxite was unlikely to be made unreasonably safe before being put to its expected use. Robert Prusak, Glencore's Rule 30(b)(6) designated representative, stated in his deposition that he visited the VIALCO facility "four or five times a year, on average" and saw the storage facility himself. Prusak Depo. 87: 13-25, 88: 1-3. Further, it is undisputed that the red mud was also stored in large mud piles outside of the facility in an open, obvious and uncovered condition. In addition, Glencore knew that the refinery was in a hurricane zone and that there was a possibility that the red mud could blow to the surrounding neighborhoods. Despite all of this information, Glencore continued to sell bauxite to VIALCO and St. Croix Alumina. Thus, based on

this evidence, a reasonable jury could conclude that Glencore knew that the bauxite supplied to VIALCO and St. Croix Alumina had a high probability of blowing into the surrounding neighborhoods due to the condition of the storage sheds, the fact that the red mud was stored outside in large mud piles, and the fact that the refinery was in a hurricane zone. Accordingly, granting summary judgment in Glenore's favor with respect to liability based on section 389 would be inappropriate.

### b.    Whether Glencore Participated in the Creation of Nuisance

Plaintiffs' other theory is that Glencore can be held liable despite not owning the property is premised on section 834 of the Restatements (Second) of Torts. Section 834 states, "One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Restatement (Second) of Torts § 834 (1979). In defining an activity, this restatement section instructs that an activity includes the creation of a physical condition "that are harmful to neighboring land after the activity that created them has ceased -- such as structure, excavations, cesspools, piles of refuse, bodies of water, oil and other substances." *Id.* at cmt. b. Moreover, when an entity is one of several other actors participating in carrying on an activity, that entity's participation must be substantial before it can be held liable for the harm resulting from it. *Id* at cmt. d.

In this instance, Plaintiffs seek to impose liability on Glencore under section 834 as a supplier of bauxite. Glencore supplied bauxite to VIALCO in which the by-products of the aluminum refining process resulted in the creation of the red mud piles. Because Glencore did not

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 29

directly create the red mud piles, Plaintiffs must provide sufficient evidence for a reasonable jury to

conclude that Glencore actively and substantially participated in the creation of the red mud piles,

i.e. the nuisance.  Plaintiffs have presented no affirmative evidence to support their contentions with

regards to this issue.   Instead, in their opposition memorandum, Plaintiffs made conclusory

allegations without directing this Court to material facts upon which this Court could find that there

are genuine issues.  A party opposing summary judgment must present affirmative evidence to

defeat a summary judgment motion.  *Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003).

Thus, summary judgment will be granted in Glencore's favor on this issue.

Furthermore, courts that have interpreted nuisance law require that an entity can be liable

based on a nuisance claim if that entity has the ability or opportunity to abate the nuisance.  See e.g.,

*City of Manchseter v. Nat'l Gypsum Co.*, 637 F.Supp. 646, 656 (D.R.I. 1986) (stating defendants in a

nuisance claim must be in control of the instrumentality alleged to constitute the nuisance); *Montana*

*Pole & Treating Plant v. I.F. Laucks and Co.*, 775 F.Supp. 1339, 1348 n. 10 (D. Mont. 1991)

(stating no nuisance liability when supplier lacked ownership and did not possess the right to remedy

nuisance); *Parks*, 995 P.2d 657, 666 (Alaska 2000) (opining sale of petroleum products did not

constitute private nuisance since defendant did not maintain ownership or control over the products

after they were delivered).

Glencore supplied VIALCO with bauxite between the period of 1989 and 1995.   After the

plant was sold to St. Croix Alumina, the evidence shows that Glencore supplied St. Croix Alumina

with bauxite from 1995 to 1998.  Hurricane Georges struck the area on September 21, 1998.  Even

assuming Glencore owned and operated the refinery, Glencore never controlled the premises after it was sold to St. Croix Alumina and thus, had no opportunity, or authority to abate the storage or containment of the bauxite. Thus, this Court will grant summary judgment in favor of Glencore based on any claims of nuisance.

