IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

JOSEPHAT HENRY, et al.        :        CIVIL ACTION
                              :
            v.                :
                              :
ST. CROIX ALUMINA, LLC, et al.  :      NO. 1999-0036

MEMORANDUM

Bartle, C.J.                                    June 3, 2008

        Plaintiffs, suing on behalf of themselves and all
others similarly situated, allege that they suffered personal
injury and property damage as a result of the negligent storage
and containment of toxic materials near the St. Croix Alumina
Refinery Plant (the "refinery") by defendants St. Croix Alumina,
L.L.C., Alcoa, Inc., and Glencore Ltd. ("Glencore").  They seek
compensatory and punitive damages and injunctive relief.[1]  Now
before the court are:  (1) the joint motion of defendants to
decertify the class of plaintiffs; and (2) the motion of
plaintiffs to recertify the subclasses and certify a class for
injunctive relief under Rule 23(b)(2) of the Federal Rules of
Civil Procedure.

                              I.

        The seventeen named plaintiffs are class
representatives suing on behalf of themselves and other "persons

_____

1.  Plaintiffs have abandoned the claim for medical monitoring
contained in the Third Amended Complaint.

down wind of the Alumina Refinery Plant" on St. Croix in the
United States Virgin Islands.  Defendant Glencore, a Swiss
company in the business of commodity trading, is the parent
company of Clarendon Holdings, which is the parent company of
VIALCO Holdings, Ltd.  VIALCO Holdings, Ltd. was the parent
company of VIALCO, which owned the refinery referenced in
plaintiffs' Complaint.  In 1995, VIALCO Holdings, Ltd. sold its
interest in VIALCO to Century Chartering Company.  The latter is
not affiliated with Glencore or any of its subsidiaries.  Later
in 1995, VIALCO sold its interest in the refinery to defendant
St. Croix Alumina, LLC.  St. Croix Alumina is owned by defendant
ALCOA, Inc.

       As part of its commodity trading business, Glencore
supplied VIALCO and later St. Croix Alumina with bauxite, a red-
colored ore with the consistency of dirt or dust from which
alumina is extracted and used to produce aluminum.  A byproduct
of the alumina extraction process is a similarly red-colored
substance called "red mud," which was stored in piles outside the
refinery using a method known as "dry-stacking."

       According to the Third Amended Complaint, Hurricane
Georges struck the island of St. Croix on September 21, 1998 and
scattered an undetermined amount of the refinery's stored bauxite
and possibly red mud into nearby neighborhoods.  The record
indicates that the refinery ceased operations in January, 2001.
The following year, St. Croix Alumina sold the refinery to St.
Croix Renaissance Group, LLLP, a non-party to this litigation.

-2-

Plaintiffs filed this action in February, 1999.  In August, 2000, this court certified the following class under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All individuals who, as of September 21, 1998, resided, worked, and/or owned property located in the following six communities adjacent to and downwind from the St. Croix Alumina Refinery Plant - the projects of Harvey and Clifton Hill and the estates of Barren Spot, Profit, Clifton Hill, and La Rein [sic] - who, due to Defendants' conduct with regard to the containment and storage of red dust containing bauxite and red mud, suffered damages and/or injuries as a result of exposure during and after Hurricane Georges to red dust and red mud blown during Hurricane Georges.

The court further certified subclasses for plaintiffs seeking recovery for property damage and personal injury and also for those seeking medical monitoring and punitive damages.  <u>Henry v. St. Croix Alumina, LLC</u>, Civ. A. No. 1999-0036, 2000 WL 1679502 (D.V.I. Aug. 7, 2000).[2]

---

2.  The "Medical Monitoring" subclass consisted of "those individuals who resided and/or were employed in the communities adjacent to and downwind from the St. Croix Alumina Refinery Plant, including the projects of Harvey and Clifton Hill, as well as the estates of Barron Spot, Profit, Clifton [Hill] and La Reine, who have suffered and/or are threatened with suffering latent injuries, such as illness or disease, which are as yet unknown and undiscovered.  Accordingly, this class consists of individuals who seek relief in the form of medical monitoring so that they may have periodic medical exams and tests to detect, prevent, and/or treat the a fore [sic] described latent injuries."

