## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

JOSEPHAT HENRY resident of Harvey, KAY        )
WILLIAMS resident of Harvey, SYLVIA           )
BROWNE resident of Clifton Hill, MAUDE DREW   )        CIVIL NO. 1999/0036
resident of Estate Barren Spot, MARTHA ACOSTA )
resident of Estate Profit, WILHELMINA GLASGOW )
 as an individual and mother and next friend of )
SAMANTHA VIERA, a minor, both residents of    )
Estate Profit, MERCEDES ROSA resident of Estate )
Profit, GEORGE RODRIGUEZ as an individual and as )
father and next friend of AMANDO and GEORGE E. )
RODRIGUEZ, Minors, all residents of Estate Profit, )
SONYA CIRILO resident of Estate Profit,       )
RAQUEL TAVAREZ, resident of Estate Profit,    )
NEFTALI CAMACHO, as an individual and as      )
father and next friend of ANGEL JAVIER        )
CAMACHO, a minor, both residents of Estate Profit, )
EYAJIE MALAYKHAN resident of Estate Profit,   )
CHEDDIE KELSHALL resident of Estate Profit    )
and other persons too numerous to mention, A  )
CLASS ACTION,                                 )
                                              )
                              Plaintiffs,     )
     v.                                       )
                                              )
ST. CROIX ALUMINA, LLC, ALCOA INC., and       )
GLENCORE, LTD, f/k/a CLARENDON, LTD.,         )
                                              )
                              Defendants.     )
_____)

## DEFENDANTS ALCOA INC. AND ST. CROIX ALUMINA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLASS CLAIM FOR INJUNCTIVE RELIEF

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

LEGAL STANDARD ................................................................................................. 5

ARGUMENT .............................................................................................................. 6

    I.     BECAUSE DEFENDANTS HAVE NO LEGAL RESPONSIBILITY FOR THE CURRENT CONDITION OF THE PROPERTY CONSTITUTING THE ALLEGED CONTINUING NUISANCE, PLAINTIFFS CANNOT PREVAIL ON THEIR CLAIM FOR INJUNCTIVE RELIEF AS A MATTER OF LAW .................................. 6

          A.     Alcoa And SCA Cannot Be Held Liable For Any Nuisance On The Property Because The Current Owner Has Had A Reasonable Opportunity To Abate As A Matter Of Law .................................. 7

          B.     Assuming *Arguendo* Seven Years Has Not Provided A Reasonable Opportunity For SCRG To Abate The Alleged Nuisance, Injunctive Relief Is Still Unavailable .......................................... 10

    II.    PLAINTIFFS CANNOT MEET THEIR BURDEN ON PROOF ON THEIR CLAIM FOR INJUNCTIVE RELIEF BECAUSE THEY HAVE FAILED TO DEVELOP THE NECESSARY ADMISSIBLE EXPERT EVIDENCE .................................................................................... 12

          A.     Plaintiffs' Total Lack Of Expert Evidence Regarding The Nature – Or Even Existence – Of The Alleged Continuing Nuisance Is Fatal To Their Claim For Injunctive Relief .......................................... 13

          B.     Plaintiffs' Total Lack Of Expert Evidence Regarding The Remediation They Seek Is Fatal To Their Claim For Injunctive Relief ......................................................................................... 14

    III.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF UNDER THE DOCTRINE OF PRIMARY JURISDICTION .................................................................................. 17

A.     The Question At Issue Is Outside The Conventional Experience Of Judges And Involves Technical And Policy Considerations Within DPNR's Particular Field Of Expertise ........................................................18

B.     The Question At Issue Is Particularly Within DPNR's Discretion............20

C.     A Substantial Danger Of Inconsistent Rulings Exists ..............................21

D.     Prior Application To The Agency Has Been Made ..................................24

CONCLUSION........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Allgood v. General Motors Corp.*,
  2006 U.S. Dist. LEXIS 70764 (S.D. Ind. 2006) ..........................................................15, 16

*Amerigas, Inc. v. Univar Corp.*,
  1985 U.S. Dist. LEXIS 23006 (D.N.M. 1985) .....................................................19, 22, 23

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................................6

*AT&T Corp. v. PAB, Inc.*,
  935 F. Supp. 584 (E.D. Pa. 1996) ......................................................................................18

*Busch Oil Co. v. Amoco Oil Co.*,
  1996 U.S. Dist. LEXIS 4705 (E.D. Mich. 1996) ...............................................................11

*CR Indus., Inc. v. Transcontinental Gas Pipe Line Corp.*,
  614 F.2d 33 (4th Cir. 1980) ................................................................................................24

*Collins v. Olin Corp.*,
  418 F. Supp. 2d 34 (D. Conn. 2006).................................................................................20

*Davies v. Nat'l Coop. Refinery Ass'n*,
  963 F. Supp. 990 (D. Kan. 1998)..................................................................................21, 22

*Far East Conference v. United States*,
  342 U.S. 570 (1952)..............................................................................................................22

*Friends of Santa Fe County v. LAC Minerals, Inc.*,
  892 F. Supp. 1333 (D.N.M. 1995) ...............................................................................18, 24

*Gov't Guar. Fund of the Rep. of Finland v. Hyatt Corp.*,
  960 F. Supp. 931 (D.V.I. 1997) .........................................................................................5, 6

*Hawks v. City of Coffeyville*,
  1994 U.S. Dist. LEXIS 15163 (D. Kan. 1994) ...................................................................11

*Henry v. St. Croix Alumina, LLC*,
  2009 U.S. Dist. LEXIS 31352 (D.V.I. 2009)....................................................................2, 3

*Hodge v. Bluebeard's Castle, Inc.,*
    44 V.I. 242 (V.I. Terr. Ct. 2002)........................................................7

*Holder v. Gold Fields Mining Corp.,*
    506 F. Supp. 2d 792 (N.D. Okla. 2007)..............................19, 22, 24

*Loggerhead Turtle v. County Council of Volusia County, Florida,*
    148 F.3d 1231 (11th Cir. 1998) .................................................24

*MCI Commc'ns. Corp. v. AT&T Co.,*
    496 F.2d 214 (3d Cir. 1974)......................................................17

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.,*
    532 F.2d 412 (5th Cir. 1976) ....................................................24

*Nat'l Comm. Ass'n, Inc. v. AT&T Co.,*
    46 F.3d 222 (2d Cir. 1995)........................................................18

*New Mexico v. Gen. Elec. Co.,*
    322 F. Supp. 2d 1237 (D.N.M. 2004) .......................................14

*Oleksiuk v. Carribean Watersports & Tours, L.L.C.,*
    2005 U.S. Dist. LEXIS 14452 (D.V.I. 2005)............................6

*Porter v. Whitehall Labs., Inc.,*
    791 F. Supp. 1335, 1342 (S.D. Ind. 1992) ..............................16

