# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

JOSEPHAT HENRY resident of Harvey, KAY WILLIAMS resident of Harvey, SYLVIA BROWNE resident of Clifton Hill, MAUD DREW resident of Estate Barren Spot, MARTHA ACOSTA resident of Estate Profit, WILHELMINA GLASGOW as an individual and mother and next of friend of SAMANTHA VIERA, a minor, both residents of Estate Profit, MERCEDES ROSA resident of Estate Profit, GEORGE RODRIGUEZ as an individual and as father and next friend of AMADO and GEORGE E. RODRIGUEZ, minors, all residents of Estate Profit, SONYA CIRILO resident of Estate Profit, RAQUEL TAVAREZ, resident of Estate Profit, NEFTALI CAMACHO, as an individual and as father and next friend of ANGEL JAVIER CAMACHO a minor, both residents of Estate Profit, EYAJIE MALAYKHAN resident of Estate Profit, CHEDDIE KELSHALL resident of Estate Profit and other persons too numerous to mention, A CLASS ACTION,

       Plaintiff,

    v.

ST. CROIX ALUMINA, LLC, ALCOA INC., and GLENCORE, LTD., f/k/a CLARENDON, LTD.,

       Defendant.

CIVIL NO.  1999/0036

**ACTION FOR DAMAGES**

JURY TRIAL DEMANDED

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFFS' LACK OF NECESSARY EVIDENCE

<u>Henry, et al. v. St. Croix Alumina, LLC, et al.,</u> CIVIL NO. 1999/0036
<u>Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.</u>
Page 1

COME NOW Plaintiffs, Josephat Henry, Kay Williams, Sylvia Browne, Maud Drew, Martha Acosta, Wilhelmina Glasgow, as in individual and mother and next of friend of Samantha Viera, a minor, Mercedes Rosa, George Rodriguez as an individual and as father and next friend of Amado and George E. Rodriguez, minors, Sonya Cirilo, Raquel Tavarez, Neftali Camacho, as an individual and as father and next friend of Angel Javier Camacho, a minor, Eyajie Malaykhan, and Kelshall Cheddie, by and through their counsel of record, and file this Statement of Material Facts in Opposition to Defendants Alcoa Inc. ("Alcoa,"), St. Croix Alumina, LLC ("SCA") and Glencore Ltd. ("Glencore") (collectively, "Defendants") Motion for Summary Judgment Based on Plaintiffs' Lack of Necessary Evidence.[1] Plaintiffs submit this statement of material facts addressing the facts upon which the Defendants have relied (using the corresponding serial numbering) and identifying any and all other material facts, pursuant to LRCi 56.1(b).[2]

## I.   PLAINTIFFS' STATEMENT REGARDING MOVANTS' FACTS

### A. THE PARTIES AND THE HISTORY OF THE FACILITY

1. <u>Defendants' Statement of Facts:</u> "In the mid-1960s an entity then known as Harvey Aluminum, Inc. ("Harvey Aluminum") constructed and began operation of an alumina refinery on St. Croix."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs agree that the facts in this paragraph are undisputed.

---

[1] Defendants Alcoa, Inc. ("Alcoa"), St. Croix Alumina, LLC ("SCA"), and Glencore Ltd. ("Glencore") filed their joint Motion for Summary Judgment Based on Plaintiffs' Lack of Necessary Evidence (Doc. No. 1313) on May 22, 2009. For ease of reference, this motion will be referred to herein as the "Joint Motion." In addition to the Joint Motion, Glencore joined Alcoa's Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief and incorporated it by reference into Glencore's Motion for Summary Judgment on Class Claims for Injunctive Relief and Memorandum of Points and Authorities in Support Thereof. *See* Doc. No.: 1311, at p. 3. Both Motions were filed on May 15, 2009. To avoid confusion, the Motions filed on May 15, 2009 will be designated "Alcoa's Motion" and "Glencore's Motion," respectively.

[2] Plaintiffs incorporate by reference Pls.' Statement of Material Facts in Resp. to Alcoa Inc. and St. Croix Alumina's Mot. for Summ. J. on Pls.' Class Claims for Inj. Relief, filed herein.

<u>Henry, et al. v. St. Croix Alumina, LLC, et al.,</u> CIVIL NO. 1999/0036
<u>Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.</u>
Page 2

2.   <u>Defendants' Statement of Facts:</u>   "The facility is located in an industrial area of the island situated between a HOVENSA oil refinery that 'is one of the largest in the world' and the island's airport."

<u>Plaintiffs' Statement of Facts:</u>   Plaintiffs agree that the facility is located between a HOVENSA oil refinery and the island's airport.   Plaintiffs dispute the characterization of the HOVENSA oil refinery as "one of the largest in the world" and the facility's location as "an industrial area."   The St. Croix Alumina Refinery ("the refinery") is located "at the head of the Krause Lagoon Channel at Port Alucroix, which leads to the Caribbean Sea."[3]   Residential communities are also located just north of the facility.[4]   Additionally, the refinery is located in a hurricane zone.[5]

3.   <u>Defendants' Statement of Facts</u>: "Harvey Aluminum and its successor in interest Martin Marietta operated the facility until 1985. . . .In 1989, Martin Marietta sold the facility to the Virgin Islands Alumina Company ("Vialco")."

<u>Plaintiffs' Statement of Facts</u>: Plaintiffs dispute the facts in this paragraph. "Glencore is . . . the parent company of Clarendon Holdings, which is the parent company of VIALCO Holdings, Ltd., which in turn was the parent company of VIALCO. . . .  Mr. Prusak also said that arrangement

---

[3] Arthur D. Little, *Environmental Due Diligence Assessment* (August 2001 ) at p. 27 ("Little Report"), attached to the Decl. of Lee J. Rohn (Rohn Decl.) incorporated herein by reference and filed herewith, as Exhibit 31. All exhibits are attached to the Rohn Decl., dated July 22, 2009, and filed in support of Pls.' Resp. and Mem. in Opp. to the Joint Motion.

[4] *Id*.; *see also* Notice of Violation, Order for Corrective Action, and Notice of Opportunity for Hearing (Oct. 21, 1998) (DPNR 000706-713), attached as Exhibit 40 (referencing neighborhoods adjacent to the Refinery); *see also* EPA Memorandum, Oct. 26, 1998, at 1, attached as Exhibit 64 (there are residential communities just north of the Refinery).

