## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

### DIVISION OF ST. CROIX

|  |  |
|---|---|
| JOSEPHAT HENRY resident of Harvey, KAY WILLIAMS resident of Harvey, SYLVIA BROWNE resident of Clifton Hill, MAUDE DREW resident of Estate Barren Spot, MARTHA ACOSTA resident of Estate Profit, WILHELMINA GLASGOW as in individual and mother and next of friend of SAMANTHA VIERA, a minor, both residents of Estate Profit, MERCEDES ROSA resident of Estate Profit, GEORGE RODRIGUEZ as an individual and as father and next friend of AMANDO and GEORGE E. RODRIGUEZ, minors, all residents of Estate Profit, SONYA CIRILO resident of Estate Profit, RAQUEL TAVAREZ, resident of Estate Profit, NEFTALI CAMACHO, as an individual and as father and next friend of ANGEL JAVIER CAMACHO a minor, both residents of Estate Profit, EYAJIE MALAYKHAN resident of Estate Profit, CHEDDIE KELSHALL resident of Estate Profit and other persons too numerous to mention, A CLASS ACTION,<br><br>    Plaintiffs,<br><br>  v.<br><br>ST. CROIX ALUMINA, LLC., ALCOA INC., and GLENCORE, LTD., f/k/a CLARENDON, LTD.,<br><br>    Defendants. | CIVIL NO.  1999/0036<br><br>**ACTION FOR DAMAGES**<br><br><u>JURY TRIAL DEMANDED</u> |

**PLAINTIFFS' RESPONSE TO ALCOA INC. AND ST. CROIX ALUMINA'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLASS CLAIMS FOR INJUNCTIVE RELIEF [DOC. NOS. 1308-1310]**

<u>Henry v. St. Croix Alumina, LLC, et al.</u>, CIVIL NO. 1999/0036
PLAINTIFFS' RESPONSE TO ALCOA INC. AND ST. CROIX ALUMINA'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' CLASS CLAIMS FOR INJUNCTIVE RELIEF [Doc. Nos. 1308-1310]
Page 2

The Class Plaintiffs, by and through their undersigned Counsel, hereby respond to Defendants Alcoa, Inc. and St. Croix Alumina, LLC's Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief.[1] Neither the Declarations nor the alleged expert report filed with Alcoa's Motion complies with the governing Rules, and Plaintiffs have moved to strike them.[2] Moreover, the Purchase and Sale Agreement proffered by Defendants in support of their Motion evidences that the Alcoa Defendants retained all liability related to this suit arising from their failure to properly secure the bauxite and red mud piles at issue. That agreement provides that SCA has access to the alumina refinery site until this lawsuit is concluded. Further, in 2003, Alcoa entered into a Consent Order with the Government of the Virgin Islands whereby specifically agreeing to remediate the nuisance that underlies Plaintiffs' claims for injunctive relief in order to prevent **future** releases. The documents filed by Defendants in alleged support of their Motion establish that Alcoa continues to fail and refuse to fulfill its obligations to the people of the Virgin Islands generally, and to the Class Plaintiffs specifically. The Alcoa Motion for Summary Judgment on Plaintiffs' Class Claims for Injunctive Relief must be denied as Defendants have failed to show that they are entitled to judgment as a matter of law on the newly-certified class claims.

An additional ground for denying the Alcoa Motion is that it is premature. The new class was certified by this Court on June 3, 2008. No status conference as

---

[1] Defendant Glencore Ltd. ("Glencore") joined Alcoa's Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief and incorporated it by reference into Glencore Ltd.'s Motion for Summary Judgment on Class Claims for Injunctive Relief and Memorandum of Points and Authorities in Support Thereof ("Glencore MSJ"). *See* Doc. No. 1311, at p. 3. Both Motions were filed on May 15, 2009. A third Motion was filed by Defendants jointly on May 22, 2009. To avoid confusion, the Motions filed on May 15, 2009 will be designated "Alcoa's Motion" and "Glencore's Motion" respectively, and the Motion filed on May 22, 2009 will be cited as "Defendants' Joint Motion" or "the Joint Motion".

[2] *See* PL Mot. to Strike, Doc. No. 1319.

required by Fed. R. Civ. P. 16 has been held and no discovery relevant to the new class has been conducted.  The necessity for discovery on the newly certified class claims is underscored by the new documents proffered in support of the Alcoa Motion.  None have ever been produced in discovery in this case and all point to additional non-disclosed evidence relevant to claims and defenses raised by the recent new class certification.  Moreover, to the extent the government's enforcement actions are successful, characteristics of the nuisance at issue in the newly certified class will be modified.  Plaintiffs respectfully request that the Alcoa Motion for Summary Judgment be denied as premature.

In the alternative, Plaintiffs have moved by separate filing pursuant to Fed. R. Civ. P. 56 (f), to request that resolution of the Alcoa Motion for Summary Judgment be stayed to allow discovery relevant to the claims of the newly certified class.[3]  By their own proffer, Defendants have shown that matters being litigated in other cases and other courts are related to the matters at issue herein.  Plaintiffs are entitled to an opportunity to acquire the information and evidence produced in those cases to oppose this Motion.  This includes discovery of admissions made by Defendants in the sister courts, and the nature and progress of plans for remediation or closure of the bauxite and red mud piles that are currently under consideration.