### c.       Whether Glencore Assumed a Duty of Care for Refinery Operations

Plaintiffs assert another theory upon which they believe Glencore could be held liable in the absence of ownership of the land if it assumed a duty of care under Restatement (Second) of Torts § 324A. Section 324A provides:

> Liability to Third Person For Negligent Performance Of Undertaking
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

To determine whether Glencore assumed a duty of care to Plaintiffs, this Court must find that there is sufficient evidence to establish that Glencore had a duty to protect Plaintiffs. This duty could be established if Glencore had "undertaken to inspect the specific instrument causing the injury or to inspect the entire plant of which that instrument was a part...." *Patentas v. United States,* 687 F.2d 707, 716 (3d Cir. 1982). Plaintiffs can establish this if they can put forth sufficient evidence that Glencore undertook safety inspections of the refinery and then negligently failed to see that certain

measures were taken. *Id*. at 716 ("The duty may be established by a showing that [the defendant] undertook inspection of the entire plant."); *see also*, *Johnson v. Abbe Engineering*, 749 F.2d 1131, 1133 (5th Cir. 1984). To establish a duty owed by a parent corporation, there must more than mere concern or minimal contact. *Muniz v. Natn'l Can Corp.*, 737 F.2d 145, 148 (1st Cir. 1984). There must be a positive undertaking by the parent corporation. *Id*. Under this Restatement section, a parent company may be held liable for negligence if it assumed a duty of care to Plaintiffs when it undertook safety inspection tours of the plant and then negligently failed to see that certain measures were implemented. *Johnson*, 749 F.2d at 1133; *Patentas,* 687 F.2d at 716.

Plaintiffs direct this Court to a 1989 report and a press release both purportedly issued by a company called Ormet. Plaintiffs contend that these two documents create a genuine issue of material fact as to whether Glencore assumed a duty of care by undertaking to ensure the safety of the operations at the refinery. Glencore contends that the Court should disregard these documents because they are not admissible evidence.

It is well established that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 n. 19 (1970). A nonmoving party may not oppose a summary judgment motion by using unauthenticated documents. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002) (unauthenticated documents cannot be considered in a motion for summary judgment); *See also, King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (stating unauthenticated documents are improper as summary judgment evidence). These two documents are not dated, unsigned, and are simply not admissible. Thus, the Court will disregard these documents in determining whether Glencore

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 32

assumed a duty of care for the operations of the refinery.

Despite the exclusion of the Ormet documents, Plaintiffs have provided sufficient evidence to satisfy their burden of establishing an issue of material fact as to whether Glencore assumed a duty of care.  Both Claudette Anderson and Paul Arnold affidavits state that representatives from Glencore conducted inspections at the refinery.  *See* Anderson Aff. ¶ 6; Arnold Aff. ¶ 6. Furthermore, as noted above, Prusak stated in his deposition that he visited the VIALCO facility "four or five times a year, on average" and saw the storage facility himself.  Prusak Depo. 87: 13-25, 88: 1-3.  Thus, in drawing all reasonable inferences in a light most favorable to Plaintiffs, *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997), it is possible for a jury to conclude that these inspections included the storage of the red mud piles. Although Glencore has provided significant evidence that the inspections were relegated to accounting and financial issues, it is improper for this Court to evaluate the weight of the evidence at the summary judgment stage. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993) (stating improper for court to weigh evidence or make credibility determinations at summary judgment stage).  Accordingly, the Court finds that there are genuine issues of material as to whether Glencore assumed a duty of care for the operations at the alumina refinery.

The inquiry, however, does not end here.  Plaintiffs must also provide sufficient evidence that breach of the duty must be a proximate cause of Plaintiffs' injuries.  This can be established by proving either: (1) that Glencore's failure to exercise reasonable care increased the risk of harm; (2) that Glencore undertook to perform a duty owed by VIALCO to Plaintiffs; or (3) that Plaintiffs' harm was a result of reliance by VIALCO or Glencore upon the undertaking. *See* Rest. (2d) Torts §

*Henry, et al. v. St. Croix Alumina, et al.*
Civil No. 1999/0036
Memorandum Opinion – Motion for Summary Judgment
Page 33

324A(a) – (c).  Creating a material issue of fact as to any one of these factors will suffice to create a genuine issue of material fact.  *Johnson*, 749 F.2d at 1133.

As explained above, VIALCO could be subject to liability to Plaintiffs for its failure to properly secure the red mud piles. S*ee* section II(B)(2), *supra*.  The fact that Glencore undertook inspections of the refinery satisfies the second factor of section 324A.  Having held that there is sufficient evidence for a trier of fact to conclude that VIALCO owed a duty to Plaintiffs to properly secure the red mud piles and that there is sufficient evidence for a jury to conclude that Glencore gratuitously undertook to perform inspections of the refinery, Glencore's motion for summary judgment on this issue will be denied.

## III.    CONCLUSION

Accordingly, for the reasons stated above, Glencore's motion for summary judgment will be granted, in part and denied, in part.  An appropriate Order will follow.

                                                    **ENTER:**

**DATED:**  August 10, 2007              /s/ Raymond L. Finch_____
                                                    RAYMOND L. FINCH
                                                    U.S. DISTRICT COURT JUDGE