The "Property Damage" subclass comprised "all individuals or entities who owned or held a leasehold interest in real property and improvements which was located in communities adjacent to and downwind from the St. Croix Alumina Refinery Plant, including the projects of Harvey and Clifton Hill, as well as the estates of

(continued...)

In 2006, the district court decertified all subclasses but held that "[l]iability for personal injury and/or property damage ... [as well as] whether punitive damages are appropriate, as an initial matter, may be determined on a class-wide basis." Plaintiffs then submitted a revised trial plan divided into two phases.  In "Phase 1," plaintiffs would litigate liability and the possibility of a punitive damages multiplier on a class-wide basis, and afterward, in "Phase II," individual plaintiffs would have the opportunity to prove "individual causation and all damages issues" independently in separate trials.  In December,

---

2.(...continued)
Barron Spot, Profit, Clifton [Hill] and La Reine.  These individuals or entities are those who have suffered economic harm and/or property damage, including:  (1) the loss of use and/or enjoyment of their property; (2) the diminution of market or rental value; (3) the destruction, degradation and deterioration of the soil, vegetation, and improved property; and (4) the loss and/or damage of personal property, including but not limited to clothing[,] furniture, draperies and other personal effects, which resulted from Defendants' alleged negligent acts and/or omissions with regard to the containment and storage of the red dust containing bauxite and/or red mud or with regard to the alleged negligent clean up of same."
     The "Personal Injury" subclass encompassed "those individuals who resided and/or were employed in the communities adjacent to and downwind from the St. Croix Alumina Refinery Plant, including the projects of Harvey and Clifton Hill, as well as the estates of Barron Spot, Profit, Clifton [Hill] and La Reine.  These individuals are those who have suffered presently cognizable physical and emotional injuries as a result of Defendants' alleged negligent acts and/or omissions with regard to the containment and storage of red dust containing bauxite."
     The "Punitive Damages" subclass consisted of "all members of the aforementioned three subclasses who have suffered harm as a result of Defendants' alleged grossly negligent acts and/or omissions with regard to the containment and storage of red dust containing bauxite and/or bauxite or the clean up related thereto."  Henry at *1 n.3.

2007, the district court set forth in an order that the current certification status of the class and the absence of subclasses "make the formulation of a workable trial plan cumbersome," and chose to revisit the class certification and subclass decertification decisions.  <u>Id.</u>, Civ. A. No. 1999-0036 (D.V.I. Dec. 11, 2007) (order scheduling oral argument).

II.

The framework of Rule 23 gives the district court "broad discretion" over the decision of whether or not to certify a class.  <u>See</u> <u>In re Vicuron Pharms., Inc. Sec. Litig.</u>, 233 F.R.D. 421, 425 (E.D. Pa. 2006).  Our Court of Appeals has held that although we must not decide a motion for class certification on an assessment of the case's merits, "a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 168 (3d Cir. 2001).  Accordingly, we may look beyond the pleadings to decide the motion.  <u>Id.</u> at 167.

A district court retains the authority to modify or decertify completely a class at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C); <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 537 (3d Cir. 2004).  Indeed, "the [Advisory] Committee Notes on Rule 23 envision modification of a class certification if, upon fuller development of the facts, the original determination appears unsound."  <u>Zenith Labs., Inc. v. Carter-Wallace, Inc.</u>, 530 F.2d 508, 512 (3d Cir. 1976); <u>see also</u>

-5-

In re FleetBoston Fin. Corp. Sec. Litig., Civ. A. No. 02-4561, 2007 WL 4225832, at *5 (D.N.J. Nov. 28, 2007).

Thus, we must scrutinize the record as it now exists to examine whether the original class certification determination remains warranted under Rule 23(b)(3) and, if so, whether subclasses for property damage, personal injury, and punitive damages are appropriate. We must additionally determine whether plaintiffs have established a right to class certification under Rule 23(b)(2) on their claim for injunctive relief.

III.