*Roberts v. Chemlawn Corp.,*
    716 F. Supp. 364 (N.D. Ill. 1989) ...........................................24

*Royal Indemnity Co. v. Caleco, Inc.,*
    2004 U.S. Dist. LEXIS 23300 (E.D. Pa. 2004) .....................8, 9

*Satterfield v. J.M. Huber Corp.,*
    888 F. Supp. 1567 (N.D. Ga. 1995) .........................................14

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.,*
    857 F. Supp. 838 (D.N.M. 1994) .......................................16, 23

## State Cases

*Alderman v. Clean Earth, Inc.,*
    2007 Del. Super. LEXIS 125 (Del. Super. Ct. 2007)...............16

*Bowen v. City of Kansas City,*
    646 P.2d 484 (Kan. 1982)........................................................11

*City of Chicago v. Stern*,
96 Ill. App. 3d 264, 421 N.E.2d 260 (Ill. App. Ct. 1981).................................................11

*Comm. to Save Guilford Shoreline, Inc. v. Arrow Paving*,
2007 Conn. Super. LEXIS 663 (Conn. Super. Ct. 2007)...................................................13

*Kleber v. City of Atlanta*,
Ga. App. LEXIS 396 (Ga. Ct. App. March 28, 2008) ......................................................11

*Maisenbach v. Buckner*,
133 Ill. App. 2d 53, 272 N.E.2d 851 (Ill. App. Ct. 1971)................................................11

## Statues

1 V.I.C. § 4.............................................................................................................................7

3 V.I.C. § 401.......................................................................................................................20

12 V.I.C. § 208.....................................................................................................................20

14 V.I.C. § 1461.....................................................................................................................7

CVIR 12-009-000, § 204-25.................................................................................................20

## Rules

Fed. R. Civ. P. 23(b)(2)..........................................................................................................1

Fed. R. Civ. P. 23(b)(3)..........................................................................................................1

Fed. R. Civ. P. 56(c) ..............................................................................................................6

## Other Authorities

58 Am. Jur. 2d, Nuisances § 313 .........................................................................................11

Restatement (Second) of Torts, § 821B .................................................................................7

Restatement (Second) of Torts, § 840A.........................................................................8, 9, 10

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 1

Defendants Alcoa Inc. ("Alcoa") and St. Croix Alumina, LLC ("SCA") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment.

## **INTRODUCTION**

For ten years, Plaintiffs have focused this litigation on claims for damages allegedly caused on September 21, 1998 – the day on which Hurricane Georges struck the island of St. Croix and allegedly dispersed material from an alumina refinery into nearby neighborhoods where Plaintiffs lived or worked.   After Alcoa, SCA and Glencore Ltd. (collectively, "Defendants") moved in April 2008 for decertification of the 23(b)(3) class pursuing those damages claims, however, Plaintiffs moved for certification of a 23(b)(2) class to address the public nuisance count included in their Complaint.  The Court certified the 23(b)(2) class as to Plaintiffs' claim for injunctive relief – though only to the extent that Plaintiffs seek "cleanup, abatement or removal of the substances ***currently present*** on the refinery property."  (Memo. Op. at 25, Doc. 1255 (emphasis added).)

Summary judgment in favor of Defendants on Plaintiffs' class claim for nuisance is required for three related reasons.  First, it is undisputed that Alcoa never owned the refinery property and that SCA sold the property in 2002, more than seven years ago.   Under the governing legal standard as set forth in the Restatement (Second) of Torts, because the successor owner has had more than sufficient time to abate the alleged nuisance, neither Alcoa nor SCA has any liability.

Second, both fact and expert discovery are closed.  There is no evidence of the status of the refinery property as it exists today.  But such information is crucial to any claim seeking to abate a currently existing nuisance, especially where, as here, the refinery has not been operational for more than eight years.  Most importantly, Plaintiffs have failed to develop any

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 2

admissible expert evidence regarding the proper scope and approach of any closure and/or remediation plan. Accordingly, summary judgment in favor of Defendants is appropriate.

Third, summary judgment is proper under the doctrine of primary jurisdiction. Where, as here, a question before the Court implicates technical and policy considerations particularly within the expertise of an administrative agency – here, the Virgin Islands Department of Planning and Natural Resources ("DPNR") – it is appropriate for the Court to decline to rule on the question and instead defer to the administrative agency.

## FACTUAL BACKGROUND

There is currently on St. Croix a dormant alumina refinery that has not been in operation since December 2000.[1] Since 2002, the property encompassing the alumina refinery has been owned by a consortium now known as St. Croix Renaissance Group, L.L.L.P. ("SCRG"), which is unrelated to any of the parties in this action. *See* Declaration of Eric Black, ¶ 7, attached as Exhibit A. Prior to that, it was owned and operated by SCA, a partially-owned indirect subsidiary of Alcoa. *See id.*, ¶ 4. SCA had acquired the facility in 1995 from Vialco; Vialco had acquired the facility in 1989 from Martin Marietta. *See id.*, ¶¶ 3. Martin Marietta and its predecessors in interest had owned the facility since its opening in the 1960s. *See id.*

While the facility was in operation, bauxite, a naturally occurring ore rich in aluminum oxide from which alumina is extracted via the Bayer process, was stored in a large, A-frame steel structure. *See Henry v. St. Croix Alumina, LLC,* 2009 U.S. Dist. LEXIS 31352, *5 (D.V.I.

---

[1] Defendants have filed herewith a Statement of Undisputed Material Facts ("SUF").

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 3

2009).[2]  Because the facility has not been in operation for eight years, at most a *de minimus* amount of bauxite remains at the facility today.  *See* Exh. A, Black Dec., ¶ 8.

A by-product of the Bayer process is bauxite residue, also known as "red mud."  It was Martin Marietta that, in the 1970s, first began using the "dry-stacking" method of bauxite residue disposal at the St. Croix facility.  *See id.*, ¶ 6; Environ Report at 7, attached as Exhibit B.  The bauxite residue was mixed with seawater and deposited in "cells" on the refinery property, where it would dry to a firm, clay soil consistency.  *See* Black Dec., ¶ 6; Exh. A, Environ Report at 7, Exh. B.  Vialco and then SCA continued this disposal method throughout their respective periods of operation of the facility.  *See* Black Dec., ¶ 6; Exh. A, Environ Report at 7, Exh. B.

On September 21, 1998, Hurricane Georges struck St. Croix.  *See Henry*, 2009 U.S. Dist. LEXIS 31352 at *5.  In this action, Plaintiffs have claimed that "red dust" was blown from the alumina refinery into the surrounding neighborhoods, where it allegedly damaged their real and personal property and caused them a variety of ailments.  (*See* Third Am. Compl., ¶ 24.) Plaintiffs claim that this material was red mud carried from the alumina refinery site, but have failed to develop admissible expert testimony in support of this allegation.  *See Henry*, 2009 U.S. Dist. LEXIS 31352 at *13-17.