[5] *See* Mem. Op., Aug. 10, 2007 (Doc. No. 1125) at 13, 27 ("Glencore knew that the refinery was in a hurricane zone and that there was a possibility that the red mud could blow to the surrounding neighborhoods."); Pedersen Dep. 66: 3-11, Apr. 25, 2008, attached as Exhibit 45 (admitting that, as plant manager, he knew that the area was hurricane prone).

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 3

began in 1989.  ¶ 3."[6]  The Acquisition Agreement shows that Glencore was the "ultimate parent"

of Vialco and the ultimate owner of the Refinery by the time it was signed on July 19, 1995.[7]  Other

aspects of the Acquisition Agreement demonstrate Glencore's ownership and/or control of the

Refinery by 1995. For example, the term "Affiliates" clearly encompasses Glencore,[8] making the

"due diligence" sections of the Acquisition Agreement equally applicable to Glencore.

Additionally, a 1989 report from Ormet Corporation issued to Glencore f/k/a Clarendon

identified major local concerns about the operations of the Refinery, including the inability of the

bauxite storage building to withstand storm conditions and the potential "air pollution problem"

posed by bauxite residue.[9]  When the Virgin Islands Department of Planning and Natural Resources

("DPNR") assessed fees against SCA in 1996 for two months of air emissions in 1995 under its

permit, Glencore, not Vialco, promptly paid those fees.[10]   Glencore's 30(b)(6) representative,

Robert Prusak, testified that he was not "sure but I think that a Glencore company had to guarantee

Vialco's indemnity obligation to Alcoa," which is memorialized in the Acquisition Agreement.[11]

By the terms of that agreement, the indemnity obligation lasted until July 24, 2001.[12]

---

[6] Mem. Op., Aug. 10, 2007 (Doc. No. 1125) at 13 (citations omitted).

[7] *See* Acquisition Agreement, attached as Exhibit 78.

[8] *Id.* at 2, Section 1.1 (stating that "'Affiliate' shall mean, with respect to any entity, any other entity directly or indirectly controlling, controlled by or under common control with such entity.  For purposes of this definition, 'control' shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities or otherwise.").

[9] St. Croix Alumina Refinery Report to Clarendon, Ltd. (Bates Nos. G00207-68), attached as Exhibit 50.

[10] *See*, Copies of receipt, check, and cancelled envelope (all bearing the name "Glencore, Ltd.", produced and identified by SCA as documents copied from DPNR), corresponding letter and invoice from DPNR files, attached as Exhibit 81.

[11] Prusak Dep. 114, Feb. 22, 2002, attached as Ex. 49; Exhibit 78 at 14-17.

[12] Exhibit 78 at 17.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 4

4.   Defendants' Statement of Facts:   "In 1995, Vialco sold the facility to SCA, an indirect,

partially-owned subsidiary of Alcoa. . . . SCA operated the facility from 1998 to 2001."

   Plaintiffs' Statement of Facts: Plaintiffs dispute that Vialco sold the facility to SCA in 1995.

Plaintiffs incorporate herein its statement of facts in paragraph 3, above, and rely on the following

statement filed by Century Aluminum Company with the SEC:

> In April 1995, **pursuant to a restructuring within Glencore International AG and its subsidiaries**, (hereinafter, "Glencore International," "Glencore" or the "Glencore Group", respectively), **Ravenswood acquired Virgin Islands Alumina Company ("Vialco")** and Berkeley (which was previously a direct wholly-owned subsidiary of Century) **and Ravenswood became a wholly-owned subsidiary of Century. The restructuring was accounted for as a transfer of interests among companies under the common control of Glencore International** and, as a result, the assets and liabilities of Ravenswood have been accounted for at historical cost.   In July 1995, the Vialco Alumina Facility was sold to a subsidiary of Alcoa L.L.C.   Accordingly, the Consolidated Financial Statements of the Company do not include the historical results of Vialco.[13]

   Moreover, Century "retained liability for environmental conditions existing at the time of

the sale only to the extent such conditions require remedial action, or give rise to claims, under laws

---

[13]   Exh.78, Notes to Century Aluminum Co · 10-K · For 12/31/96, On 3/27/97, Document 1 of 6, at p. 2.  Pursuant to the 1996 10-K filed by Century Aluminum with the SEC, in April 1995 Ravenswood "acquired" Vialco and became a wholly owned subsidiary of Century, all three were identified as "companies under the common control of Glencore", and change in ownership was denominated a "transfer of interest, confirming that Vialco was under the control of Glencore through April 1995.  *See also id.* at p. 7 ("Pursuant to the contract for sale of the Vialco facility to St. Croix Alumina, L.L.C. ("St.  Croix Alumina"), a subsidiary of Alcoa Alumina and Chemicals L.L.C., the Company has retained liability for environmental conditions existing at the time of the sale only to the extent such conditions require remedial action, or give rise to claims, under laws in effect at the time of sale.  The Company will not have liability if remediation is required or claims are made due to changes in law after the time of sale.  The Company has agreed to indemnify St. Croix Alumina against claims arising from environmental conditions for which the Company has retained liability.  The indemnity is capped at $18 million, and any claims under the indemnity must be brought by July 24, 2001.")

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 5

in effect at the time of sale."[14]  Additionally, Glencore continued to supply bauxite to the refinery until 1998.[15]

Plaintiffs dispute that SCA is "an indirect, partially-owned subsidiary of Alcoa" and that "SCA operated the facility from 1998 to 2001" as unsupported legal conclusions, not facts.  It is an undisputed finding of this Court that "Defendant St. Croix Alumina, LLC, and Defendant Alcoa, Inc., owned and operated the subject alumina processing facility" and Defendants have admitted that SCA is an "Alcoa-controlled entity."[16]

5.   <u>Defendants' Statement of Facts</u>: "In 2002, SCA sold the facility to a consortium that, following the sale, would immediately assign its interests to St. Croix Renaissance Group, L.L.L.P. ("SCRG"). . . .  SCRG is not in the alumina or aluminum business. . . . The facility has not been operated as an alumina refinery since prior to SCA's sale of the facility in 2002."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs do not dispute that the property was sold in 2002 and that it was not operated as an alumina refinery after the sale.  Plaintiffs dispute that it was not actually Alcoa that sold the property and actually received the proceeds of the sale.