The following Memorandum of Points and Authorities and Plaintiffs' Statement of Facts (Doc. No.1322), provides further support for Plaintiffs' Response.[4]

---

[3]  Plaintiffs hereby incorporate by reference Plaintiffs Motion for A Stay of the Motions by Alcoa and Glencore for Summary Judgment on Plaintiffs' Class Claims for Injunctive Relief, Filed as an Alternative to Their Responses to Those Motions.
[4]  Plaintiffs incorporate herein by reference Plaintiffs' Statement of Material Facts in Support of their Opposition to Glencore Ltd.'s Motion for Summary Judgment on Class Claim for Injunctive Relief and Plaintiffs' Opposition to Glencore Ltd.'s Motion for Summary Judgment on Class Claim for Injunctive

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **Defendants are not Entitled to Summary Judgment on the Claims for Injunctive Relief of the Newly-Certified Class**

A.   **Governing law**

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[5]  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*  "To prove that no genuine factual issues exist, a movant must present a factual scenario without any 'unexplained gaps.'"[6]  In deciding a motion for summary judgment, the court is to "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party' but not weighing the evidence or making credibility determinations."[7]

"Contradictory testimony on fundamental facts may not be resolved as a matter of law

---

Relief, Plaintiffs' Statement of Material Facts in Opposition to Glencore's prior Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment and Plaintiffs' Memorandum in Support of their Opposition to Glencore's prior Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Based on Plaintiffs' Lack of Necessary Evidence, Plaintiffs' Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment Based on Plaintiffs' Lack of Necessary Evidence, and Declaration of Lee J. Rohn in Support of (1) Plaintiffs' Response and Memorandum in Opposition to Defendant' Motion for Summary Judgment Based on Plaintiff' Lack of Necessary Evidence (Doc. No. 1313) and (2) Plaintiffs' Response to Alcoa, Inc. and St. Croix Alumina's Motion for Summary Judgment on Plaintiffs' Class Claims for Injunctive Relief (Doc. No. 1310).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[6] *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579 (3d Cir. 1992), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

[7] *Hill v. City of Scranton*, 2005 U.S. App. LEXIS 10709 *13 (3d Cir. 2005), *citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).  *See also Anderson*, 477 U.S. 242, 249 (the judge's role when adjudicating a motion for summary judgment "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.")

and presents a bar to summary judgment."[8]  As this Court has recognized, "[summary judgment is an extreme remedy which is not to be granted unless the movant[] has] established their rights to a judgment with such clarity as to leave no room for controversy."[9]

The claims at issue in the newly-defined class are that the conduct of Defendants with regard to the unsecured piles of bauxite and mountains of red mud at the St. Croix alumina refinery constitute a public nuisance for which Plaintiffs are entitled to injunctive relief.  A recent case involving the same refinery at issue here defines a public nuisance as "'an unreasonable interference with a right common to the general public.'"[10]  The factors to be considered for determining reasonableness include: (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience or; (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation or; (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.[11]  Necessarily subsumed in these factors "are questions such as the extent of the toxicity of the stored materials and defendants' knowledge of such, and the extent that

---

[8]  *Carty v. HOVIC*, 78 F. Supp. 2d 417, 421; 42 V.I. 125 (D.V.I. App. Div.1999), *citing* Fed. R. Civ. P. 56 advisory committee's notes (1963 amend.).

[9]  *Bussue v. Paradise Motors, Inc.*, 29 V.I. 181, 182 (D.V.I. 1994)(citation omitted).

[10]  *Mathes v. Century Alumina Co. et al.*, No. 2005/0062, 2008 U.S. Dist. LEXIS 90087, *1,*9 (D.C. V.I. Oct. 31, 2008) (quoting Restatement 2d Torts §821B(1)).

[11]  Restatement of Torts, § 821B(2); *See also City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296 (E.D.N.Y. 2007) addressed the concept of causation in the context of a public nuisance: "where the welfare and safety of an entire community is at stake, the cause need not be so proximate as in individual negligence cases." *Id.* 347-48.

the materials could be dispersed into surrounding properties."[12]   Whether the bauxite

and red mud are stored properly and how to remediate the public nuisance are

questions common to all putative class members."[13]

The Court is authorized to "determine the course of proceedings" and "deal with .

. . procedural matters" relative to conducting a class action by FRCP 23 (d)(1).[14]  Rule

16 provides that the Court must issue a scheduling order.[15]  No rule exempts class

actions from this requirement.  Pursuant to FRCP 23 (d)(2), an order under Rule 23

(d)(1) may be combined with a Rule 16 order.[16]  Finally, "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense."[17]

**B.     Alcoa's Motion for Summary Judgment based on Defendants' lack of control**

As they have been attempting since at least 2005, Alcoa and SCA try yet again

to dispute their liability to the newly-certified class on the alleged grounds that SCA sold

the refinery property in 2002 and that Alcoa never owned it.[18]  This argument ignores

the Court's finding that "Defendant St. Croix Alumina, LLC, and Defendant Alcoa, Inc.,

owned and operated the subject alumina processing facility."[19]  The time to object has

---

[12] Doc. No. 1255 (6/3/08 Memo Op on certification), at p. 11.