Defendants seek to decertify plaintiffs' class on the ground that class certification is no longer proper under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As explained by the United States Supreme Court, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication" via class action. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).

The Advisory Notes to Rule 23(b)(3) state that "[a] 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting

-6-

the individuals in different ways." We recognize, however, that "mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement." Amchem, 521 U.S. at 625. Consequently, while a mass tort case is ordinarily not appropriate for class action treatment, we must look at the circumstances of the case before us to determine whether the case should move forward as a class action.

Our Court of Appeals has explained that class certification is ordinarily "inappropriate in mass tort claims ... which present questions of individualized issues of liability" because such cases are unlikely to satisfy the requirements of Rule 23(b)(3). In re LifeUSA Holding Inc., 242 F.3d 136, 145 (3d Cir. 2001). It has further stated that class certification is appropriate under Rule 23(b)(3) only in cases where proximate cause can be determined on a class-wide basis, "such as an airplane crash or a cruise ship food poisoning." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 628 (3d Cir. 1996) (quoting In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 853 (9th Cir. 1982)). A corollary is that "the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977).

In actions for personal injury resulting from a sudden release of toxic chemicals, federal courts have regularly denied

-7-

class certification for failure to satisfy the predominance requirement of Rule 23(b)(3).  Courts have done so largely for reasons having to do with the concerns over issues of causation voiced by our Court of Appeals.  In <u>Steering Comm. v. Exxon Mobil Corp.</u>, 461 F.3d 598, 603 (5th Cir. 2006), the Fifth Circuit affirmed a district court's denial of certification of a class of individuals exposed to toxic smoke from a fire at a chemical plant.  It determined that the individual issues of causation and damages were "vastly more complex" than the common liability issues.  Likewise, the district court declined to certify a class in <u>Puerto Rico v. M/V Emily S</u>, 158 F.R.D. 9 (D.P.R. 1994), for failure to satisfy the predominance requirement where plaintiffs allegedly suffered personal injury from exposure to fumes from an oil spill.  The court found that the "*fact* of each class member's personal injury *and* the *causal link* between that individual's injury and the spill" were questions that "could not be answered meaningfully on a class-wide basis."  <u>Id.</u> at 13.

As the Court of Appeals for the Second Circuit has noted, "The relevant question ... is not whether [the substance at issue] has the capacity to cause harm, the generic causation issue, but whether it did cause harm and to whom.  That determination is highly individualistic and depends upon the characteristics of individual plaintiffs (e.g., state of health, lifestyle) and the nature of their exposure to [the substance]."  <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 145, 165 (2d Cir.

1987).³  See also Perrin v. Expert Oil & Gas, LLC, Civ. A. No.
07-2878, 2008 WL 339684, at *4-5 (E.D. La. Feb. 6, 2008); Salvant
v. Murphy Oil USA, Inc., Civ. A. No. 06-8700, 2007 WL 2344912, at
*5 (E.D. La. Aug. 13, 2007).

        Courts have also denied class certifications in actions
for property damages resulting from a mass disaster where
individual issues of causation and damages predominate over
common issues.  In Snow v. Atofina Chems., Inc., Civ. A. No. 01-
72648, 2006 WL 1008002 (E.D. Mich. Mar. 31, 2006), plaintiffs
sought compensation for diminution in property values in the wake
of a large chemical fire.  The court, denying class action
status, stated that under the circumstances, "individual proofs
required to establish such a claim predominate over any common
issues of law or fact."  Id. at *7.  In a similar case,
plaintiffs sought compensation for property damages allegedly
caused when the collision of two trains caused a large explosion.
See Bradford v. Union Pac. R.R. Co., Civ. A. No. 05-4075, 2007 WL
2893650 (W.D. Ark. Sept. 28, 2007).  There, the district court
refused to certify the class because "[f]actors such as a
property's damage, location, age, condition, structural makeup
and history are determinative on the issue of a property's

_____

3.  The Agent Orange court eventually certified the settlement
class in question because the major issue at trial would have
been a "military contractor" defense common to all plaintiffs.
Agent Orange, 818 F.2d at 166.  Nonetheless, the court noted that
if the case had involved civilians exposed to the chemicals
during civilian affairs, it would have found class certification
improper.  Id.