SCA stopped operating the facility in January 2001.  *See* Exh. A, Black Dec., ¶ 4. Following closure of the facility, SCA sold the property to the entity now known as SCRG.  *See id.*, ¶ 7.  The parties engaged in an extensive due diligence process prior to the execution of the Purchase and Sale Agreement.  *See*, *e.g.*, Purchase and Sale Agreement at 13, attached as Exhibit

---

[2] In its memorandum opinion granting Defendants' *Daubert* motions, the Court included findings of "facts [that] are not in dispute."  *Henry*, 2009 U.S. Dist. LEXIS 31352 at *4-5.  As these factual findings are undisputed, Defendants have relied on them here.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 4

C ("Seller has made available to Purchaser copies of the Environmental Due Diligence Assessment for St. Croix Alumina, St. Croix, U.S. Virgin Islands.").  With that knowledge, SCRG's predecessors in interest acquired the property,[3] and in fact expressly assumed liability arising from the red mud pile:  "Except for the Seller's Retained Liabilities, Purchaser shall also indemnify, defend and hold harmless Seller and the Seller Indemnitees from any and all Damages arising out of or related to:. . . (iv) claims regarding the discharge, disposal or release of bauxite, bauxite residue or red mud."  *Id.* at 9.[4]

In Spring 2002, red mud was released into a ditch on the property's western border; some amount of that red mud migrated to the mangrove and beach area.[5]  *See* Black Dec., ¶ 9.  In light of that release, the parties agreed to an amendment to the Purchase and Sale Agreement.  *See* June 13, 2002 Amendment, attached as Exhibit D.  As part of the Amendment the parties clarified that responsibility for any remediation of the bauxite residue disposal area would remain with the purchasers:  "The Purchaser shall be responsible for all liability associated with contouring or vegetation of the bauxite residue disposal areas or other work in the bauxite residue disposal areas."  *Id.* at 2.[6]

---

[3] *See* Purchase and Sale Agreement at 5.

[4] The Retained Liabilities include "liability arising out of any alleged failure to secure materials on the Property. . . allegedly blown off the Property on or about September 21, 1998 when the Island of St. Croix was struck by Hurricane Georges."  *Id.* at 8.

[5] Unlike the release alleged by Plaintiffs, the April 2002 incident did not involve airborne dispersion caused by wind.

[6] The Amendment did provide that SCA would retain liability for the clean-up of the red mud released into the wetlands in Spring 2002.  *See* Exh. D, Amendment at 1.

<u>Henry, et al. v. St. Croix Alumina, LLC, et al.</u>, C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 5

In the past three years, DPNR has filed two "enforcement" actions relating to the alumina refinery site against SCA and others in the Virgin Islands Superior Court.[7]  In the first, filed on December 1, 2006 against SCA alone, DPNR has requested the imposition of civil penalties and an award of exemplary damages for SCA's alleged violation of a Coastal Zone Management ("CZM") permit in the course of its response to the April 2002 red mud release.  *See* Complaint filed in *Comm'r of the Dep't of Planning and Natural Resources v. St. Croix Alumina, LLC*, Civil No. 2006/730, in the Superior Court of the Virgin Islands ("First Enforcement Action"), attached as Exhibit E.  In the second, filed December 21, 2006 against SCA, Vialco and SCRG, DPNR seeks civil penalties, exemplary damages, and injunctive relief in the form of a "cap, erosion control, and drainage control systems" for the alumina refinery site.  *See* Complaint filed in *Comm'r of the Dep't of Planning and Natural Resources v. Virgin Islands Alumina Co., et al.*, Civil No. 2006/772, in the Superior Court of the Virgin Islands ("Second Enforcement Action"), at pg. 13, attached as Exhibit F.

## **LEGAL STANDARD**

The moving party is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions, taken together with the affidavits (if any), show that there is no genuine issue as to any material fact.  *Government Guarantee Fund of the Republic of*

---

[7] In May 2005, DPNR also filed an action against Century Alumina Company; Vialco; SCA; Lockheed Martin Corporation; Alcoa World Alumina, LLC; HOVENSA, LLC; Hess Oil Virgin Islands Corporation; and SCRG, bringing claims under the Comprehensive Environmental Response, Contamination, and Liability Act ("CERCLA"), the Virgin Islands Oil Spill Prevention and Pollution Control Act, the Territorial Water Pollution Control Act, and several common law theories, including public nuisance.  *See* Complaint filed in *Comm'r of the Dep't of Planning and Natural Resources v. Century Alumina Co., et al.*, Civil No. 2005/0062, in the District Court of the District of the Virgin Islands, Division of St. Croix, a copy of which is attached as Exhibit G.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 6

*Finland v. Hyatt Corp.*, 960 F. Supp. 931, 935 (D.V.I. 1997); *see also* Fed. R. Civ. P. 56(c).

Summary judgment shall be granted where, upon the moving party's support of its motion, the

non-moving party fails to establish a genuine issue of material fact or completely fails to

demonstrate proof concerning an essential element of its case.  *See Hyatt Corp.*, 960 F. Supp. at

935-36.

The non-moving party must establish by specific facts that there is a genuine issue for

trial; mere allegations or denials are insufficient to establish the existence of a material fact.

*Oleksiuk v. Carribean Watersports & Tours, L.L.C.*, 2005 U.S. Dist. LEXIS 14452, *1, *4

(D.V.I. 2005).   In order for the plaintiff to overcome a motion for summary judgment, "there

must be evidence on which a reasonable jury could reasonably find for the plaintiff."  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

## I.   BECAUSE DEFENDANTS HAVE NO LEGAL RESPONSIBILITY FOR THE CURRENT CONDITION OF THE PROPERTY CONSTITUTING THE ALLEGED CONTINUING NUISANCE, PLAINTIFFS CANNOT PREVAIL ON THEIR CLAIM FOR INJUNCTIVE RELIEF AS A MATTER OF LAW.

Plaintiffs seek to prosecute their nuisance claim against Alcoa and SCA despite the fact

that SCA has not owned the property in question since 2002 and Alcoa has never owned the

property.  *See* Exh. A, Black Dec., ¶¶ 4, 7.  As demonstrated *infra*, these Defendants cannot be

held liable for any alleged nuisance currently on the property, and thus summary judgment is

required.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 7

A.   Alcoa And SCA Cannot Be Held Liable For Any Nuisance On The Property Because The Current Owner Has Had A Reasonable Opportunity To Abate As A Matter Of Law.