6.   <u>Defendants' Statement of Facts</u>: "While the facility was in operation, bauxite, a naturally occurring ore rich in aluminum oxide from which alumina is extracted via the Bayer process, was stored in a large, A-frame steel structure."

---

[14]  *Id.*, at p. 7.  Glencore's retained liabilities are more fully explored in Plaintiffs' Opposition to Glencore's Motion for Summary Judgment, which Plaintiffs herein incorporate by reference.

[15] Exhibit 49 at 120.

[16] Mag. Judge Prop. Find. & Recomm. at 4, Finding A. 2 (Mar. 29, 2006) (Doc. No. 943) (adopted by Order at 1 (Apr. 24, 2006) (Doc. No. 949) (specifically noting that no party objected to the Magistrate's findings); *see also* Norton Dep. (Alcoa 30(b)(6) Dep.) 333, Feb. 25, 2002, attached as Exhibit 48.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 6

Plaintiffs' Statement of Facts: Plaintiffs do not dispute that the property was sold in 2002 and that it was not operated as an alumina refinery after the sale.  Plaintiffs dispute the remainder of this paragraph as not supported by admissible evidence.

7.  Defendants' Statement of Facts: "A by-product of the Bayer process is bauxite residue, also known as 'red mud.' . . . The red mud was disposed of on-site. . . . Beginning in the 1970s (during Martin Marietta's ownership and operation of the facility), the 'dry-stacking' method of bauxite residue disposal was used at the St. Croix facility."

Plaintiffs' Statement of Facts: Plaintiffs agree that the facts in this paragraph are undisputed.

8.  Defendants' Statement of Facts:  "At the St. Croix facility, the red mud was mixed with seawater and deposited in cells, where it would dry to a firm, clay soil consistency. . . . The dry-stacking method was used throughout all periods of operation of the facility through 2001. . . . The dry-stack bauxite residue disposal area is commonly referred to as the 'red mud pile.'"

Plaintiffs' Statement of Facts: Plaintiffs agree with the facts in this paragraph *except* Plaintiffs do not agree with the statement that the red mud "would dry to a firm, clay soil consistency."   The red mud was kept in open piles as high as 120 feet above grade on 55 acres of refinery property.[17]   For years before Hurricane Georges, these uncovered piles often emitted fugitive dust when winds blew across the Refinery or on the frequent occasions when SCA ran bulldozers over them.[18]   Prior to Georges, residents complained with frequency about red mud

---

[17]*See* Black Dep.169:13-170:2, Apr. 25, 2002, attached as Exhibit 32; F. Williams Dep. 99:8-14, June 17, 2005, attached as Exhibit 47.  In contrast, the bauxite storage shed was 87 feet high.  Exhibit 32 at 110:3-11;  *see also* Exhibit 31 at p. 7 ("Much of the current bauxite residue disposal area is uncovered and contains several steep, unvegetated slopes.") and p. 67 ("Since the hurricane, the facility has adopted the policy of covering piles of material with plastic in case of predicted high winds or storms."); *see also* Doc. No. 1125 at 27 ("Further, it is undisputed that the red mud was also stored in large mud piles outside of the facility in an open, obvious, and uncovered condition.").

[18] *See* O'Neale Dep. 55:14-21, Jan. 25, 2002, attached as Exhibit 46 (admitting that the red mud piles were regularly re-worked by bulldozers); Exhibit 47 at 154:24-157:25; 162:3-163:7; 162: 3-163: 7; 166:1-13; 168: 3-169: 25; 171:3-172:3; 173:3-15; 22:3-24; 247:5-21; 262:9-263:12. (admitting dust is emitted from the red mud piles and emissions can

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 7

being blown into their neighborhoods.[19]   St. Croix Alumina itself acknowledged that a major

community concern is fugitive emissions from red mud dusting.[20]   In September 1994, a DPNR

field inspection found evidence of dust emissions from the red mud piles.[21]   There have also been

numerous reports of water causing the erosion (i.e., movement) of red mud during storm events less

severe than the hurricane.[22]   On June 18, 2002, DPNR issued an Administrative Order, based on the

finding that "due to the reworking of the red mud piles by St. Croix Alumina. LLC. (SCA) over the

past few months, and due to subsequent heavy rains during the latter part of March 2002, red mud

particulate (red mud) and red mud laden storm water flowed out of the red mud storage areas on the

SCA facility . . ."[23]

## B.   EVENTS DURING AND AFTER HURRICANE GEORGES

9.   Defendants' Statement of Facts:   "On September 21, 1998, Hurricane Georges struck St.

Croix."

---

be caused by winds or mechanical manipulations, like bulldozing); *see also* Henry Aff. ¶¶ 5-7, attached as Exhibit 2;
Williams Aff. ¶¶ 4-5, attached as Exhibit 3; Acosta Aff. ¶ 2, attached as Exhibit 11; Rosa Aff. ¶¶ 4-5, attached as
Exhibit 28; Glasgow Aff. ¶ 3, attached as Exhibit 13; Malaykhan Aff. ¶¶ 4-5, attached as Exhibit 25; Camacho Aff. ¶ 2,
attached as Exhibit 23 (testifying that dust escaped the red mud piles before Hurricane Georges).

[19]*See, e.g.*, Staff Recommendation, Major CZM Permit No. CZX-25-94L Expansion of Red Mud Storage Area (9/6/94)
at Klepp 0853-0854, attached as Exhibit 65 (noting that residents complained in Aug. & Sept. 1994 about red dust
from the alumina refinery contaminating their cisterns and homes and causing skin rashes and asthma); "Site
Assessment for the Vialco Facility St. Croix, U.S. Virgin Islands," dated Nov. 1995, Prepared for Alcoa by Geraghty
& Miller, Inc., and produced in discovery by Defendant Alcoa as "AI000835-AI0001726" ("Geraghty & Miller
Report"), attached as Exhibit 44 (neighbors complained about dust from red mud from 1993 to 1995 and these
complaints were unresolved).