[13] Id., at p. 12.

[14] FRCP 23 (d)(1).

[15] FRCP 16(b)(1).

[16] FRCP 23 (d)(2).

[17] FRCP 26 (b)(1).

[18] DF Memo, at p. 6.; Doc. No. 838, at p. 11 n.4.

[19] Doc. No. 949 (4/24/06 Order) at p. 1 (adopting the findings of the magistrate Judge in Doc. No. 943 (3/29/06 Prop. Find. & Recomm.) (reciting that no party disputed the Magistrate's finding.)

long passed.  Further, Alcoa's 30(b)(6) witness admitted that SCA was an "Alcoa-controlled entity."[20]  Defendants unsuccessfully raised this issue in their briefings regarding certification.  The Court determined that "plaintiffs have alleged and shown that certain defendants may retain an ability or obligation to perform cleanup on the refinery property pursuant to a contractual right of entry," and refused to deny certification based on "a possibility that the desired equitable relief may eventually prove unavailable after the issue is fully litigated."[21]

The decision was correct.  "[O]ne who creates a public nuisance cannot avoid liability by selling the property on which the nuisance was created."[22]  In the context of environmental abatement injunctions, a party may be ordered to abate pollution on property that is not in the possession of any party then before the court.[23]  Finally, this

---

[20] Alcoa 30(b)6) Dep. (Norton), 333, Feb. 25, 2002.

[21] Doc. No. 1255 (6/30/08 Memo Op on certification), at p. 24 (Noting that "a full inquiry into the merits is inappropriate at the certification stage . . . ")

[22] *New York v. Solvent Chemical Co.,* 880 F. Supp. 139, 144 (W.D. N.Y. 1995) (cit om.) (applying New York law).  *See also Northridge Co. v. W.R. Grace & Co.,* 556 N.W.2d 345, 351 (Wis. Ct. App. 1996) (quoting *Kamke v. Clark,* 67 N.W.2d 841, 843 (Wis. 1955)) ("The fact that the defendant cannot enter to abate the nuisance does not excuse his liability, for it is his own wrong which has involved him in trouble.")  *See also The Woods at Wayne Homeowners Ass'n v. Gambone Bros. Const. Co.,* 893 A.2d 196, 205 (Pa. Cmmw. Ct. 2006) (rejecting a defendant's "why me?" argument notwithstanding fact that defendant had transferred ownership to a homeowners' association); *accord also United States v. Bailey,* 516 F. Supp. 2d 998, 1018-19 & n.12 (D. Minn. 2007) (where it was conceded that defendant Bailey no longer owned the road at issue, the court found that "the nature of Bailey's property rights over the Road is irrelevant" and that, "There is no doubt that it was *Bailey* who violated the CWA, and nothing in the statute or the case law interpreting it suggests that Bailey can escape liability by passing the Road on to the County."); *Schneider v. Sweeney,* 66 Pa. D. & C. 437, 442, 1949 WL 2993 (Pa. Com. Pl. 1949) (rejecting lessor's argument that "being out of possession of the premises, he is not liable and cannot be reached by injunction") (cit. om.)  *Piambino v. Bestline Products, Inc.,* 645 F. Supp. 1210, 1215 (S.D. Fla. 1986) (quoting *Air America, Inc. v. Hatton Bros., Inc.,* 570 F. Supp. 747, 750 (S.D. Fla. 1983) (further cit. om.)) (a party cannot escape liability by "creat[ing] his own inability" to comply with a court order.)

[23] *See, e.g., City of Bangor v. Citizens Communications Co.,* 437 F. Supp. 2d 180, 219-20 (D. Me. 2006) (finding parties liable under RCRA "to carry out the directives of a mandatory injunction that will abate the substantial and imminent endangerment presented by tar contamination in Dunnett's Cove" despite that part of the cove is owned by the State of Maine, which was not a party to the action).

Court possesses sweeping and inherent authority to fashion appropriate equitable relief. "'Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.'"[24]

The 2002 agreement for the sale of alumina facility proffered by Defendants contradicts their claim that the buyers "expressly assumed liability arising from the red mud pile".[25]  Paragraphs 6.2 and 6.2 (d) define Seller's "Retained Liabilities" to include **"[a]ll liability arising out of any alleged failure to secure materials on the Property, including but not limited to bauxite, 'red dust' and red mud** and the alleged spreading of bauxite, 'red dust' and red mud into the surrounding neighborhood, when said materials were allegedly blown off the Property on or about September 21, 1998 when the island of St. Croix was struck by hurricane Georges, **which liability may be found or determined pursuant to that certain class action lawsuit filed against Seller [SCA], Alcoa and Glencore, Ltd. f/k/a Clarendon, Ltd. in the District Court of the Virgin Islands, Division of St. Croix, under Case Number Civil No. 0036/99 (the 'Class action Lawsuit') . . ."**[26]

Paragraph 26 of the Agreement is an admission that Alcoa has retained the right of "reasonable access to the site in connection with Seller's completion of the matters

---

[24] *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 562 (5th Cir. 1987) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)); *see also Connecticut Office of Prot. and Advocacy for Pers. with Disabilities*, 464 F.3d 229, 245 (2d Cir. 2006) ("District courts have broad authority in crafting equitable remedies such as injunctions.") (citing *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716 (2d Cir. 2004) (further cit. om.)); *Pacific Coast Fed'n of Fishermen's Ass'n v. U.S. Bureau of Reclamation*, 226 Fed. Appx. 715, 718 (9th Cir. Mar. 26, 2007) (unpub.) ("district courts have 'broad latitude in fashioning equitable relief when necessary to remedy an established wrong'") (cit. om.).