-9-

devaluation," and such factors "vary from property to property." Id. at *11.

Plaintiffs as an initial matter direct us to Rule 23(c)(4)(A), which states, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4)(A). They contend that Rule 23(c)(4)(A) empowers us to carve out particular common issues for class certification regardless of whether the claim as a whole satisfies the predominance requirement of Rule 23(b)(3). We disagree. We interpret Rule 23(c)(4)(A) simply as a "housekeeping rule" designed to ease the administration of actions that have already satisfied the predominance requirement. Castano v. Am. Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996). A more expansive reading would enable a court to sever any common issue for class certification in a case otherwise dominated by individual issues, a result entirely at odds with the limiting provisions of Rule 23(b)(3). We therefore adopt the reasoning of those courts which have held that a claim for relief taken in its entirety must satisfy the predominance requirement of Rule 23(b)(3) before the court may select certain issues for piecemeal certification. See Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 189-90 (E.D. Pa. 2007); Arch v. Am. Tobacco Co., 175 F.R.D. 469, 496 (E.D. Pa. 1997).

Plaintiffs, addressing the predominance requirement directly, argue that over twenty-five separate issues are common questions amenable to resolution on a class-wide basis. We

-10-

summarize these as follows:  (1) whether and to what extent
bauxite and red mud are toxic; (2) whether and to what extent
defendants had a duty to warn neighboring communities about the
storage of the substances, take precautions when storing the
substances, or mitigate damages after the release of the
substances; (3) whether defendants breached such duties; (4)
whether defendants are entitled to a "conjunctivitis defense" or
an "Act of God" defense; (5) whether defendants are strictly
liable for their alleged failure to contain hazardous materials;
(6) whether defendants' conduct constituted a public or private
nuisance, negligence per se, outrageous conduct for purposes of
intentional infliction of emotional distress, or negligent
conduct causing emotional distress; and (7) whether plaintiffs
are entitled to punitive damages, and if so, what constitutes an
appropriate punitive damages multiplier.  Necessarily subsumed in
these inquiries are questions such as the extent of the toxicity
of the dispersed materials and defendants' knowledge of such, and
the extent of defendants' knowledge that the materials could be
dispersed into surrounding properties.

        We cannot agree with plaintiffs' attempts to classify
so many issues as common to all class members.  This case differs
from the typical "mass accident" or "mass disaster" action such
as a plane crash or plant explosion where issues of causation
almost certainly will be common to all class members.  See Sala
v. Nat'l R.R. Passenger Corp., 120 F.R.D. 494, 499 (E.D. Pa.
1988).  Here, causation cannot be so easily generalized.

Hurricane Georges buffeted St. Croix for over twenty-four hours, during which time the wind's speed and direction changed several times, as did the rain's severity.  It is certainly not a given that the hurricane affected the people and properties in the six neighborhoods of the proposed class in the same way over the course of the storm.  Matters are further complicated by the fact that there are two separate substances, bauxite and red mud, with possibly differing degrees of toxicity, that are alleged to have caused personal injuries and property damage.

We acknowledge that common questions exist as to certain liability issues.  For instance, whether the bauxite and red mud were stored properly and whether defendants are entitled to an "Act of God" defense are questions common to all putative class members.  Nonetheless, the overwhelming majority of questions listed by plaintiffs, including those having to do with liability,[4] cannot be answered on a class-wide basis because they will require individualized answers based on personal circumstances.

---

4.  Whether defendants owed and breached specific duties to the plaintiffs may not be common questions.  The existence and scope of defendants' duties to warn or to protect, for instance, may depend on the exact path the hurricane took and the distance between the refinery and a particular plaintiff's dwelling.  Similarly, the existence of a duty to mitigate will depend on the harm caused to a specific individual and the feasibility of mitigation.  The question of whether defendants breached that duty will depend on what efforts to mitigate were taken with respect to a particular plaintiff, given evidence showing that some plaintiffs received clean-up and compensatory assistance from defendants while others did not.