Under Virgin Islands law, a public nuisance is defined as "anything which – (1) is injurious to health, indecent, offensive to the senses or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by a considerable number of persons." 14 V.I.C. § 1461. The Second Restatement puts forth a more detailed description:

> (1) A public nuisance is an unreasonable interference with a right common to the general public. (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following: (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

Restatement (Second) of Torts, § 821B.[8]

A threshold question, also addressed in the Restatement, is who may be liable for nuisance. As the Restatement makes clear, a former owner is liable for a nuisance only for a limited period of time:

> (1) A vendor or lessor of land upon which there is a condition involving a nuisance for which he would be subject to liability if he continued in possession remains subject to liability for the continuation of the nuisance after he transfers the land. (2) If the vendor or lessor has created the

---

[8] The Virgin Islands legislature has adopted the restatements in the absence of other controlling local law. *See* 1 V.I.C. § 4 ("The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."). Virgin Islands courts will look to the Restatement for guidance in weighing nuisance claims. *See, e.g., Hodge v. Bluebeard's Castle, Inc.*, 44 V.I. 242 (V.I. Terr. Ct. 2002), *aff'd, Bluebeard's Castle, Inc. v. Hodge*, 2009 U.S. Dist. LEXIS 32521 (D.V.I. April 1, 2009).

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 8

> condition or has actively concealed it from the vendee or lessee the
> liability stated in Subsection (1) continues **_until the vendee or lessee
> discovers the condition and has reasonable opportunity to abate it_**.

Restatement (Second) of Torts, § 840A (emphasis added).

As an initial matter, it is undisputed that SCRG had notice of the condition of the red mud

pile when it purchased the property.  *See* Exh. C, Purchase and Sale Agreement at 13 ("Seller has

made available to Purchaser copies of the Environmental Due Diligence Assessment for St.

Croix Alumina, St. Croix, U.S. Virgin Islands"); *id.* at 5 (agreeing to indemnify and hold

harmless SCA against any liability arising from the condition of the red mud pile); Exh. D, June

13, 2002 Amendment to Purchase and Sale Agreement at 2 (assuming "liability associated with

contouring or vegetation of the bauxite residue disposal areas or other work in the bauxite

residue disposal areas").   It is also undisputed that SCRG was well aware of Plaintiffs'

allegations that red mud was dispersed into surrounding neighborhoods as a result of Hurricane

Georges.  *See* Exh. C, Purchase and Sale Agreement at 8 (Retained Liabilities include "liability

arising out of any alleged failure to secure materials on the Property. . . allegedly blown off the

Property on or about September 21, 1998 when the Island of St. Croix was struck by Hurricane

Georges.").

The relevant question, then, is whether six years constitutes a "reasonable opportunity" to

abate an alleged nuisance as a matter of law.  The answer is clearly yes.

In *Royal Indemnity Co. v. Caleco, Inc.*, 2004 U.S. Dist. LEXIS 23300 (E.D. Pa. 2004),

the District Court for the Eastern District of Pennsylvania held that as a matter of law, two years

is sufficient time to abate an alleged nuisance.  The plaintiffs in that case brought, *inter alia*, a

nuisance claim against Conrail, arguing that Conrail was liable for a flood allegedly caused by a

bridge Conrail had sold two years earlier.  *Id.* at *3-4.   Conrail had owned a bridge over

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 9

Pennypack Creek in Upper Moreland Township, Pennsylvania since 1976; in 1999, it sold the bridge to Pennsylvania Lines.  *Id*. at *5.  According to the plaintiffs' expert, Pennypack Creek had regularly flooded, and during floods the bridge often caused a backwater effect, diverting water into a nearby apartment complex.  *Id*. at *5-6.  In June 2001, the area experienced heavy rains brought by Tropical Storm Allison; water backed up in front of the bridge and eventually flooded the basement of the apartment complex.  *Id*. at *3.  A gas-powered clothes dryer was moved, gas was released, and the resulting explosion destroyed the building and killed several people.  *Id*.  The plaintiffs' expert concluded that the backup of water was a "substantial contributing factor" to the flooding, and that if the bridge had been modified, the flood and fire would not have occurred.  *Id*. at *6.

Conrail moved for summary judgment on the plaintiffs' nuisance claims against it.  The district court, following § 840A, concluded that Conrail could not be held liable under a nuisance theory because two years had passed since it had sold the bridge.  *Id*. at *20-21.  According to the district court, there was no genuine question of material facts as to whether two years was a reasonable opportunity to abate the alleged nuisance, and summary judgment was therefore appropriate.  *Id*. at *21-22.

The *Caleco* court was correct that two years is, as a matter of law, reasonable opportunity to abate a nuisance of which the new owner is aware; certainly the six years SCRG has owned the property constitute a "reasonable opportunity" to abate whatever nuisance might be at the site.  SCRG came into ownership with its eyes open, and with a contractual responsibility for the condition of the property.  SCRG has been contractually obligated to undertake whatever remediation may be required for six years,  *see* Exh. D, Amendment to Purchase and Sale

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 10

Agreement at 2, thus demonstrating that it has had more than a reasonable opportunity to abate over these past six years.[9]

B.  Assuming *Arguendo* Seven Years Has Not Provided A Reasonable Opportunity For SCRG To Abate The Alleged Nuisance, Injunctive Relief Is Still Unavailable.

While in certain circumstances it may be appropriate to hold a previous owner liable for harm caused by a nuisance because the present owner did not have an opportunity to abate the nuisance before the harm occurred, that rule cannot obtain where the "harm" at issue *has not yet occurred*. Because the harm has not yet occurred, it cannot be said that the current owner did not have a reasonable opportunity to abate the alleged nuisance – since the "harm" can only occur in the future, both the previous and current owner are on equal footing as to the opportunity to abate, and so the responsibility lies with the current owner of the property containing the nuisance. This is especially true where, as here, the previous and current owner have contractually allocated any responsibility for abatement to the current owner.

"For the issuance of injunctive relief, it is axiomatic that, as a threshold matter, the liability of those exercising control over the place of the nuisance – that is, the owners or operators of the business on the premises – must be established to justify an injunction against

---

[9] In his opinion on Glencore's summary judgment motion, Judge Finch recognized that Section 840A limits the liability of a seller of land for an alleged nuisance. (*See* Memo. Op. dated August 10, 2007, at 12.) Judge Finch concluded that Glencore had not provided evidence to demonstrate that three years – the time between Vialco's sale of the refinery to SCA and Hurricane Georges – was sufficient for SCA to abate the red mud piles, and thus found a question of fact existed as to whether Vialco (but not Glencore) could have liability as a former owner of the refinery. (*Id.* at 13-14.) Judge Finch's decision is not controlling here. Unlike the Vialco situation addressed by Judge Finch (where liability either existed or did not exist on the day of Hurricane Georges) here the alleged nuisance – and the reason that abatement rather than damages is sought – is the purported risk of future injury. It has been seven years since SCA sold the property, not three, and more than 10 years since the events at issue in this lawsuit occurred. Moreover, DPNR has suggested that any remediation of this site could be completed within 18 months. *See* Exh. F, Second Enforcement Action Compl., Request for Relief.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 11

the activity."  58 Am. Jur. 2d, Nuisances § 313 (citing *City of Chicago v. Stern*, 96 Ill. App. 3d

264, 267, 421 N.E.2d 260 (Ill. App. Ct. 1981) ("In the absence of proof of ownership, operation,

or control of the premises by any defendant, the trial court properly found that equity could not

intervene to abate the alleged nuisance existing on the premises.")).   Here, there is no dispute

that neither Alcoa nor SCA owns, operates or controls the facility.   Thus the only reasonable

conclusion is that the Court should not enjoin Alcoa or SCA to remediate the facility.[10]

This is an eminently sensible, widely followed principle:  "a defendant is not responsible

to abate a nuisance where the defendant does not have a right to possess or control the nuisance."