[20] St. Croix Alumina, LLC's *Residue Disposal Facilities Master Plan* (June 2000) at F(III), attached as Exhibit 69
(reporting erosion from weather conditions less severe than hurricanes).

[21] *See* Exhibit 65 at Klepp 0853 (reporting that a site inspection of the red mud storage areas revealed that branches of
vegetation in the area was stained red, and  a drizzle during the inspection deposited red mud on the white shirts, faces
and arms of staff indicating its presence in the air).

[22] *E.g.*, Exhibit 44 at 6-3 (noting that storm water control measures to mitigate erosion from the red mud disposal areas
seem inadequate.).

[23] Order, June 18, 2002 at 1, attached as Exhibit 82.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 8

Plaintiffs' Statement of Facts: Plaintiffs agree that the facts in this paragraph are undisputed. Additionally, the storm struck during the dark early morning of September 21, 1998. The meteorological data shows that winds got up to approximately 70 miles per hour and the storm lasted until approximately 3:00 a.m. on September 22, 1998.[24]

10. Defendants' Statement of Facts:   "After the hurricane, the Environmental Protection Agency ("EPA") Environmental Response Team Center collected cistern water samples from several properties on St. Croix."

Plaintiffs' Statement of Facts: Plaintiffs agree that the facts in this paragraph are undisputed.

11. Defendants' Statement of Facts:   "The EPA collected samples from the cisterns at the residences of only three Plaintiffs in the instant action: Mercedes Rosa, Kelshall Cheddie and Eyajie Malaykhan." [Defendants' Footnote 2: "At the time of Hurricane Georges, Mr. Cheddie and Ms. Malaykhan were married and lived together."]

Plaintiffs' Statement of Facts:  Plaintiffs agree that the facts in this paragraph and in footnote 2 are undisputed *except* to the extent that Defendants' statement suggests, implies, or can be misunderstood to mean that that the EPA only tested three properties.  In fact, the EPA tested thirty-one properties. The EPA stated that certain cisterns may have been contaminated with bauxite based on the levels of aluminum in the water.

C.      PLAINTIFFS' ALLEGED DAMAGES

12. Defendants' Statement of Facts:   "Plaintiffs Samantha Viera, Amado Rodriguez, George E. Rodriguez and Angel Camacho were minors on September 21, 1998."

Plaintiffs' Statement of Facts: Plaintiffs agree that the facts in this paragraph are undisputed.

---

[24] *See* Excerpts of weather data collected at the St. Croix Alumina Refinery during Hurricane Georges and produced by Defendant SCA in discovery bearing Bates Nos. SCX007394, SCX007548-55, attached as Exhibit 77.

**Henry, et al. v. St. Croix Alumina, LLC, et al.,** CIVIL NO. 1999/0036
**Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.**
Page 9

13.  <u>Defendants' Statement of Facts:</u> "The minor Plaintiffs have not alleged damage to any real or personal property beyond that separately claimed by their parents."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs agree that the facts in this paragraph are undisputed.

14.  <u>Defendants' Statement of Facts:</u> "Plaintiff Josephat Henry was a lessee and did not have an ownership interest in any real property on September 21, 1998."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs agree that the facts in this paragraph are undisputed.

15.  <u>Defendants' Statement of Facts:</u> "Plaintiff Neftali Camacho did not have an ownership interest in the home in which he was living on September 21, 1998, and has not identified any other real property for which he seeks recovery for damages in the instant action."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs agree that the facts in this paragraph are undisputed as Camacho's interest was a leasehold interest.[25]

16.  <u>Defendants' Statement of Facts:</u> "Plaintiff Kay Williams is not seeking recovery for any damage to any of her real or personal property in the instant litigation."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs agree that the facts in this paragraph are undisputed.

17.  <u>Defendants' Statement of Facts:</u> "Plaintiff Maud Drew has testified that she is not seeking recovery for damage to personal property in the instant litigation."

<u>Plaintiffs' Statement of Facts:</u> Plaintiffs dispute the facts as stated in this paragraph. Ms. Drew has testified that she wants all compensation to which she is entitled under the law, including the costs to clean and repair her cistern and roof.[26]

---

[25] Camacho Dep.  11-12,  June 25, 2003, attached as Exhibit 24.

[26] Drew Dep. 119:19-21, 121:1-122:22, Dec. 10, 2003, attached as Exhibit 10; Drew Aff., attached as Exhibit 9 (testifying that she would like all compensation to which she is entitled, including the costs of cleaning her cistern and roof).

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 10

## II.   PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

### A.   Defendants' Knowledge of Dangers Before Hurricane Georges.

18.  In 1977, a report by Dames & Moore informed the owners and operators of the refinery about the need to control drainage, erosion, and "dust problems" from the red mud piles and the manner in which to accomplish such control.[27]

19.  In 1987, an Alcoa research scientist named Sam Ward wrote "dust control, primarily using sprinkler irrigation, will be a high priority on an operating dry disposal area" due to a red mud pile's susceptibility to wind erosion.[28]   Ward also gave recommendations for available methods of controlling dust from red mud piles.[29]

20.  A 1989 report from Ormet Corporation issued to Glencore (f/k/a Clarendon) identified major local concerns about the operations of the refinery, including the concerns about the ability of the bauxite storage building to withstand storm conditions and the potential "air pollution problem" posed by bauxite residue.[30]

21.  In 1991, SCA was aware that residents living downwind of the Refinery had complained about fugitive dust.[31]

22.  A 1994 government report observed that dust was "ubiquitous" at the Refinery and that surrounding buildings, ground, and vegetation had been "stained red."[32]

---

[27] Report by Dames & Moore to Martin Marietta Alumina (Oct. 5, 1977) (Bates Nos. SCA 000368-531.) ("Dames & Moore Report") at SCA 000451, 457, 432, attached as Exhibit 36; *see also* Supplemental Expert Report of Edward W. Kleppinger (Feb. 8, 2008) at 9-10, attached as Exhibit 74 (the Dames & Moore Report explained the need and means for reducing dust emissions from the red mud piles).

[28] Ward, Sam C., *Reclaiming Bauxite Residue Disposal Areas in South-West Australia*, in Australia Mining Industry Council, Canberra, Mining Rehabilitation '87 at 63(Tom Farrell ed., 1987), attached as Exhibit 33.