[25] DF Memo, at pp. 3, 4; DF Exh. C (3/22/02 Purchase and Sale Agreement).

[26] Defendants' Exh C, at pp. 6, 8 (emphasis supplied).

described in . . . Section 6.2(d)," quoted above.[27]   Paragraph 6.8 states that "[t]he

parties hereto acknowledge that . . . the Seller's responsibilities under . . . Section 6.2(d)

will extend for such time after the Closing **until the legal and administrative actions**

**described herein have been concluded.**"[28]   The Agreement concludes: "Finally, in

connection with any action or other proceeding arising from or related to Seller's

ownership and/or operation of the site, Purchaser shall provide such reasonable access

to the site, to its former employees (if any) and to the Pre-Closing Records as Seller

may reasonably request, from time to time, at such reasonable times and places as

Purchaser designates, but at Seller's expense."[29]   The cases upon which Defendants

rely for the proposition that they are no longer liable as former landowners are

inapposite as none involve issues of contractual liability such as are present in this

case.

Moreover, SCA and Alcoa have entered into a Consent Order with DPNR.[30]  Per

the agreed-upon terms, Alcoa was to obtain a Coastal Zone Management ("CZM")

permit for the express purpose of constructing a "red mud sediment control system,

which is designed **to prevent or minimize future releases** to the environment, if any,

**from the red mud piles** located on the facility formerly owned by SCA."[31]  Pursuant to

---

[27] *Id.*, at p. 25.

[28] *Id.*, at p. 11 (emphasis supplied).

[29] *Id.*, at p. 26.

[30] Exh 83.

[31] *Id.*

its retention of control in the Consent Order, SCA did apply for the CZM permit.[32]   The

Major Permit to allow Alcoa to perform mitigation efforts on the alumina facility was

issued to Alcoa almost two (2) years after Alcoa sold the property.   A special condition

of the CZM Permit was that SCRG would have no responsibility for the permitted

construction around the bauxite residue storage areas until after DPNR deemed the

construction complete.[33]   In 2006, Alcoa informed DPNR that it had finished the job.

DPNR disagreed, stating unequivocally that "SCA has failed to comply with its

obligations" and reiterating that "**SCA was obligated to construct a 'red mud**

**sediment control system' to 'prevent or minimize future releases to the**

**environment, if any, from the red mud piles' in January 2003.**"[34]   DPNR emphasized

that "it was an absolute requirement."   *Id.*

Alcoa's continued to refusal to comply prompted DPNR to file suit in the Superior

Court of the Virgin Islands on December 1, 2006.[35]   The suit alleges that SCA has

provided "false and inaccurate information" in connection with its application for the

CZM permit."[36]   Alcoa admits that suit is still pending.   Defendants' reliance on pending

DPNR enforcement actions to support their claims that this Court should step aside is

---

[32]   The application identified SCA as the applicant and developer and SCRG as the owner.   *See* Exh 84.

[33]   Exh. 85 (Major Coastal Zone Permit No. CZX-15-03 (L)), at p. 4.

[34]   Exh. 86 (Ltr. dated 8/10/06), at pp. 4 (emphasis supplied.)

[35]   DF Exh E.  A third suit to recover damages from, *inter alia*, Vialco, Century Aluminum Company, SCA
and SCRG for violations of CERCLA, common law, and Territorial law had already been filed by the Virgin
Islands Trustee of Natural Resources in the District Court of the Virgin Islands, Division of St. Croix, on
May 5, 2005.  *See* DF Exh. G.

[36]   *Id., citing* DF Exh. E (Compl. Civ. No. 2006/730) at ¶¶ 50, 51, and Request for Relief, p. 10; DF Exh. F
(Compl. in Civ. No. 2006/772) (DPNR filed a second suit arising from additional violations by SCA and
others of federal and territorial law on December 31, 2006.)

misplaced.  Alcoa's continuing intransigence in the face of its Agreement with DPNR is proof that this Court Plaintiffs' class claims under common law must be allowed to proceed.[37]

### C.   Discovery relevant to the claims of the newly certified class should be scheduled

Despite the recent certification of a new class with additional class members and a different definition of the class, and their acknowledgement that evidence of the current status of the refinery property is crucial to abating the nuisance, Defendants state that all discovery is closed.  If Defendants are correct, then none of the evidence they offer in support of their Motion could be considered because none was produced in discovery.[38]  "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence . . . on a motion any witness or information not so disclosed."[39]  At the same time Defendants argue that expert discovery is closed, they rely on opinions of an expert, Kirk Gribben, who was never disclosed as an expert and by whom no report was ever produced.[40]  By the plain terms of FRCP 37(c)(1), Defendants are not permitted to use his testimony on this summary judgment motion.  *Id.*

---

[37] *Kennedy Bldg. Assoc. v. Viacom, Inc.,* 375 F.3d 731, 744-45 (8th Cir.  2004), (quoting *Kostok v. Thomas,* 105 F.3d 65, 68 (2d Cir. 1997)). ("If the suit were to be dismissed upon an agreement between third parties to perform at some time in the future, if 'some impediment arises or some prolonged delay ensues' in the planned performance, the plaintiff would be 'at square one.'")