With respect to personal injury claims, each plaintiff must prove causation. Each will need to prove the duration and nature of his or her exposure to the two released substances, bauxite and red mud. Some plaintiffs may have been exposed to only one substance, while those exposed to both may have been exposed in differing degrees or combinations. The possibly differing levels of toxicity of bauxite and red mud will further complicate matters.

We emphasize that even among the seventeen named plaintiffs, evidence shows that the onset, duration, and severity of the alleged injuries varied enormously. Some developed rashes or experienced throat irritation only hours after the hurricane, while others reported different conditions that emerged weeks or months later. Moreover, the possibility of alternative explanations for plaintiffs' injuries is real and can be explored only in light of a given plaintiff's pre-existing medical conditions whose symptoms may have matched the injuries allegedly caused by defendants' conduct. To complicate the issue, evidence exists of an outbreak of conjunctivitis on St. Croix peaking shortly after the hurricane. Based on plaintiffs' broad spectrum of claimed injuries, their varying levels of exposure to the differing released materials, and the myriad of potentially contributing factors, a common issue of causation does not predominate under Rule 23(b)(3). Under the circumstances presented, the court will decertify the class of those suing for

-13-

personal injuries, even without considering obvious
individualized questions of damages.

Plaintiffs' claims for property damages present similar
difficulties.  This case is analogous to Brown v. SEPTA, in which
then-District Judge Anthony J. Scirica denied class certification
under Rule 23(b)(3) for a group of real property owners claiming
property damages as a result of the release over a period of
years of toxic chemicals from a nearby railroad yard in Paoli,
Pennsylvania.  Judge Scirica explained that, "Each plaintiffs'
[sic] property will be damage[d] to a different degree, if at
all, based on its proximity to the site, topography, and the
off-site migration patterns of [the toxic substances].  Thus,
individual litigants will have to establish injury and causation
in order to succeed on the merits."  Civ. A. No. 86-2229, 1987 WL
9273, at *11 (E.D. Pa. Apr. 9, 1987).  As in Brown, the issue of
causation cannot be resolved on a class-wide basis here.  The
properties of individual class members are not all the same
distance from the refinery, do not have the same topography, and
it cannot be said that the hurricane affected them all in the
same way.  Individual plaintiffs allege various kinds of damage
to their property, including but not limited to contamination of
their cisterns, loss of personal property such as clothing and
bedding, an ongoing release of toxic materials from their walls,
a discoloration of surfaces, and an overall reduction in property
value.  The extent to which each of these alleged losses can be
attributed to defendants' conduct and not to some other cause can

-14-

only be addressed on an individual basis.  Moreover, each
plaintiff will have to prove whether the substance that
accumulated in and around his or her home or workplace was
bauxite, red mud, or some combination of the two.  These factors
are likely to vary from property to property.

In addition, the actual amount of property damage
suffered by each plaintiff is likely to be highly individualized.
Properties received varying amounts of exposure to and
correlative damage from the released materials, depending on the
exact path of the hurricane.  For instance, some plaintiffs
allegedly experienced considerable build-up of the substances at
issue inside their homes.  Others attested that the substances
amassed primarily on the outsides of their homes.  The seven
property-owning named plaintiffs reported varying levels of
cistern contamination and loss of personal property.  Likewise,
certain plaintiffs had valuable white tiling that was
particularly susceptible to staining by the substances, while
others did not.

Plaintiffs' expert, Dr. Kilpatrick, using a methodology
that he claims to have applied in similar cases with success,
asserts that the diminution in property value attributable to
defendants' conduct is likely uniform across neighborhoods and
can be estimated at roughly 30%.  He further concludes that homes
in the neighborhoods at issue continue to suffer from a "stigma"
as a result of the alleged contamination such that even
uncontaminated houses show a marked drop in property value.  Yet,

-15-

he concedes that his approach excludes between 10 and 100 distinct factors that could impact the value of any particular house and that real property valuation in the Virgin Islands is affected by several unique factors such as the importance of cisterns and a cultural affinity for certain types of tiling. Defendants' real estate appraisal expert, David Bolton, contests Dr. Kilpatrick's assertions and criticizes his "mass appraisal" methodology as unsound.  He contends that because each property has different physical and economic characteristics, individual valuations are necessary to establish an accurate diminution in value.  He further opines that the homes of the seven property-owning named plaintiffs did not decrease in value after the hurricane.