*Busch Oil Co. v. Amoco Oil Co.*, 1996 U.S. Dist. LEXIS 4705, *27 (E.D. Mich. 1996).  *See also*

*Kleber v. City of Atlanta*, Ga. App. LEXIS 396, *23 (Ga. Ct. App. March 28, 2008) (Smith, P.J.,

concurring) ("[W]hether a nuisance 'can and should be abated by' a person depends not merely

on whether the abatement is *advisable* from a public policy or necessity standpoint ('should be'),

but also on whether the defendant still controls the property and thus has the *ability* to go on the

land to abate the nuisance itself ('can').");  *Hawks v. City of Coffeyville*, 1994 U.S. Dist. LEXIS

15163, *9 (D. Kan. 1994) (citing *Bowen v. City of Kansas City*, 646 P.2d 484 (Kan. 1982))

("[T]he issue before the Court is whether a former landowner may be held liable as a continuing

tortfeasor for pollutants deposited during ownership, even after ownership has been relinquished.

Kansas case law indicates that such an owner cannot be classified as a continuing tortfeasor

because that owner no longer has the right to enter the property and abate the problem.");

*Maisenbach v. Buckner*, 133 Ill. App. 2d 53, 56, 272 N.E.2d 851, 854 (Ill. App. Ct. 1971)

("Where a landowner clearly has no right to control the property after he sells it to another, he

---

[10] Plaintiffs have not explained why they have not sought injunctive relief from SCRG, the owner of the facility since 2002.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 12

likewise can have no duty to third persons injured in connection with the property after the sale.").

Alcoa and SCA cannot be required to enter the property of a stranger to the litigation, SCRG, and perform as-yet-undetermined remediation work. The Court should not order Defendants to enter the property of a non-party to this litigation. The Court ought to find now that no injunctive relief is available, and that as a result, Plaintiffs' sole remaining class claim must be dismissed.

**II.    PLAINTIFFS CANNOT MEET THEIR BURDEN ON PROOF ON THEIR CLAIM FOR INJUNCTIVE RELIEF BECAUSE THEY HAVE FAILED TO DEVELOP THE NECESSARY ADMISSIBLE EXPERT EVIDENCE.**

Throughout this litigation Plaintiffs have by and large ignored their claim for injunctive relief, focusing instead on those claims that might result in money damages. In so doing, they largely failed to develop any expert evidence regarding the alleged continuing nuisance – both with respect to its existence and with respect to what might constitute an appropriate remedy. The recent rulings on Defendants' *Daubert* motions have confirmed that Plaintiffs have absolutely no way to support their claim for injunctive relief with the requisite expert evidence. Accordingly, even if Defendants (rather than SCRG) were the appropriate parties to conduct any necessary remediation, such an order would still be inappropriate, because Plaintiffs cannot meet their high burden of explaining to the Court what injunctive relief might be both necessary and possible.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 13

> A.   Plaintiffs' Total Lack Of Expert Evidence Regarding The Nature – Or Even Existence – Of The Alleged Continuing Nuisance Is Fatal To Their Claim For Injunctive Relief.

In the wake of the Court's ruling excluding the opinions of Plaintiffs' experts Jim Tarr, Clayton Bock and Edward Kleppinger, Plaintiffs are left without any expert testimony regarding what, if anything, left the facility site in September 1998. Plaintiffs have no evidence that any red mud ever left the site[11] – so they clearly do not have any evidence that there has ever been a significant threat of fugitive dust emissions from the red mud pile, let alone that such a threat exists now. Further, to the extent Plaintiffs attempt to argue that there may be some threat of dispersion of bauxite from the facility site today, that argument fails. Bauxite is a raw material used by *working* alumina refineries; the St. Croix refinery has not been in operation since 2001. *See* Exh. A, Black Dec., ¶ 4, 8. There is no evidence that there is any meaningful amount of bauxite left at the facility site to threaten "substantial harm."

Thus, Plaintiffs have no expert evidence that there is *today* any potential for emission of any bauxite or red mud or other material from the facility onto their property. That lack of expert evidence is fatal to their claim for injunctive relief. Even assuming that Plaintiffs were able to testify that they believe they have watched material be dispersed from the facility and make its way to their neighborhoods, such lay testimony would not suffice. As a district court held when faced with a similar question:

> Defendant argues that plaintiff has introduced no admissible evidence as to the creation of a nuisance on plaintiffs' property and that the court should require scientific evidence or expert testimony in this case. In

---

[11] Nor could Plaintiffs merely rely on a release that allegedly occurred over ten years ago to support a claim of continuing public nuisance today: "Past harm to the environment will not serve to establish public nuisance for the very reason that it is in the past." *Comm. to Save Guilford Shoreline, Inc. v. Arrow Paving*, 2007 Conn. Super. LEXIS 663, 80 (Conn. Super. Ct. 2007).

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 14

> response, plaintiffs argue that they have introduced testimony that
> plaintiffs themselves have seen smoke from defendant's plant invade their
> property and that they have suffered damage as a result.  After careful
> review, the court agrees with the defendants. . . .  [The] plaintiffs have
> again failed to introduce any form of expert testimony or scientific
> evidence that the source of the alleged noise, airborne pollutants and odor
> is emanating from defendant's plant.

*Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1567, 1572 (N.D. Ga. 1995).

Defendants are not required to produce evidence of the absence of a nuisance; "[r]ather, the burden is on the Plaintiffs to come forward with significant probative evidence of specific facts showing that this alleged injury does exist – indeed, to come forward with sufficient admissible evidence of the alleged injury to permit a reasonable jury to find in Plaintiffs' favor." *New Mexico v. Gen. Elec. Co.*, 322 F. Supp. 2d 1237, 1255 (D.N.M. 2004).  Here, Plaintiffs have found themselves without the necessary evidence to support the proposition that there exists today any continuing nuisance at the facility site.  That alone is fatal to their class claim for injunctive relief.