[29] *Id.* at 63-64.

[30] St. Croix Alumina Refinery Report to Clarendon, Ltd. (Bates Nos. G00207-68), attached as Exhibit 50.

[31] Exhibit 32 at 80: 12-20; *see also* Exhibit 73 at 2.

__Henry, et al. v. St. Croix Alumina, LLC, et al.,__ CIVIL NO. 1999/0036
__Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.__
Page 11

23. Glencore provided Vialco with Material Safety Data Sheets (MSDS) that verified that bauxite is dangerous if inhaled.[33]

24. This Court has already made the factual finding that the MSDS sheets provided by Glencore "adequately put VIALCO and St. Croix Alumina on notice regarding the dangerous conditions of bauxite."[34]

25. The Alcoa MSDS for red mud states that it can cause "severe irritation and burns [of eyes], especially when wet," "can cause severe irritation [of skin], especially when wet," and "can cause irritation of the upper respiratory tract."[35] It also advises against skin and eye exposure to red mud.[36]

26. The MSDS for bauxite warns that it can cause mild irritation of the eyes, skin and upper respiratory tract.[37]

27. Defendants' expert who performed medical examinations of four minor Plaintiffs testified that it is reasonable to rely on the bauxite and red mud MSDS's in determining which health conditions can be caused by exposure to red mud and bauxite.[38] She based this opinion on the

---

[32] Exhibit 65 at 4.

[33] Mem. Op., Aug. 10, 2007 (Doc. No. 1125) at 23-24 ([T]he MSDS adequately put VIALCO and St. Croix Alumina on notice regarding the dangerous conditions of bauxite."); *see also* MSDS (Sept. 10, 1999) (Al000008-14), attached as Exhibit 54; MSDS (Nov. 13, 1985) (Al000656-658), attached as Exhibit 55; MSDS (Nov. 3, 1987) (Al000671-674), attached as Exhibit 56; MSDS (Nov. 1, 1990) (Al000687-689), attached as Exhibit 57; MSDS (Mar. 31, 1990) (Al000696-700), attached as Exhibit 58; MSDS (Oct. 31, 2000) (Al00001-07), attached as Exhibit 59.

[34] Doc. No. 1125 at 23-24.

[35] Exhibit 54.

[36] *Id.* at Al000010-11.

[37] Exhibit 59.

[38] Mathew Dep. at 231:21 - 232:3, Apr. 25, 2005, attached as Exhibit 63.

**Henry, et al. v. St. Croix Alumina, LLC, et al.,** CIVIL NO. 1999/0036
**Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.**
Page 12

training she received at Johns Hopkins School of Public Health, where she was taught about the utility, application, relevance and validity of MSDS's.[39]

28.    Defendants' dermatology expert also testified that it is reasonable to rely on red mud and bauxite MSDS's to determine what the adverse health effects are from exposure to same.[40]

29.    Alcoa's 1995 Site Assessment Report informed Defendants that (1) nearby residents complained about dust from red mud between 1993 to 1995,[43] and (2) "[s]torm water control measures to mitigate erosion from the Red Mud disposal areas seem inadequate." [44]

30.    In ruling on Glencore's 2003 Motion for Summary Judgment, this Court found that "[t]he evidence . . . demonstrates that the aluminum plant was in a hurricane zone and the possibility of the red mud piles blowing into the surrounding neighborhoods posed a significant danger to the property owners."[45]

31.    In the case captioned *St. Croix Renaissance Group, LLLP v. St. Croix Alumina, LLC, et al.*, Civil No. 2004/67, in the District Court of the Virgin Islands, Division of St. Croix (the "SCRG" case) Defendants SCA and Alcoa World Alumina, LLC ("AWA") rely upon the evidence cited by Plaintiffs, *supra*, to support their claim that Defendants adequately conveyed to Plaintiff St. Croix

---

[39] *Id.* at 231:2 - 20.

[40]  Larsen Dep. at 84:10-85:7; 87:7-17, June 15, 2005, attached as Exhibit 60.

[43]   "Site Assessment for the Vialco Facility St. Croix, U.S. Virgin Islands," (Nov. 1995) Prepared for Alcoa by Geraghty & Miller, Inc., (AI000835-AI0001726) ("Geraghty & Miller Report"), at Al000882 & Al000957, attached as Exhibit 44.

[44]  *Id.* at 6-3 (AI0001362).

[45]  Doc. No. 1125 at 13.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 13

Renaissance Group LLLP ("Plaintiff SCRG") SCA's and AWA's considerable knowledge that

**bauxite residue had escaped and would continue to escape the red mud piles.**[46]

32.  In 1995, Hurricane Marilyn damaged the roof of the bauxite storage shed.[47]

33.  During Hurricane Georges in 1998, the winds shifted and blew red dust across the

refinery.

34.  Only three years before Georges, Hurricane Marilyn had damaged the roof of the bauxite

storage shed.[48]

**B.  The Refinery's Preparations Before the Hurricane.**

35.  SCA undertook no precautionary measures to secure the stockpiled bauxite in the storage

shed or the red mud piles in preparation for Hurricane Georges.[51]

---

[46]  St. Croix Alumina, LLC's and Alcoa World Alumina, LLC's Statement of Undisputed Facts, dated May 15, 2009 (Doc. No. 229) in *St. Croix Renaissance Group, LLLP, et al., v. St. Croix Alumina*, LLC, Civ. No. 2004/67 in the U.S. District Court of the Virgin Islands, Division of St. Croix. at ¶¶ 34-41 and documents cited therein, attached as Exhibit 53.

[47] Exhibit 32 at 101:18-21 & 103:20-22.

[48]*Id.*

[51] Exhibit 40 at II(9); Exhibit 32 at 119: 13-120: 1, 125: 4-7 (Environmental manager of the refinery admitting that SCA took no steps to secure the bauxite shed before the hurricane); Exhibit 45 at 67:19-68:10, 81:25-82:3 (Plant manager admitting that no precautions were taken to secure red dust); *see also* Expert Report of Edward W. Kleppinger (Apr. 10, 2003) at 5-9, 12-13, attached as Exhibit 73 (despite knowledge of dangers posed by red dust, Defendants took none of the necessary precautions to protect nearby neighborhoods).