[38] *See* Doc. No. 340 (9/20/01 Order), at pp. 1, 2.

[39] Fed. R. Civ. P. 37 (c)(1).

[40] *Compare* Memo at pp. 1 (making the bald statement that "both fact and expert discovery are closed"), *with* pp. 12-17 (arguing that expert discovery is closed.).

By their own proffers, Defendants acknowledge that fact discovery on the new class claims is needed.  Their defenses that another party is contractually obligated to remediate, and that Defendants will be unable to do so in the event Plaintiffs are successful on their claims for injunctive relief, depend entirely on Defendants' ability to prove up events and circumstances that transpired after they allegedly relinquished possession of the site.[41]   No documents on these issues were produced in this case, and they are prohibited from relying on them here.[42]   Moreover, the new class is certified under Rule 23 (b)(2) which requires proof that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[43]   The documents proffered by Defendants provide proof of their actions and refusals to act that are critical to the claims of the newly certified class.

Finally, Defendants rely on their interpretation of a March 2002 Purchase and Sale Agreement for the St. Croix facility and a June 13, 2002 letter Amendment without disclosing that the interpretation of the agreement is the subject of a contentious, hard-fought lawsuit presently pending.[44]   The recently filed statement of facts relating to a summary judgment motion in the SCRG case references numerous contract documents, depositions, and other evidence related to the Agreement, none of which

---

[41]  DF Memo, at pp. 10-12.  *See also* Doc. No. 1255, at pp. 23-24, *citing Bano v. Union Carbide Corp.*, Civ. A. No. 99-11329, 2005 WL 2464589, at *3 (S.D.N.Y. Oct. 5, 2005).

[42]  Fed. R. Civ. P. 37 (c)(1).

[43]  Fed. R. Civ. P. 23(b)(2).

[44]  DF Exh. C, D.  *See St. Croix Renaissance Group, LLP, et al., v. St. Croix Alumina*, LLC, Civ. No. 2004/67 in the District Court of the Virgin Islands (the "SCRG case").

has been provided to Plaintiffs or class counsel in discovery.[45]   Defendants' control of

the site and access to it from 2002 to the present are matters that must be determined

in order to fairly apportion liability for abating the nuisance that currently exists.

　　　The prior class was originally certified on August 7, 2000.[46]   The original class

definition was confined to people and property injured and damaged during and after

Hurricane Georges on September 21, 1998 "due to Defendants' conduct with regard to

the containment and storage of red dust containing bauxite and red mud."  As required

by the Rules, all of the expert discovery conducted prior to the new certification was

relevant to the claims of the original class.[47]   Plaintiffs' original expert reports were due

and produced on Sept. 30, 2003.[48]

　　　On June 3, 2008 this Court certified a new class consisting of "[a]ll persons who

**currently** reside, work, and/or own property . . ." in a number of neighborhoods

adjacent to "the St. Croix Alumina Refinery Plant property . . ." and who "due to

defendants' conduct, could suffer personal injuries or property damage in the **future** . .

."[49]  The class was certified "only insofar as they seek cleanup, abatement or removal of

---

[45]  Doc. No. 229, filed as Exh. 53 in this case (St. Croix Alumina, LLC's and Alcoa World Alumina, LLC's Statement of Undisputed Facts, dated May 15, 2009).

[46]  Doc. No. 187 (Memo Op).  *See also* Doc No. 188 (Order).

[47]  FRCP 26 (b)(1) (the scope of discovery is limited to matters "relevant to any party's claim or defense"); Doc. No. 729 (1/27/05 Order), at pp. 3, 4, ¶ 2 (b). (The topics addressed by the expert witnesses with regard to the original class included: "Boundaries of class neighborhoods," "Regulatory issues," "Economic issues," "Medical IMEs of adult named plaintiffs, Medical causation, risk, and medical monitoring," "Medical IMEs of minor named plaintiffs," "Psychological IMEs and emotional Condition/injury (existence, causation, severity, treatability, etc.)," "Epidemiology and its interplay with medical monitoring," "Psychometric testing (if Dr. Copernann is not dropped as an expert for Plaintiffs)," "Medical monitoring experts," "Risk and causation," "Cost of medical services," "Chrome six toxicology experts," "Silica toxicology," "Dermatology," "Nature and extent of exposure," and "Alleged real property damages.

[48]  Doc No. 508 (8/26/03 Amend Sched Order).