We find defendants' arguments persuasive and conclude that the questions of causation as well as damages with respect to property damage claims do not predominate as required under Rule 23(b)(3).

In summary, based on the now more developed state of the record, the original determination of class action status is no longer valid.  See Zenith Labs., 530 F.2d at 512.  Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3) for either a personal injury or property damages class.  Accordingly, we will decertify the previously certified class in its entirety without needing to reach the question of whether the class action meets the "superiority" requirement of Rule 23(b)(3).  For the same reasons stated above, we will also deny plaintiffs' motion

insofar as it seeks to recertify the subclasses for claims of personal injury, property damage, and punitive damages.

IV.

In addition, plaintiffs move for certification of a new class which seeks only equitable relief.  In Counts I through IV of the Third Amended Complaint, plaintiffs allege that the actions of defendants "consist of maintaining an abnormally dangerous condition" and constitute a public and private nuisance as well as a nuisance per se.  In Count III, they specifically request:

> an injunction requiring defendants to desist all activities that allow the release of pollutants, further requiring defendants to remove the piles of "Red Dust", coal dust and other particulates to remove all such pollutants, "Red Dust", coal dust and other particulates [sic] from the island of St. Croix and to refrain from allowing said substances from accumulating again on St. Croix.

Later in the Complaint, they request "an injunction requiring that defendants cease and desist all activities that result in pollutants being discharged and, further requiring a clean up of all pollutants and removal of the piles of 'Red Dust', coal dust and particulates ... and such other relief as this Court deems fair and just."

Plaintiffs suggest that the class definition previously used for purposes of certification under Rule 23(b)(3) can be employed here as well.  As noted above, that class definition includes:

-17-

> All individuals who, as of September 21,
> 1998, resided, worked, and/or owned property
> located in the following six communities
> adjacent to and downwind from the St. Croix
> Alumina Refinery Plant - the projects of
> Harvey and Clifton Hill and the estates of
> Barren Spot, Profit, Clifton Hill, and La
> Rein [sic] - who, due to Defendants' conduct
> with regard to the containment and storage of
> red dust containing bauxite and red mud,
> suffered damages and/or injuries as a result
> of exposure during and after Hurricane
> Georges to red dust and red mud blown during
> Hurricane Georges.

Plaintiffs bear the burden of proving that this proposed class satisfies the four requirements of Rule 23(a), frequently abbreviated as "numerosity," "commonality," "typicality," and "adequacy of representation."  See Fed. R. Civ. P. 23(a); Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).  They must also establish the propriety of certification under one of the three subsections of Rule 23(b).  Id.

Under Rule 23(a), a class action may be certified if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Plaintiffs have provided evidence that members of the proposed class likely number in the thousands.  Thus, we find that the numerosity requirement of Rule 23(a)(1) has been met.  See, e.g., Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  Likewise,

plaintiffs have shown and defendants do not contest that at least one question of law or fact is common to the class as required by Rule 23(a)(2).  Baby Neal, 43 F.3d at 56.

Defendants argue that plaintiffs have failed to establish both typicality under Rule 23(a)(3) and adequacy of representation under Rule 23(a)(4) because the named plaintiffs in the proposed class, which consists of individuals injured by bauxite and red mud almost ten years ago, may or may not continue to reside, work, or own property in the listed neighborhoods on St. Croix and thus may not be entitled to injunctive relief.  The typicality query is "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  Id.  "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  Id. at 58.  The adequacy inquiry, by contrast, "serves to uncover conflicts of interest between named parties and the class they seek to represent."  Amchem, 521 U.S. at 625.  It further "'assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class.'"  Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006) (quoting Baby Neal, 43 F.3d at 55).