B.   Plaintiffs' Total Lack Of Expert Evidence Regarding The Remediation They Seek Is Fatal To Their Claim For Injunctive Relief.

Plaintiffs are not merely without any expert testimony that would allow them to demonstrate the *existence* of a continuing nuisance; they are also without any expert testimony that would allow them to demonstrate *what might be done* about that alleged continuing nuisance.[12]  Courts have noted that such expert testimony is absolutely necessary to allow courts to fashion appropriate remedies.

---

[12]  Lack of expert testimony regarding appropriate measures for closure and/or remediation of bauxite refining facilities was a problem for Plaintiffs even before this Court's ruling on Defendants' *Daubert* motions – at no point did Plaintiffs develop any expert testimony on the subject.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 15

For instance, in *Allgood v. General Motors Corp.*, 2006 U.S. Dist. LEXIS 70764 (S.D. Ind. 2006), a district court considered the claims of a group of individual plaintiff landowners seeking, *inter alia*, remediation costs from General Motors for alleged PCB contamination of groundwater. In support of their remediation claim the plaintiffs proffered testimony from two experts: a microbiologist who would testify regarding an assessment of the risk of PCB exposure on the plaintiffs' property, *id*. at *16, and an engineer who prepared reports regarding the expected cost of (1) remediation of the plaintiffs' property generally and (2) monitoring and treatment of three specific wells on the plaintiffs' property. *Id*. at *36. The court excluded the microbiologist's opinions in their entirety under *Daubert*, *id*. at *35, and admitted only those opinions of the engineer that related to the three specific wells. *Id*. at *49-52.

This exclusion of expert evidence was fatal to the bulk of the plaintiffs' claims for the cost of remediation, because the court was left without any reliable guidance regarding what would constitute an appropriate remediation plan:

> The court must also keep in mind that the plaintiffs' remediation cost claims require determinations that are dependent on evidence from those with specialized knowledge. Plaintiffs' remediation claims require determinations relating to PCB-related health risk assessments, clean-up strategies and levels, and other questions not within the understanding of lay-persons. The court's decision to exclude much of plaintiffs' expert opinions warrants summary judgment for [the defendant] on all of plaintiffs' remediation claims except plaintiffs' claims for monitoring and treatment of the three wells identified in [the non-stricken portion of the plaintiffs' one remaining expert's] report.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 16

*Id.*, 2006 U.S. Dist. at *60 (internal citations omitted) (citing *Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd*, 9 F.3d 607 (7th Cir. 1993)).[13]   Likewise, another district court, faced with a similar issue, stated:

> Should the Court entertain Plaintiff's public nuisance claim, and should Plaintiff prevail on this claim, the Court would have to fashion an appropriate investigatory and remediation order. . . .  Theoretically, the Court could ***receive extensive expert testimony***, or appoint a special master, but such methods would represent a serious drain of judicial resources and would largely duplicate the present efforts of the EPA and the [New Mexico Department of the Environment].

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 842 (D.N.M. 1994) (emphasis added). [14]  Here, however, the "extensive expert testimony" that might allow the Court to proceed was never proffered by Plaintiffs during the almost ten years of this litigation before the final expert deadline.  *See also*, *e.g.*, *Alderman v. Clean Earth, Inc.*, 2007 Del. Super. LEXIS 125, *17-20 (Del. Super. Ct. 2007) (court noting that summary judgment would be appropriate after holding that plaintiffs' expert's opinions regarding necessity of remediation and appropriate plan for remediation were unreliable), *aff'd*, 954 A.2d 909 (Del. 2008).

Plaintiffs are unable to present to the Court any reliable information regarding what might be an appropriate injunctive remedy – or any information demonstrating there even is a continuing nuisance in need of a remedy.  These are areas in which, as a matter of law, expert

---

[13] If anything, the Court here is faced with a greater problem than that before the court in *Allgood*.  In *Allgood*, the plaintiffs had no intention of actually implementing the remediation plan for which they sought reimbursement; a determination of the scope of that plan was necessary only so its cost could be estimated.  Here, the Court would actually have to see the hypothetical plan through implementation.

[14] This question arose in *Schwartzman* in the primary jurisdiction context – and the *Schwartzman* court held that even where, unlike here, expert testimony might be available, abstention under the primary jurisdiction doctrine was appropriate.  As discussed *infra*, that same reasoning applies here.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 17

testimony is required for Plaintiffs to prevail, and thus summary judgment in favor of Defendants

on Plaintiffs' claim for injunctive relief is required.

## III.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF UNDER THE DOCTRINE OF PRIMARY JURISDICTION.

Even if expert testimony weren't required as a matter of law, it is certainly required as a

matter of practicality.  Any intervention by the Court on the question of what remediation might

be appropriate at the facility site today – particularly without the benefit of expert assistance –

would run directly contrary to the principles of comity and efficiency underlying the doctrine of

primary jurisdiction.  The Court should therefore defer to the primary jurisdiction of DPNR, as

closure and remediation of the alumina refinery site is currently the subject of agency action.

Primary jurisdiction is a doctrine grounded in the principle of comity among the branches

of government.   A court invoking the doctrine will defer to the appropriately-situated

administrative agency for consideration of the best approach to or resolution of a matter "even if

the matter is otherwise properly before the court, if it appears that the matter involves technical

or policy considerations which are beyond the court's ordinary competence and within the

agency's particular field of expertise."  *MCI Commc'ns. Corp. v. AT&T Co.*, 496 F.2d 214, 220

(3d Cir. 1974).  In determining whether the primary jurisdiction doctrine applies in a particular

case, courts generally weigh four factors:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 18

*AT&T Corp. v. PAB, Inc.*, 935 F. Supp. 584, 589-90 (E.D. Pa. 1996) (deferring to the primary jurisdiction of the FCC in contract action implicating tariff practices) (citing *Nat'l Comm. Ass'n, Inc. v. AT&T Co.*, 46 F.3d 222-23 (2d Cir. 1995)).

Here, each of the four factors favors deferring to the primary jurisdiction of DPNR and dismissing Plaintiffs' claim.[15]  Moreover, the complete lack of evidence regarding the nature of the alleged continuing nuisance, coupled with Plaintiffs' failure to develop any admissible expert opinions that might aid the Court in crafting an injunctive order regarding remediation, make application of the primary jurisdiction doctrine all the more appropriate.

A.   The Question At Issue Is Outside The Conventional Experience Of Judges And Involves Technical And Policy Considerations Within DPNR's Particular Field Of Expertise.

Plaintiffs have been vague about the scope of the requested injunctive relief, but they clearly seek some form of remediation of the alumina refinery site to eliminate the potential for red mud leaving the property.  This is the only possible theory for Plaintiffs, since (a) the Court prohibited class claims for any off-site remediation, and (b) bauxite is no longer used at the facility.  The crafting of a remediation plan with respect to the red mud piles would implicate technical and policy considerations outside the core competency of this Court, but squarely within the mission of DPNR.