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 14

### C.  Hurricane Georges.

36.  During the hurricane, the winds shifted and blew red dust across the Refinery and into Plaintiffs' neighborhoods.[52]

37.  Plaintiffs' observed and had contact with red water, red dust, and red mud on their properties, in their cisterns, and inside their homes.[53]

38.  The red dust, red water, and red mud stained the personal and real property of various Plaintiffs.[54]

39.  Plaintiff Josephat Henry suffered severe eye irritation, emotional distress, and damage to his personal and real property as a result of his exposure to the Refinery's red dust.[55]

---

[52] See Defs.' Overview Br. (Doc. No. 1272) at 10 (admitting that bauxite escaped the refinery); Joint Motion at 13, n. 5 (admitting that bauxite erupted from the shed during the hurricane); Memo from Tyrone Benjamin, Environmental Specialist 11 of the DPNR, to Austin Moorehead, Director of the DPNR, (Oct. 5, 1998), attached as Exhibit 71 (indicating that two SCA employees admitted that they saw the winds change direction and blow bauxite towards the neighborhoods);  see also Rodriguez Dep. 35:17-37:23, June 26, 2003, attached as Exhibit 18 (stating that during the storm, he looked out the windows and saw the red dust come over from the Refinery and coat the homes in the area.); Cirilo Dep. 47:11-48:24, June 27, 2003, attached as Exhibit 20 (testifying that she looked outside during the storm, and she saw red dust flying around).

[53] Henry Dep. 34:18-35:18; 48:15-19; 71:1-77:24, Mar. 20, 2000, attached as Exhibit 1; Exhibit 2; Exhibit 3; Williams Dep. 11:22-25; 13:6-14:2; 24:20-25:11, 33:14-24; 35:20-36:2, Mar. 22, 2000, attached as Exhibit 4; Williams Dep. 103:15-25, Dec. 10, 2003, attached as Exhibit 5; Browne Aff., attached as Exhibit 6; Browne Dep., 25:13-31:8, Mar. 22, 2000, attached as Exhibit 7; Browne Dep., 60:23-64:18, Dec. 9, 2003, attached as Exhibit 8; Drew Aff., attached as Exhibit 9; Drew Dep., 31:4-32:1, Dec. 10, 2003, attached as Exhibit 10; Acosta Aff., attached as Exhibit 11; Acosta Dep., 26:20-27:18; 28:1-29:4, Oct. 15, 2002, attached as Exhibit 12; Glasgow Aff., attached as Exhibit 13; Glasgow Dep. 28:3-29:5; 33:2-21; 35:6-11; 58:16-64:10; 69:21-72:15, Oct. 16, 2001, attached as Exhibit 14; Viera Dep. 18:7-19:22, June 24, 2003, attached as Exhibit 16; Rodriguez Aff., attached as Exhibit 17; Rodriguez Dep. 35:17-37:23; 52:5-22; 69:16-71:8, June 26, 2003, attached as Exhibit 18; Cirilo Aff., attached as Exhibit 19; Cirilo Dep. 47:11-48:24; 61:24-62:10, attached as Exhibit 20; Tavarez Aff., attached as Exhibit 21; Tavarez Dep. 32:9-33:25, June 24, 2003, attached has Exhibit 22; Camacho Aff., attached as Exhibit 23; Camacho Dep. 22:12-29:3; 33:24-35:15, June 25, 2003, attached as Exhibit 24; Malaykhan Aff., attached as Exhibit 25; Malaykhan Dep. 20:3-18; 46:15-48:11, June 23, 2003, attached as Exhibit 26; Cheddie Dep. 18:22-21:2; 40:14-46:25; 49:2-51:3; 51:13-52:22; 53:4-56:7; 60:11-16; 94:8-97:8; 116:4-16; 141:8-142:21; 183:16-25; 188:11-190:3, June 23, 2003, attached as Exhibit 27; Rosa Aff., attached as Exhibit 28; Rosa Dep. 30:19-32:24; 33:5-34:23; 34:25-36:25, June 25, 2003, attached as Exhibit 29.

[54] See Exhibits 2, 3, 6, 9, 11, 13, 17, 19, 21, 23, 25, and 28.

[55] Exhibit 1 at 39: 1-42:3: 47: 5-48:14; 48:15-19; 49:15- 52:9; 53: 1-58:24; 65:1-66:24; 71:1-77:24; 138: 10-21; Exhibit 2.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 15

40. Plaintiff Kay Williams suffered skin irritation and rashes, eye irritation, and emotional distress as a result of her exposure to red dust from the Refinery.[56]

41. Plaintiff Sylvia Browne lost personal property, sustained real property damage, and suffered from severe coughing, skin irritation, eye irritation, and emotional distress as a result of her home's contamination by the red dust from the Refinery.[57]

42. Plaintiff Maud Drew sustained a skin rash, eye irritation, sore throat and cough, chest pains, stomach irritation, emotional distress, and damage to her property as a result of the red dust from the Refinery that coated her home.[58]

43. Plaintiff Martha Acosta endured real and personal property damage, emotional distress, eye irritation, and skin rashes and itching as a result of her exposure to the red dust from the Refinery.[59]

44. Plaintiff Wilhelmina Glasgow sustained skin irritation, emotional distress, and property loss as a result of her exposure to the red dust from the Refinery.[60]  Her daughter, Samantha Viera, also suffered from extreme skin rashes, sores, and scarring and emotional distress from exposure to the red dust.[61]

---

[56] Exhibit 3; Exhibit 4 at 11:22-25; 12:2-13:2; 13:6-14:2; 24: 20-25:11; 33:14-24; 58:16-59:2; 60:19-61:2; 61:13-21; and Exhibit 5 at 103: 15-25.

[57] Exhibit 6; Exhibit 7 at 25: 13-31:8; 37:5- 42:23; 45:9-50:1; 54:17-55:10; 58:6-60:20; 87:4-25; 88:14-16; 121:4-122:24; Exhibit 8 at 60:23- 64:18; 65:4- 67:11; 72:12-22; 73:4-24.