[49]  *See* Doc. No. 1255, at p. 25 (6/30/08 Memo) (emphasis supplied).

the **substances currently present** on the refinery property."[50]  Discovery relative to this

class requires samples of what substances are currently present, how they are

contained or not contained, and the likelihood they will be dispersed into the

neighborhoods by another hurricane.  Expert testimony relevant to the newly-certified

class would focus on current conditions at the refinery in order to determine how much

bauxite and red mud currently remain at the site, the extent to which it is exposed and

the effectiveness of any attempted or planned abatement or remediation, what risks

those materials currently pose to the adjacent communities, and what is required to

remediate the site so that it no longer poses a threat of personal injuries or property

damage to the adjacent communities **in the future**.  No Rule 16 status conference has

been held regarding the claims of the newly certified class and no order scheduling

expert disclosures relevant to the new class has been entered.  No experts on the

relevant newly certified matters have been identified and no expert reports on these

topics have been exchanged.

Defendants proffer a Declaration of Kirk Joseph Gribben, expressing his opinions

with regard to remediation and closure of the piles of bauxite residue remaining on the

alumina refinery site and of various unspecified proposals for accomplishing the same.

Mr. Gribben has never been identified as an expert in this matter and has not provided a

report or required Rule 26 disclosures.  While Defendants attempt to tender him in this

case as a lay witness testifying as to his own personal knowledge, his Declaration is

---

[50] *Id*. (emphasis supplied).

clearly opinion as opposed to fact.[51] Mr. Gribben was never disclosed in this case as a person with knowledge pursuant to Rule 26, and his testimony inadmissible in support of this Motion.[52]   Further, in the SCRG case, Kirk Joseph Gribben was identified as "a trial preparation expert for purposes of Fed. R. Civ. P. 26(b)(4)" who "is a member of the litigation team for purposes of this case."[53]   His bias as an admitted member of Alcoa's "litigation team" plainly disqualifies him as an independent expert.   While arguing that expert discovery is closed, Defendants have attempted to rely on a new expert.

### 3.   Evidence already of record supports injunctive relief.

In a recent decision involving the same refinery at issue here, a public nuisance is defined as "'an unreasonable interference with a right common to the general public.'"[54]   Evidence already of record in this case shows that Defendants have knowledge that there remains a significant risk that people living and working in the neighborhoods adjacent to the alumina refinery will suffer various health hazards and property damage as a result of Defendants' failure to secure or remove the bauxite and red mud remaining there.[55]   In fact, SCA has admitted that the link between releases of red mud and damage to the environment is so "obvious" that it is "inconceivable" that a person could look at photographs of the damage and not see the link.[56]   DPNR has

---

[51]   *See* DF Exh. H., at ¶¶ 3, 6-10, 12.

[52]   Fed. R. Civ. P. 37 (c)(1).

[53]   Exh. 87 (St. Croix Alumina, L.L.C. and Alcoa World Alumina, L.L.C.'s Memorandum in Opposition to Motion to Compel Deposition of Kirk Gribben) (filed as Doc. No. 117 in the SCRG case) at 2.

[54]   *Mathes v. Century Alumina Co. et al.*, No. 2005/0062, 2008 U.S. Dist. LEXIS 90087, *1,*9, *29 (D.C. V.I. Oct. 31, 2008) (quoting Restatement 2d Torts §821B(1)).

[55]   *See* PL Facts Nos. 21-46, 58, 60, 84, 85.

[56]   PL Fact No. 86.

concluded that SCA's actions with respect to bauxite and red mud violated relevant ordinances and regulations, were injurious to the public welfare, to the health of human, plant or animal life, and to property, and unreasonably interfered with the enjoyment of life and property of the residents located near the site.[57]  Further, the physical injuries, emotional distress, and property loss chronicled by the class representatives in this case demonstrate that Defendants' unreasonable interference has lasted well beyond Hurricane Georges on September 21, 1998.[58]  Finally, the class representatives have offered evidence that the red dust at the Refinery is still not contained.  Indeed, the SCRG case arose out of a release of red mud in 2002.[59]

### D.     The doctrine of primary jurisdiction does not apply

The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.  It requires the court to enable a 'referral' to the agency, staying further proceedings **so as to give the parties reasonable opportunity to seek an administrative ruling**."[60]  "It is now generally accepted . . . that the principal justification [for the doctrine] is the need for an orderly and sensible coordination of the work of agencies and courts."[61]  There is no "fixed formula" for determining whether the doctrine

---

[57] Exhibit 40 at IV(2), (3).

[58] *See* Pls.' Statement of Facts at ¶¶ 30-42 (describing Plaintiffs' physical injuries, emotional distress, and property losses).

[59] *See, generally,* Exhibit 53.

[60] *Reiter v. Cooper*, 507 U.S. 258, 268; 113 S. Ct. 1213; 122 L. Ed. 2d 604 (1992) (citations and footnotes omitted)(emphasis added).

[61] *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 736 (3d Cir. 1983).

of primary jurisdiction applies, and the dispositive question is whether the policies

supporting application of the doctrine are present in any case.[62]   "[O]nce the court

properly refers a matter or a specific issue to the agency, that agency's determination is

binding upon the court and the parties (subject, of course, to appellate review through

normal channels), and is not subject to collateral attack in the pending court

proceeding."[63]

    Because the purpose of applying the primary jurisdiction doctrine is to allow an

agency to decide the issues within its purview, there must be procedures available to

allow "referral" of those issues.  The term "referral" is used loosely, as most statutes

"contain[] no mechanism whereby a court can on its own authority demand or request a

determination from the agency . . ."[64]  The actual procedure in most cases is that further

action by a district court is stayed in order for a plaintiff to apply to the appropriate

agency for a ruling.[65]  *Id.*  Defendants have identified no procedure or statutory support

for referral of issues by the District Court to DPNR or for Plaintiffs to obtain DPNR

review of any issues, and Plaintiffs have found none in their survey of the law.