Plaintiffs have responded with evidence that a majority of the class representatives still reside in the relevant neighborhoods.  We have no doubt that their claims for injunctive relief are typical of the proposed class and that they will serve as adequate representatives.

In sum, plaintiffs have carried their burden of satisfying the requirements of Rule 23(a).  Nonetheless, we must further scrutinize plaintiffs' right to certification by determining whether the class is "maintainable" as defined by Rule 23(b).  Plaintiffs argue that the proposed class is maintainable under Rule 23(b)(2) because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).[5]  Although Rule 23(b)(2) was "designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons,"  Baby Neal, 43 F.3d at 58, the Advisory Committee Notes to the rule itself make clear that "[s]ubdivision (b)(2) is not limited to civil-rights cases."

---

5.  The Advisory Committee Notes to Rule 23(b)(2) caution that a court should decline to certify the proposed class where "the appropriate final relief relates exclusively or predominantly to money damages."  See also Beck, 457 F.3d at 301.  Because plaintiffs have agreed to pursue solely injunctive relief if certified as a class under Rule 23(b)(2), there is no chance that the appropriate final relief will relate predominantly to money damages.

-20-

Drawing on the opinion of the United States Supreme Court in Amchem, our Court of Appeals has firmly established that "[w]hile 23(b)(2) class actions have no predominance or superiority requirements, ... the class claims must be cohesive." Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir. 1998). Pursuant to this mandate, we have the "discretion to deny certification in Rule 23(b)(2) cases in the presence of 'disparate factual circumstances.'" Geraghty v. U.S. Parole Comm'n, 719 F.2d 1199, 1205-06 (3d Cir. 1983) (quoting Carter v. Butz, 479 F.2d 1084, 1089 (3d Cir. 1973)). Indeed, a "court should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it should under subsection 23(b)(3)." Santiago v. City of Phila., 72 F.R.D. 619, 628 (E.D. Pa. 1976).

The ill-defined scope of plaintiffs' demand for injunctive relief presents us with some difficulty in determining whether the proposed class possesses the requisite cohesiveness. Plaintiffs appear to request as relief not the safe containment of the bauxite and red mud as it currently exists on the refinery property but instead the removal from St. Croix of all bauxite and red mud from wherever it exists on the island.[6] Abatement of the alleged nuisance on plaintiffs' terms, then, would include

---

6. In light of indications that refinery operations ceased in 2002, plaintiffs' demand is moot insofar as they sought to have defendants "desist" certain activity on the refinery property.

both the cleanup of the refinery itself and individual remediation with respect to the real property of each plaintiff.

We conclude that the proposed class possesses differing levels of cohesiveness under Rule 23(b)(2) with respect to these two varieties of injunctive relief.  The case law supports such a distinction.  Citing the principle of cohesiveness, courts have granted certification where plaintiffs sought to have a single defendant cease emissions of toxic substances, see, e.g., Olden v. LaFarge Corp., 203 F.R.D. 254, 269 (E.D. Mich. 2001), aff'd, 383 F.3d 495 (6th Cir. 2004), but denied certification where plaintiffs sought individualized remediation in the form of real property cleanup for release of toxic substances, see, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 209 F.R.D. 323, 341-49 (S.D.N.Y. 2002).  By contrast, only a handful of district courts have certified classes seeking individualized remediation under Rule 23(b)(2).  See Bentley v. Honeywell Intern., Inc., 223 F.R.D. 471, 486 (S.D. Ohio 2004); Mejdreck v. Lockformer Co., Civ. A. No. 01-6107, 2002 WL 1838141, at *7 (N.D. Ill. Aug. 12, 2002).  Because the Bentley and Mejdreck courts did not devote substantial analysis to the issue or address the requirement that a Rule 23(b)(2) action be cohesive,[7] we find their reasoning unpersuasive.

---

7.  The Sixth Circuit has not expressly affirmed the existence of a cohesiveness requirement as enunciated in Barnes.  See In re Welding Fume Prods. Liab. Litig., 245 F.R.D. 279, 315 (N.D. Ohio 2007).