While the record contains little evidence regarding the current state of the dry-stacking area, the red mud piles still exist in some form.  It is clear, however, that in the event the Court

---

[15]  Although some courts have found that a stay is appropriate under the primary jurisdiction doctrine, the Court here should grant summary judgment to Defendants on Plaintiffs' nuisance claim under the primary jurisdiction doctrine.  *See*, *e.g.*, *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333, 1350 (D.N.M. 1995) (granting summary judgment under primary jurisdiction doctrine on claim relating to remediation of allegedly contaminated groundwater).

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 19

did grant injunctive relief, the injunction would be considerably more complicated than merely an order requiring removal of all red mud from the site. Indeed, there is every reason to expect that wholesale removal of all red mud currently at the facility would in fact cause greater releases of fugitive dust – and potentially other problems that Plaintiffs have not even considered – than would no action at all. Moreover, DPNR has determined that any remediation will focus on contouring and revegetating the dry stack area, which would both limit stormwater run-off *and* address any concerns about airborne releases. *See* Declaration of Kirk J. Gribben, ¶¶ 10-12, attached as Exhibit H.

Not only is the issue of what to do with the red mud piles directly within DPNR's field of expertise, but it is actually currently part of a DPNR enforcement action. *See* Exh. F, Second Enforcement Action Compl. at pg. 13. In such circumstances, deference to the agency action is particularly appropriate. *See Amerigas, Inc. v. Univar Corporation*, 1985 U.S. Dist. LEXIS 23006, *8 (D.N.M. 1985) ("It is preferable that [the EPA and the state environmental agency] use their specialized competence to appraise the facts underlying this litigation and develop a comprehensive plan to deal with the problem before I reach the merits of this case."). Suffice it to say that DPNR likely has greater experience than the Court in drafting proposals to remediate sites. *See*, *e.g.*, *Holder v. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 804 (N.D. Okla. 2007) ("Contrary to plaintiffs' assertions, an order for abatement would not be as simple as ordering defendants to remove the chat piles. . . . Although it would not be impossible for the Court to craft an appropriate order, it would certainly require help from outside sources.").

Further demonstrating that deferral to agency expertise is appropriate, any proposed remediation of the dry-stack area will impact not only the potential for airborne emissions (to the extent any such potential exists), but also the potential for stormwater run-off into surrounding

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 20

areas, such as that which occurred in April 2002.  *See* Exh. H, Gribben Dec., ¶ 12.  The question of stormwater run-off and potential for groundwater contamination is not before this Court, but clearly the Court would have to take the issue into account in drafting any injunctive order. "Deciding what remedy is appropriate for varying levels of contamination, and overseeing that remedial effort, is a matter more properly within the technical expertise and experience of the DEP."  *Collins v. Olin Corp.*, 418 F. Supp. 2d 34, 44-45 (D. Conn. 2006).

In short, the complex nature of the injunctive relief Plaintiffs seek in the instant litigation, including the need to balance a host of factors that have not even been considered by any expert in this case, warrants application of the primary jurisdiction doctrine.  The issues presented by Plaintiffs' claim for injunctive relief are outside the conventional experience of the courts, and resolution of the issues will require the technical expertise that DPNR offers.

B.      The Question At Issue Is Particularly Within DPNR's Discretion.

Plaintiffs claim that red mud from the facility is or may be blown by wind into their neighborhoods.  The Virgin Islands legislature has entrusted to DPNR primary responsibility for addressing such alleged airborne releases.   DPNR's statutory powers and duties include "administer[ing] and enforc[ing] all laws pertaining to. . . air pollution and water pollution."  3 V.I.C. § 401; *see also* CVIR 12-009-000, § 204-25 (under Virgin Islands regulations, "[t]he Commissioner may require. . . reasonable measures as may be necessary to prevent particulate matter from becoming airborne").

The Commissioner of DPNR is charged with "establish[ing] by regulation the limitations of the levels, concentrations, or quantities of emissions of various air contaminants from any source necessary to protect the public health."  12 V.I.C. § 208.  Thus the question at issue -- how best to combat the potential, if any, for red mud emissions from the dry-stack area – is

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 21

particularly within DPNR's discretion.  *Cf. Davies v. Nat'l Coop. Refinery Ass'n*, 963 F. Supp. 990, 997 (D. Kan. 1998) (question of proper approach to remediation of groundwater contamination was particularly within the discretion of Kansas Department of Health and Environment, as the agency is "charged by state law with responsibility for investigating hazardous waste problems in Kansas and for protecting human health and the environment"). DPNR is currently investigating what, if anything, should be done about the red mud piles on the property.  There is no question that DPNR has the discretion to address this issue.

> C.    A Substantial Danger Of Inconsistent Rulings Exists.

The principle of comity underlying primary jurisdiction doctrine takes on heightened importance – and militates even more heavily in favor of invoking the doctrine – where the possibility exists that the relief in the private action might conflict with the agency action.  Such a possibility certainly exists here.

Plaintiffs request an order granting injunctive relief in the form of some remediation plan that would address the alleged potential for airborne releases of red mud.  Currently, DPNR is in the process of developing a plan that will address not only the potential for stormwater discharges of red mud that might impact groundwater, but also the potential for airborne releases of red mud.  *See* Exh. H, Gribben Dec., ¶ 12.

DPNR is addressing the very condition of which Plaintiffs complain.  Because DPNR is concerned with a much broader range of considerations, it is likely that the ultimate relief sought by Plaintiffs would be inconsistent with the relief sought by DPNR.  The conflict between the agency's action and any remediation plan imposed by the Court would be particularly problematic here.  As discussed *supra*, the Court's plan would address only the potential for airborne emissions because that is what the Plaintiffs are addressing.  The agency's proposed

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 22

action addresses not only that issue, but also the potential for storm water discharges, and the agency is much more attuned to the potential adverse consequences from any given course of action. Thus, the Court could very possibly frustrate the efforts of DPNR with respect to environmental issues not even before the Court if it issued the injunction sought by Plaintiffs. This possibility requires application of the primary jurisdiction doctrine:

> [D]efendants would almost certainly be subject to conflicting orders from the Court and the EPA if the Court were to grant plaintiffs' claims for injunctive relief at this time. The proper balance of judicial efficiency and administrative expertise in a specialized area such as environmental regulation favors abstention under this factor.

*Holder*, 506 F. Supp. 2d at 809 (citing *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952)); *see also Davies*, 963 F. Supp. at 999 ("After carefully considering these doctrines and the facts of the case, the court concludes that it should abstain from exercising jurisdiction under RCRA in order to permit the [Kansas Department of Health and Environment] to continue its investigation, supervision, and remediation of the site without the prospect of conflicting directives from this court as to how the contamination should be remedied.").