[58] Exhibit 9; Exhibit 10 at 31:4- 32:1; 35:6- 36:20; 39:9-40; 63:4-64:12, 65:6-66:22; 85:6-11, 87:7-21; 122:23-123:17.

[59] Exhibit 11; Exhibit 12 at 26:20 – 27:4; 27:6-18; 27:19-23; 28:1 – 29:4; 30:20-21:31:8; 31:1-37:25; 40:8-24; 41:13-25; 42:6-44:22; 48:7-10-50:23; 57:9-59:24; 64:8-65:9; 69:7-17; 70:9-22; 75:4-16.

[60] Exhibit 13; Exhibit 14 at 11:13-20; 28:3- 29:5; 32:3-17; 33:2-21; 35:6-11; 36:9- 39:21; 40:13-25; 46:12- 48:4 ; 47:14-49:18, 50:1-51:6; 52:5-57:25; 58:16-64:10; 66:14-24; 69:21-72:15; 72:21-75:11; 75:12-76:25; 77:4- 13; 78:12-82:16; Exhibit 15 at 16:19-17:2; 17:20-18:19; 19:23-20:16.

[61] See, supra, note 32; see also Exhibit 16 at 16:11-25; 18:7-19:22; 24:9-11; 25:12-24; 26:17-27:5.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 16

45. As a result of the red dust that coated his home, Plaintiff George Rodriguez suffered skin rashes and itching, sinus irritations, emotional distress, and loss of property.[62] Both of his sons, Amado Rodriguez and George E. Rodriguez, also suffered from itchiness and eye irritations, and one son also experienced shortness of breath.[63]

46. Plaintiff Sonya Cirilo suffered eye irritation, emotional distress, and property loss as a result of her exposure to the red dust from the Refinery.[64]

47. Plaintiff Raquel Tavarez experienced severe eye swelling and pain, skin itching and rashes, emotional distress, and property loss as a result of the contamination of her home by the red dust from the Refinery.[65]

48. Plaintiff Neftali Camacho experienced eye irritation, skin irritation, emotional distress, lost wages, and property damage as a result of his exposure to the red dust from the Refinery.[66] His son also suffered from eye irritation, worsened asthma attacks, and emotional distress from his exposure to the red dust.[67]

49. Plaintiff Eyajie Malakhan suffered from eye irritation, skin rashes, dizziness, shortness of breath, emotional distress, and property damage as a result of her exposure to the red dust from the Refinery.[68]

---

[62] Exhibit 17; Exhibit 18 at 35:17-37:23; 52:5-22; 56:15-19; 62:3-15; 69:16- 71:8; 107:2-15; 108: 2-12.

[63] Exhibit 18 at 56:15-19; 62:3-15; 107:2-15.

[64] Exhibit 19; Exhibit 20 at 26:12-19; 39: 18- 23; 42:6-46:1; 47:11-48:24; 52:17- 53:23; 59:7-60:24; 61:24-62:10; 66:22-25; 81:6-82:23; 84:6-85:1; 87:9-88:25; 85:3-24; 93:11-94:24.

[65] Exhibit 21; Exhibit 22 at 32:9- 33:25; 39:13-17; 44:8-20; 45:8-46:16; 104:3-105:13.

[66] Exhibit 23; Exhibit 24 at 22:12-29:3; 33:24-35:15; 38:18-43:5; 44:14-21; 45:6-16; 49:4 – 50:8; 54:5-9; 57:10-58; 59:14-60:17; 67:8-68:8; 72:23-73:2; 82:16-84:23; 145:21-148:12; 157:12-158.

[67] See, supra, note 38.

[68] Exhibit 25; Exhibit 26 at 20: 3-18; 21:25-23:14; 27:16-22; 46:15- 48:11.

Henry, et al. v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.
Page 17

50.   Plaintiff Kelshall Cheddie, Ms. Malakhan's spouse at the time, also suffered dizziness, headaches, skin rashes, eye irritation, emotional distress, and property loss as a result of their home's contamination by the red dust from the Refinery.[69]

51.   Plaintiff Mercedes Rosa suffered skin rashes and itching, eye irritation, worsened asthma attacks, emotional distress, and property loss from her exposure to the red dust from the Refinery.[70]

**D.      The DPNR Investigation.**

52.   Immediately after Georges, multiple complaints about red dust resulted in an investigation by the DPNR, which found that red dust from the St. Croix Alumina Refinery had in fact contaminated the neighborhoods and issued a Notice of Violation against St. Croix Alumina on October 21, 1998.[71]

53.   DPNR reported that it had received multiple telephone complaints from residents of the Harvey, Clifton Hill and adjacent neighborhoods on St. Croix that a substance described as "red mud" contaminated their properties, including their cisterns, which supplied their drinking water, their cooking water, and their bath water, during the hurricane.[72]

54.   As early as the day after the hurricane, DPNR staff investigated and found that a red substance contaminated numerous properties.[73] DPNR also noted that water taken from residential cisterns was discolored.[74]

---

[69] Exhibit 27 at 13:1-5; 18:22- 21:2; 27:21- 28:10; 34:3-22; 39: 15-40:8; 40:14-46:25; 108: 18-25; 49:2-51:3; 51:5-5; 51:13-52:22; 53: 4-56:7; 60: 11-16; 78:15-23; 94:8-97:8; 116:4-16; 141:8-142:21; 183:16-25; 188:11-190:3; *see also*, *supra*, note 40.

[70] Exhibit 28; Exhibit 29 at 19:14-20:23; 30:19-32:24; 33:5-34:23; 34:25-36:25; 45:9- 49:2; 53:25-54:9; 59:23-60:25; 67:13- 68:22.

[71] Exhibit 40 at II(2).

[72] *Id.*

[73] *Id.* at II(3).