    The non-existence of a procedure to initiate review is fatal to the application of

the doctrine.  "Where the agency lacks procedures for complainants to 'trigger and

---

[62]  *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 77 S. Ct. 161, 165, 1 L. Ed. 2d 126 (1956).

[63]  *Elkin v. Bell Tel. Co. of Pa.*, 491 Pa. 123, 420 A.2d 371, 376 (Pa. 1980) (footnotes omitted).  *See also
Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1444 (3d Cir. 1991)
("[T]he transferor-district court will be bound by the Commission's decision on the issue transferred . . .")

[64]  *Reiter v. Cooper*, 507 U.S. 258, 268 n. 3.  *See CSX Transp. Co. v. Novolog Bucks County,* 502 F.3d
247, 253 (3d Cir. 2007) (statute specifically provided for referral by a district court to the agency) (cit.
om.).  *See also Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 674; 123 S. Ct. 1855; 155 L. Ed.
2d 88 (2003) (Breyer, concurring in part), *citing United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64,
77 S. Ct. 161, 1 L. Ed. 2d 126 (1965) (emphasis added)

[65]  *Reiter v. Cooper*, 507 U.S. 258, 268 n. 3.

participate in' the administrative process," the doctrine of primary jurisdiction is inapplicable.[66] "[T]he doctrine of primary jurisdiction is not a doctrine of futility" and "the absence of an available procedure for obtaining a Board determination" provided grounds for "reject[ing] the unions' primary-jurisdiction contention."[67]   Further, as non-parties to the DPNR proceedings, Plaintiffs would have no authority to enforce any agreement reached between Defendants and DPNR. [68]

The party moving to refer issues to an administrative agency has the burden of persuading the Court that the case "requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."[69]   Defendants have failed to carry their burden here.  This Court has already recognized that "it is unclear whether the DPNR suit can be considered "parallel" given that the agency action seeks to enjoin alleged environmental contamination of wetlands near the refinery rather than alleviate a possible threat to the safety of nearby residents."[70]   Defendants' argument, consisting of conclusory assertions unsupported by admissible evidence, fails to clarify that issue.[71]  The claims that "DPNR has determined that any remediation will . . . address any concerns about airborne releases," that "any proposed remediation of the dry-stack area will impact . . .

---

[66]  *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir. 1983) (cit. om.).

[67]  *See also Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen*, 381 U.S. 676, 686, 687; 85 S. Ct. 1596; 14 L. Ed. 2d 640 (1965).

[68]  *Kennedy Bldg. Assoc. v. Viacom, Inc.*, 375 F.3d 731, 744-45 (8th Cir.  2004).

[69]  *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103 (3d Cir. 1995).

[70]  Doc. No 1255 (6/3/08 Cert Op), at p. 24.
[71]  *See for example*, DF Memo, at p. 19 ("the injunction would be considerably more complicated than merely an order requiring removal of all red mud from the site", "wholesale removal of all red mud currently at the facility would in fact cause greater releases of fugitive dust".)

the potential for airborne emissions . . .," and that "[c]urrently, DPNR is in the process of developing a plan that will address . . . the potential for airborne releases of red mud" are not based on any representation by DPNR, but rather only on inadmissible testimony of Alcoa's own "litigation team" expert who is prohibited from testifying in support of this Motion.[72]. "[C]ourts are commanded **to examine each issue** identified by the party proposing application of the doctrine **to determine whether resolution of the specific issue requires the special competence of an administrative agency.**"[73] Defendants have identified no specific issue qualifying for referral, thus preventing the Court from making the necessary inquiry.[74] Because, as Defendants admit, no DPNR remediation plan has proceeded beyond the proposal stage, any conflict with the remedy to be fashioned by this Court is completely speculative.[75]

Finally, Defendants argue that this Court should "defer to the primary jurisdiction of DPNR, as closure and remediation of the alumina refinery site is currently the subject of agency action." Yet, despite signing a Consent Order and obtaining a CZM permit requiring construction of a sediment control system to "prevent or minimize future releases" from the red mud piles in 2003, Alcoa & SCA, the parties to the referenced DPNR action, have fought their obligations with regard to the red mud piles for more

---

[72] DF Memo, at pp. 18, 19, 21; FRCP 37 (c) (witness not identified in discovery not permitted to supply evidence on a motion.)

[73] *Phone-Tel Communs. v. AT&T Corp.*, 100 F. Supp. 2d 313, 316 (E.D. Pa. 2000), *citing Teleconcepts*, 71 F.3d at 1104, *quoting Elkin v. Bell Telephone*, 491 Pa. 123, 420 A.2d 371, 377 (Pa. 1980) (emphasis added).

[74]  Plaintiffs specifically dispute Defendants' claims that they do not seek remediation of bauxite. DF Memo, at 18.  There is no evidence of record that the bauxite was ever removed.