In this case, plaintiffs' request for remediation with respect to their real property would force us to confront a host of heavily individualized factual questions for each parcel, including the nature and extent of contamination as well as the necessity and feasibility of remediation.  The foreseeable difficulty in administering resolution of these questions through potentially thousands of mini-trials leads us to conclude that these claims are not maintainable under Rule 23(b)(2). Accordingly, we will not certify plaintiffs' claim for injunctive relief insofar as they request individualized remediation of real property.

By contrast, the alleged nuisance stemming from the storage of possibly toxic substances at the refinery can likely be abated with respect to all plaintiffs without separate determinations of individual causation, liability, or damages.  A class seeking such relief is cohesive and can be the subject of a maintainable action under Rule 23(b)(2).

Defendants raise two final objections to the certification of a class for injunctive relief under Rule 23(b)(2).  First, they argue that certification is inappropriate because the requested relief is unavailable as a matter of law. Defendants assert that after the 2002 sale of the refinery by St. Croix Alumina, LLC to non-party St. Croix Renaissance Group, LLLP, defendants no longer possess an ownership stake in the refinery and cannot be compelled to take action on the property. It is true that courts have refused to grant certification under

Rule 23(b)(2) where the desired equitable relief appears to be "impossible or impracticable." Bano v. Union Carbide Corp., Civ. A. No. 99-11329, 2005 WL 2464589, at *3 (S.D.N.Y. Oct. 5, 2005). Here, however, plaintiffs have alleged and shown that certain defendants may retain an ability or obligation to perform cleanup on the refinery property pursuant to a contractual right of entry. Because a full inquiry into the merits is inappropriate at the certification stage, we will not deny certification based on a possibility that the desired equitable relief may eventually prove unavailable after the issue is fully litigated.

Defendants' second argument is that certification is inappropriate in light of ongoing litigation between certain defendants and the U.S. Virgin Islands Department of Planning and Natural Resources ("DPNR") related to the environmental threat posed by the bauxite and red dust currently stored at the refinery. They cite Brown, in which the court listed several grounds for denying certification of a putative class under Rule 23(b)(2), one of which was the fact that "[p]arallel litigation by the EPA and the Pennsylvania Department of Environmental Conservation is already focusing on this problem." 1987 WL 9273, at *13. In this case, however, it is unclear whether the DPNR suit can be considered "parallel" given that the agency action seeks to enjoin alleged environmental contamination of wetlands near the refinery rather than alleviate a possible threat to the safety of nearby residents. Consequently we find it unnecessary to deny certification on this basis.

-24-

We do agree with defendants, however, that a class
definition suitable for the putative class under Rule 23(b)(3)
may be both under- and over-inclusive if blindly applied to the
proposed Rule 23(b)(2) action for abatement of a currently
existing public nuisance.  Plaintiffs concede that "district
courts have broad discretion to modify class definitions ...
[and] make appropriate adjustments to the class definition as the
litigation progresse[s]."  Powers v. Hamilton County Public
Defender Comm'n, 501 F.3d 592, 619 (6th Cir. 2007).  See also
Schorsch v. Hewlett-Packard Co., 417 F.3d 748, 750 (7th Cir.
2005); In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th
Cir. 2004); Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993).
Applying that discretion, we will certify the following class of
plaintiffs under Rule 23(b)(2):

> All persons who currently reside, work,
> and/or own property in the projects of Harvey
> and Clifton Hill and the estates of Barren
> Spot, Profit, Clifton Hill, and La Reine who,
> because of the presence of bauxite and red
> mud on the St. Croix Alumina Refinery Plant
> property due to defendants' conduct, could
> suffer personal injuries or property damage
> in the future as a result of exposure to that
> bauxite and red mud.

To be clear, we will certify this class of plaintiffs
under Rule 23(b)(2) only insofar as they seek cleanup, abatement
or removal of the substances currently present on the refinery
property.  We expressly deny certification of plaintiffs' claim
for injunctive relief to the extent that they request cleanup,

-25-

abatement or removal of substances lying elsewhere on the island
of St. Croix.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                              _____
                              HARVEY BARTLE III        C.J.
                              SITTING BY DESIGNATION