The District Court for the District of New Mexico found that where there is a danger of inconsistent findings or conflicting remedies, the better approach is for the court to defer to the institutional competence of the administrative agency. *Amerigas*, 1985 U.S. Dist. LEXIS 23006. In *Amerigas*, a plaintiff property owner brought a private action against a defendant that had allegedly improperly disposed of chemicals, contaminating well water on the plaintiff's property. *Id.* at *1-2. The plaintiff sought both money damages and injunctive relief. *Id.* at *3.

During the pendency of the private action, the EPA and the New Mexico Environmental Improvement Division ("NMEID") were also investigating the cause and extent of the alleged groundwater contamination. *Id.* at *2-3. The defendant in the private action requested that the

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 23

court stay the plaintiff's action pending the outcome of the agencies' investigations.  *Id*. at *8.

The court agreed that the potential for inconsistent factual findings made application of the

primary jurisdiction doctrine appropriate:  "If this case were to continue to proceed, there is the

danger that factual determinations may be inconsistent with those later made by the EPA and the

NMEID."  *Id*.  Thus, "comity and avoidance of conflict [made] it proper for [the court] to defer

to those agencies and await their factual determination as to the existence of, degree and source

of contamination, and their opinion as to appropriate remedial measures."  *Id*. at *9.

The same approach is appropriate here.  DPNR, through negotiations attendant to the

parallel litigation, is in the process of crafting a remediation plan that will address the precise

issue for which Plaintiffs here seek injunctive relief – potential red mud emissions from the

alumina refinery site.  Should the claim for injunctive relief in the instant action be permitted to

proceed, there exists the possibility that this Court would eventually be asked to craft an

injunction abating the alleged nuisance, even while DPNR is attempting to address the issue in

its own fashion.  This potential for conflict is one of the primary policy justifications for the

doctrine of primary jurisdiction.

The prospect of conflicting factual findings and remediation plans benefits no party.  As

*Schwartzman* noted, "[i]f Plaintiff's ultimate goal is remediation of the site, this goal would be

achieved faster and more efficiently through the joint efforts of [administrative agencies] without

interference from the Court."  857 F. Supp. at 842.  Additionally, the possibility is great that

Defendants would be subject to conflicting requirements under the conflicting "remedies."  *See*

*id* ("Should this Court independently determine an appropriate investigatory and remediation

plan, aspects of the plan may contradict the pending [consent order then being negotiated by the

defendant and the EPA], and subject [the defendant] to conflicting obligations.").

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 24

      D.    <u>Prior Application To The Agency Has Been Made.</u>

The final factor, too, weighs in favor of application of the primary jurisdiction doctrine. "It is axiomatic that the advisability of invoking primary jurisdiction is greatest where the issue is already before the agency." *Friends of Santa Fe*, 892 F. Supp. at 1350 (quoting *Roberts v. Chemlawn Corp.*, 716 F. Supp. 364, 365-66 (N.D. Ill. 1989) (citing *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976))). Here, in the Second Enforcement Action, DPNR seeks, *inter alia*, "an order. . . requiring VIALCO, SCA, and SCRG to implement, fund, and complete the construction of the [red mud pile] cap, erosion control, and drainage control systems ***approved by DPNR***." Exh. F, Second Enforcement Action Compl. at pg. 13. DPNR and certain defendants in the Second Enforcement Action have been involved. *See* Gribben Dec., ¶¶ 9-10. The issue is before the agency, and the agency is deeply involved in crafting a remediation approach. It is therefore appropriate for the Court to defer to the agency, rather than attempt to craft its own remediation plan. *See Holder*, 506 F. Supp. 2d at 809 ("[B]oth parties admit that EPA has initiated an investigation of [the site], and remediation is ongoing. . . . This factor strongly favors the invocation of primary jurisdiction.") (citing *Loggerhead Turtle v. County Council of Volusia County, Florida*, 148 F.3d 1231, 1260 (11th Cir. 1998); *CR Indus., Inc. v. Transcontinental Gas Pipe Line Corp.*, 614 F.2d 33, 35 (4th Cir. 1980)).

## CONCLUSION

For the reasons stated above, Defendants Alcoa Inc. and St. Croix Alumina, LLC respectfully request that the Court grant their Motion for Partial Summary Judgment as to class claim for injunctive relief, enter judgment on their behalf as to the class claim for injunctive relief, and grant such other relief as the Court deems appropriate.

Henry, et al. v. St. Croix Alumina, LLC, et al., C.A. No. 1999/0036
Alcoa Inc. and St. Croix Alumina, LLC's Memorandum of Law in Support of
Their Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief
Page 25

Dated: May 15, 2009                     Respectfully submitted,


                                        THE LAW OFFICES OF BERNARD C. PATTIE, PC
                                        s/Bernard C. Pattie
                                        Bernard C. Pattie
                                        1244 Queen Cross Street, Suite 5
                                        Christiansted, VI 00820
                                         (340) 692-1171 *phone*
                                         (340) 692-7719 *fax*
                                        boinie@compuserve.com
                                        paralegal.bcppc@vipowernet.net
                                        V.I. Bar No. 262

                                        HUNTON & WILLIAMS LLP
                                        David Craig Landin*
                                        Lori Elliott Jarvis*
                                        *Admitted *Pro Hac Vice*
                                        951 E. Byrd Street
                                        Richmond, VA 23235
                                        (804) 788-8200 *phone*
                                        (804) 788-8214 *fax*

                                        GIBSON, DUNN & CRUTCHER LLP
                                        Daniel W. Nelson*
                                        *Admitted *Pro Hac Vice*
                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C. 20036

                                        ***Counsel for Defendants***
                                        ***St. Croix Alumina, LLC and Alcoa Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of May, 2009, I electronically filed the foregoing **Memorandum of Law in Support of Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief** with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Lee J. Rohn, Esq.
> Law Offices of Lee J. Rohn
> 1101 King Street, Suite 2
> Christiansted, St. Croix VI  00820
> lee@rohnlaw.com

> Gordon C. Rhea, Esq.
> Richardson, Patrick, Westbrook & Brickman, LLC
> P.O. Box 3111
> 17 Church Street, Suite 205
> St. Croix, VI  00822
> grhea@rpwb.com

> Scott Summy, Esq.
> Renee Melancon, Esq.
> Laura Baughman, Esq.
> Ellen Presby, Esq.
> Baron & Budd, P.C.
> 3102 Oak Lawn Avenue, Suite 1100
> Dallas, TX  75219
> ssummy@baronbudd.com

> s/Bernard C. Pattie
> 1244 Queen Cross Street, Suite 5
> Christiansted, VI 00820
> (340) 692-1171 *phone*
> (340) 692-7719 *fax*
> boinie@compuserve.com
> paralegal.bcppc@vipowernet.net
> V.I. Bar No. 262