**Henry, et al. v. St. Croix Alumina, LLC, et al.,** CIVIL NO. 1999/0036
**Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.**
Page 18

55.  DPNR then found two holes in the roof of the bauxite storage structure and confirmed the pollution of the neighborhoods from reports from SCA employees who admitted they witnessed bauxite escaping from those holes and blowing towards the adjoining neighborhoods.[75]

56.  DPNR noted that SCA undertook no identifiable precautionary measures to secure the stockpiled bauxite in the storage shed in preparation for the then impending hurricane.[76]

57.  In 1998, DPNR determined that SCA's actions with respect to bauxite violated numerous statutes (including 12 V.I.R.& R. § 204-20(d) & (e); 12 V.I.R.& R. § 204-25(a)(2) & (3), 12 V.I.R.& R. § 204-25(c), 12 V.I.R.& R. § 204-27(a)), that bauxite is an air contaminant, and that it was released in such quantity and of such characteristics and duration that it has, and is likely to be injurious to the public welfare, to the health of human, plant or animal life, and to property, and which is unduly interfering with the enjoyment of life and property of the residents and public institutions adjacent to and in relative proximity to the Refinery.[77]

    E.    **Defendants' Actions after Hurricane Georges.**

58.  After the storm, SCA admitted that Hurricane Georges carried red dust from the bauxite shed and the red mud piles at the Refinery to the adjoining properties.[78]

---

[74] *Id.* at II(4).

[75] *Id.* at II(7), (8); *see also* Exhibit 71.

[76] Exhibit 40 at II(9); Exhibit 32 at 119: 13-120: 1, 125: 4-7 (admitting that SCA took no steps to secure the bauxite shed before the hurricane); Exhibit 45 at 67:19-68:10 (admitting that no precautions were taken to secure red dust); *see also* Expert Report of Edward W. Kleppinger (Apr. 10, 2003) at 5-9, 12-13, attached as Exhibit 73 (despite knowledge of dangers posed by red dust, Defendants took none of the necessary precautions to protect nearby neighborhoods).

[77] Exhibit 40 at IV(2), (3).

[78] *See* Defs.' Overview Br. (Doc. 1272) at 10 (admitting that bauxite escaped the shed); Joint Motion at 13, n. 5 (admitting that bauxite erupted from the shed during the hurricane); Exhibit 71 (DPNR received reports from two SCA employees who observed bauxite escaping its storage building and blowing toward the neighborhoods); *see also* Exhibit 2 at ¶¶ 12-13; Exhibit 3 at ¶¶ 13-14; Exhibit 6 at ¶¶ 9, 17; Exhibit 9 at ¶ 5; Exhibit 11 at ¶ 8; Exhibit 13 at ¶¶ 6-7; Exhibit 17 at ¶ 10; Exhibit 23 at ¶ 7; Exhibit 25 at ¶ 9; and Exhibit 28 at ¶ 12 (testifying to admissions by SCA and/or Alcoa that the dust in their neighborhood came from the red mud piles at the Refinery).

**Henry, et al. v. St. Croix Alumina, LLC, et al.,** CIVIL NO. 1999/0036
**Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.**
Page 19

59.  SCA voluntarily paid for some homes and cisterns affected by the red dust to be cleaned, but others were never cleaned.[79]

60. The cleaning crews damaged some of Plaintiffs' homes and belongings by pressure-washing the properties and did not completely remove the red stains or red dust.[80]

Dated: July 22, 2009                    Respectfully Submitted:


BY:    /s/Lee J. Rohn
          LEE J. ROHN
          ROHN & CARPENTER, LLC
          1101 King Street
          Christiansted, St. Croix
          U.S. Virgin Islands 00820-4933
          (340) 778-8855
          (340) 773-2954 (FAX)

---

[79] *See* SCA's Am. R. to Pls.' First Set of Interrog. at No. 13, p. 11, attached as Exhibit 30  ("St. Croix Alumina's insurer Liberty Mutual Insurance Company or its agents retained certain persons and entities to clean properties in the vicinity of St. Croix's premises following Hurricane Georges."); *see also* Exhibit 2 at ¶¶ 12-13; Exhibit 3 at ¶¶ 13-15; Exhibit 6 at ¶¶ 9, 12; Exhibit 9 at ¶ 5; Exhibit 11 at ¶ 8; Exhibit 13 at ¶¶ 7, 12; Exhibit 17 at ¶¶ 10, 11; Exhibit 23 at ¶ 7; Exhibit 25 at ¶ 13, 14; and Exhibit 28 at ¶ 13 (testifying that Alcoa and/or SCA volunteered to pay for the clean-up and sent crews to the neighborhoods to pressure-wash the red stains off the homes and cisterns); see also Exhibit 31at 67 ("Alcoa voluntarily physically cleaned impacted private homes and property).

[80] Exhibit 2 at 49:15- 52:9; Exhibit 4 at 38:22-39:22; Exhibit 7 at 37:5- 42:23; Exhibit 12 at 64:8-65:9; Exhibit 14 at 47:14- 49:18, 50:1-51:6; Exhibit 20 at 81:6-82:23; Exhibit 27 at 51:13-52:22.

**Henry, et al. v. St. Croix Alumina, LLC, et al.,** CIVIL NO. 1999/0036
**Pls.' Statement of Material Facts in Opp. to Defs.' Mot. Summ. J.**
**Page 20**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2009, a true and correct copy of the above and foregoing **Plaintiffs' Statement Of Material Facts In Opposition To Defendants' Motion For Summary Judgment Based On Plaintiffs' Lack Of Necessary Evidence** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Bernard C. Pattie, Esquire
Law Office of Bernard C. Pattie PC
1244 Queen Cross Street, Suite 5
St. Croix, VI 00820-4932
Attorney for St. Croix Alumina LLC and Alcoa Inc.

Derek M. Hodge, Esquire
MacKay & Hodge
19A-20 Kongens Gade
P.O. Box 303678
St. Thomas, VI  00802
Attorney for Glencore, Ltd.

Gordon Rhea, Esquire
Richardson, Patrick Westbrook & Brickman, LLC
1037 Chuck Dawley Blvd. Bldg A
Mt. Pleasant, SC 29464
Attorney for Plaintiffs

Laura Baughman, Esquire
Baron & Budd, P.C.
3102 Oak Lawn Ave.
Dallas, TX 75219-4281
Attorney for Plaintiffs

Lori E. Jarvis, Esquire
Hunton & Williams
River Front Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Attorney for St. Croix Alumina LLC and Alcoa Inc.

Renè P. Tatro, Esquire
Tatro Tekosky Sadwick LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, CA 90017
Attorney for Glencore, Ltd.

BY:   *s/Lee J. Rohn*            (dr)