[75] *See* DF Memo, at p. 21 ("the possibility exists", "private action might conflict", "it is likely"); p. 22 ("could possibly frustrate"); p. 23 ("there exists the possibility" ,

than six (6) years.[76]   At the same time Defendants tout the authority of DPNR in this Court, they continue to flout it in the agency action.[77]   Incredibly, Defendants cite the suits brought by DPNR against Alcoa and SCA to enforce their obligations as support of the argument for deferral.[78]   Alcoa's failure to comply with the terms of its agreement with DPNR strongly counsels against this Court applying the doctrine of primary jurisdiction to stay Plaintiffs' claim for injunction relief.[79]

The analysis by the *Kennedy Bldg. Assoc.* court is instructive, even though the doctrine of primary jurisdiction was not at issue.   That court rejected the argument, brought by the corporate successor to a prior owner, that a consent order between it and the state pollution control agency executed on the eve of trial mooted the present owner's abatement injunction request.   Rejecting the defendant's argument that an abatement injunction conflicted with the state agency's efforts, the court found that the failure of the parties to reach agreement on substantive remediation terms made defendant's argument "completely speculative, and we cannot find preemption based on hypothetical facts."[80]   Further, the court explained that the *Kennedy* plaintiff was not a party to proceedings between defendant and the state agency and would be unable to enforce remediation agreements between the two.   Therefore, agreements between the defendant and a state agency could not moot the plaintiff's lawsuit, especially

---

[76]   *See* Exh 83 (1/22/83 Consent Order); Exh. 85 (11/5/03 Major Coastal Zone Permit No. CZX-15-03 (L)); Exh. 86 (Ltr. dated 8/10/06): DF Exh E (12/1/06 DPNR Compl).

[77]   DF Memo, at pp. 20, 21.

[78]   DF Memo, at p. 19.

[79]   *Kennedy Bldg. Assoc. v. Viacom, Inc.,* 375 F.3d 731, 744-45 (8th Cir.  2004).

[80]   *Id.* at 745.

considering that plaintiff had devoted years to the litigation. "If the suit were to be dismissed upon an agreement between third parties to perform at some time in the future, if 'some impediment arises or some prolonged delay ensues' in the planned performance, the plaintiff would be 'at square one.'"[81]

Similarly, the doctrine of primary jurisdiction has no application here.

## CONCLUSION

Defendants have failed to carry their burden on summary judgment. The witness statements they proffer are inadmissible and not based on reliable information. The documents upon which they rely and others evidence that Alcoa and SCA have retained the liabilities for the class claims in this suit and access to the alumina facility to remedy the threat of continued nuisance from red mud and bauxite. Defendants' attempts to rely on documents not produced in discovery, and therefore not admissible as evidence to support summary judgment, illustrate that discovery is needed on the claims of the newly certified class. The doctrine of primary jurisdiction does not apply and does not support staying injunctive relief, or operate to dismiss the class claims. The Alcoa Motion for Summary Judgment on the Class Claims for Injunctive Relief must be denied in all respects.

---

[81] 375 F.3d at 745 (quoting *Kostok v. Thomas,* 105 F.3d 65, 68 (2d Cir. 1997)). *See also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 263 F. Supp. 2d 796, 874 (D.N.J. 2003) (concluding "that injunctive relief is necessary to prevent irreparable harm to Plaintiffs and the public in light of Honeywell's history of delay in investigating and remediating the Site since it was first directed to do so by the State of New Jersey some twenty years ago.")

Henry v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
PLAINTIFFS' RESPONSE TO ALCOA INC. AND ST. CROIX ALUMINA'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFFS' CLASS CLAIMS FOR INJUNCTIVE RELIEF [Doc. Nos. 1308-1310]
Page 22

RESPECTFULLY SUBMITTED
LAW OFFICES OF ROHN &
CARPENTER, LLC
Attorneys for Plaintiff

DATED:  July 24, 2009

BY: ___ s/Lee J. Rohn _____
Lee J. Rohn, Esq.
VI Bar No. 52
1101 King Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone: (340) 778-8855
Fax: (340) 773-2954

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on July 24, 2009, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Bernard  Pattie, Esquire
Law Office of Bernard Pattie
1244 Queen Cross Street
Suite 5
St. Croix, VI  00820-4932
    Attorney For: St. Croix Alumina LLC and Alcoa Inc.

Derek M. Hodge, Esquire
MacKay & Hodge
19A-20 Kongens Gade
P.O. Box 303678
St. Thomas, VI  00802
    Attorney For: Glencore, Ltd.

Gordon Rhea, Esquire
Richardson, Patrick Westbrook & Brickman, LLC
1037 Chuck Dawley Blvd. Bldg A
Mt. Pleasant, SC  29464
    Attorney For: Plaintiffs

Laura Baughman, Esquire
Baron & Budd, P.C.
3102 Oak Lawn Ave.
Dallas, TX  75219-4281
    Attorney For: Plaintiffs

Lori E. Jarvis, Esquire
Hunton & Williams
River Front Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219
    Attorney For: St. Croix Alumina LLC and Alcoa Inc.

Rene' P.  Tatro, Esquire
Tatro Tekosky Sadwick LLP
660 S. Figueroa Street, Suite 1450
Los Angeles, CA  90017
    Attorney For: Glencore, Ltd.

BY:   s/ *Lee J. Rohn*_____ (sb)