# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

JOSEPHAT HENRY resident of Harvey, KAY WILLIAMS resident of Harvey, SYLVIA BROWNE resident of Clifton Hill, MAUDE DREW resident of Estate Barren Spot, MARTHA ACOSTA resident of Estate Profit, WILHELMINA GLASGOW as in individual and mother and next of friend of SAMANTHA VIERA, a minor, both residents of Estate Profit, MERCEDES ROSA resident of Estate Profit, GEORGE RODRIGUEZ as an individual and as father and next friend of AMANDO and GEORGE E. RODRIGUEZ, minors, all residents of Estate Profit, SONYA CIRILO resident of Estate Profit, RAQUEL TAVAREZ, resident of Estate Profit, NEFTALI CAMACHO, as an individual and as father and next friend of ANGEL JAVIER CAMACHO a minor, both residents of Estate Profit, EYAJIE MALAYKHAN resident of Estate Profit, CHEDDIE KELSHALL resident of Estate Profit and other persons too numerous to mention, A CLASS ACTION,

        Plaintiff,

    v.

ST. CROIX ALUMINA, LLC, ALCOA INC., and GLENCORE, LTD., f/k/a CLARENDON, LTD.,

        Defendant.

CIVIL NO.  1999/0036

**ACTION FOR DAMAGES**

<u>JURY TRIAL DEMANDED</u>

---

## PLAINTIFFS' OPPOSITION TO GLENCORE LTD'S MOTION FOR SUMMARY JUDGMENT ON CLASS CLAIM FOR INJUNCTIVE RELIEF

The Class Plaintiffs, by and through their undersigned counsel[1], oppose Glencore Ltd.'s Motion for Summary Judgment on Class Claim for Injunctive Relief ("Glencore's Motion" or "Glencore's present Motion") on the grounds that Glencore unfairly asks this Court to apply legal conclusions reached in a prior decision that were based on a demonstrably false affidavit proffered by Glencore.  Glencore seeks to perpetuate the injustice by asking this Court to apply those conclusions to deny injunctive relief to the class of Plaintiffs newly certified on June 3, 2008, not all of whom were party to that Order.  In an August 10, 2007 Memorandum Opinion the Court specifically relied on misrepresentations of Glencore's affiant in reaching its conclusions of law.  Plaintiffs' proof in response to Glencore's present Motion demonstrates that the phony "facts" upon which Glencore relied then and relies now are in dispute.  Glencore cannot be permitted to continue to benefit from its abuse of the summary judgment process and Glencore's present Motion must be denied.

Additional grounds for denying the Motion are that it is not properly supported. Glencore proffers no factual evidence and merely cites to the August 10, 2007 Memorandum Opinion on summary judgment without proffering any evidence or conducting any legal analysis to show how that decision applies to the claims of the newly certified class, some of whom were not parties at the time of the decision and as such are not bound by the Order.  Finally, Glencore's Motion is not supported by a single citation of authority, in violation of Local Rule 7.0.1 (c).  Glencore's Motion must be denied.

---

[1]  Neither Laura Baughman, Esquire, nor the Law Offices of Baron & Budd, P.C., sign this Opposition or Plaintiffs' Statement of Facts in Support.

Plaintiffs' Opposition is supported by the following Memorandum of Points and Authorities.  As a threshold matter, Glencore moves for summary judgment on five grounds, stating that the grounds for its Motion are set out in the Memorandum of Law filed by Alcoa which Glencore incorporates by reference.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Relevant Facts

### A.    The Real Glencore Picture

"Glencore" or the "Glencore Group" as the terms are used throughout Century Aluminum Company's 10K filing with the SEC for 1996 mean "Glencore International."[3] "Glencore Ltd. [was] a U.S. branch of Glencore AG, which in turn, [was] wholly-owned by Glencore," i.e. Glencore International AG.[4]   Century Aluminum Company is referenced throughout the 1996 10-K as  "Century" or the "Company."[5]"  Prior to April 1996, the Company [Century Aluminum] was an indirect, wholly-owned subsidiary of Glencore."[6]

---

[2]  *See* Glencore's Motion, at p. 4.  In opposition to Glencore's Motion, Plaintiffs incorporate herein by reference Plaintiffs' Response to Defendants Alcoa, Inc. and St. Croix Alumina, LLC's Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief, and Plaintiffs' Statement of Facts in Support, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Based on Plaintiffs' Lack of Necessary Evidence, and Plaintiffs' Statement of Facts in Support, and Plaintiffs' Motion for a Stay pursuant to Fed. R. Civ. P. 56 (f).  Plaintiffs also incorporate Plaintiffs' Statement of Material Facts in Opposition to Glencore's prior Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment and their Memorandum in Support of their Opposition to Glencore's prior Motion for Summary Judgment or, in the Alternative, for Partial Summary Judgment.

[3]  Exh. 1, at p. 2.

[4]  Exh. 1  (Notes to Century Aluminum Co · 10-K · For 12/31/96, Filed On 3/27/97, Document 1 of 6), at p. 25

[5]  Exh. 1, at pp. 1, 25.

[6]  Exh. 1, at p. 25.

In April 1995, Ravenswood "acquired" Vialco, and Ravenswood became a wholly-owned subsidiary of Century Aluminum Company.[7]   The acquisitions were accomplished through "a restructuring within Glencore International AG and its subsidiaries", and "[t]he restructuring was accounted for as a transfer of interests among companies under the common control of Glencore International."[8] Vialco's "principal asset was an inactive alumina refinery in the United States Virgin Islands."[9]  On July 24, 1995, "[s]ubstantially all of Vialco's assets," including the Vialco alumina facility, were sold by Century Aluminum Company to a subsidiary of Alcoa L.L.C.[10]   The purchase price for the St. Croix facility was sixty million dollars ($60,000,000).[11]  Century Aluminum Company, a wholly-owned subsidiary of Glencore, recorded "[t]he difference between the assets and liabilities of Vialco . . . as additional paid-in capital."[12]

The Acquisition Agreement, memorializing the sale of the Vialco alumina refinery to Alcoa, identified Glencore International AG as the "ultimate parent" of Vialco.[13] Pursuant to the Agreement, Century Aluminum Company, a wholly-owned subsidiary of Glencore, "retained liability for environmental conditions existing at the time of the sale .

---

[7]  Exh. 1, at p. 2.

[8]  Exh. 1, at p. 2.

[9]  Exh. 1, at p. 25.

[10]  Exh. 1, at pp. 2, 25.

[11]  Exh. 2 (Acquisition Agreement between Glencore and Alcoa), at p. 4, § 2.2 (a).

[12]  Exh. at p. 25.

[13]  Exh. 2, at p. 2.  Alcoa Alumina & Chemicals was identified as the ultimate parent of SCA in the same Agreement.

.  ."[14]    The  Acquisition  Agreement  stated  that  "[w]ith  respect  to  Pre-Closing

Environmental Conditions, Seller shall be responsible for, and shall indemnify, save and

hold  Buyer  and  its  Affiliates  harmless  against,  any  amount  arising  therefrom  not  to

exceed $18 million."[15]

For  the  purposes  of  Article  VIII,  where  the  terms  of  the  indemnification

agreement  were  stated,  "the  term  'Pre-Closing  Environmental  Conditions'  shall  mean

conditions arising from the operation of the Refinery by Seller or its agents, and existing

at  or  before  the  Closing,  pertaining  to,  without-limitation,  surface  or  subsurface

conditions, soil or the groundwater at the Refinery, any off-site disposal arranged by or

for Seller, and the migration of substances from the real property of the Refinery, to the

extent, and only to the extent, that such conditions, pursuant to Legal Requirements as

in effect on the Closing Date and applicable to the Assets and the Refinery:"

> (1) require (with or without notice or a Judgment with respect
> thereto) remedial investigation and/or action and/or involve
> suits, actions or other proceedings for remedial action, study
> or investigation, and/or
>
> (2) give rise to Judgments, claims, demands, penalties,
> costs, and/or other liability of any nature of Buyer.[16]

Glencore's  liability  for  indemnification  was  conditioned  on  Alcoa's  providing

prompt written notice that remediation of the Pre-Closing Environmental Conditions was

required, or that "a suit, action, or other proceeding for legal action . . ." had been taken

against Alcoa that could result "in judgments, claims, demands, penalties, costs and/ or

---

[14]  Exh. 1, at p. 7.

[15]  Exh. 2, at p. 13, § 8.2 (a).

[16]  Exh. 2, at p. 14, § 8.1 (a).

other liability of any nature of Buyer and/or any of it Affiliates with respect to a Pre-Closing Environmental Condition."[17]   Per the terms of the Acquisition Agreement Glencore's indemnity obligations "survive until July 24, 2001."[18]   Glencore and Alcoa agreed to "cooperate with each other regarding any action called for or taken with respect to Pre-Closing Environmental Conditions (including, but not limited to, any investigation of and/or the initiation and/or implementation of any remediation with respect thereto) so that such actions are carried out in the most efficient cost effective manner which will not impede operations."[19]

Glencore has denied in the past Plaintiffs' statement that Glencore was bound by the indemnification agreement.  In its 1996 10-K filed with the SEC, Century Aluminum Company, Glencore's wholly-owned subsidiary, admits that it was Century Aluminum, not Vialco, who sold the St. Croix facility, that Century Aluminum and not Vialco treated the proceeds of the sixty million dollar ($60,000,000) sale as "paid-in capital", and that Century Aluminum Company "retained liability for environmental conditions existing at the time of the sale."[20]   Further, Glencore's 30(b)(6) representative, Robert Prusak, testified in 2002 that he was not "sure but I think that a Glencore company had to guarantee Vialco's indemnity obligation to Alcoa".[21]

---

[17]  Exh. 2, at pp. 14, 15 § 8.2 (b).

[18]  Exh. 2, at p. 17, § 8.5.

[19]  Exh. 2, at p. 15, § 8,4.

[20]  Exh. 2, at pp. 2, 7, 25.

[21]  Prusak Dep. 114, Feb. 22, 2002, Exh. 5; Exh. 2 at 14-17.

Since executing the Acquisition Agreement for the July 24, 1995 sale of the St. Croix facility, Glencore has acknowledged its indemnification obligations.  On February 27, 1996, the Virgin Islands Department of Planning and Natural Resources ("DPNR") gave notice that SCA had received tentative approval of its Air Quality Permit.[22]  Permit approval authorized "DPNR/DEP to begin collecting permit fees associated with the emission of air pollutants."[23]   SCA was billed $13,860.00 for "actual emissions, which amount to 770 tons, [and] cover[ed] two months of operation in 1995."[24]  According to Alcoa, it did not commence operations at the St. Croix Alumina facility until 1998.[25] Plainly the emissions for which penalties were assessed by the Virgin Islands government were a Pre-Closing Environmental Condition covered by the indemnification provisions of the Acquisition Agreement. [26]   Glencore's prompt direct payment of those fees demonstrates its retained liability for the Pre-Closing Environmental Conditions and its retained control of the site for the purposes of remediation.[27]

## B.      The picture as painted by Glencore

---

[22]   Exh. 4, copies of receipt, check, and cancelled envelope (all bearing the name "Glencore, Ltd.", produced and identified by SCA as documents copied from DPNR), and corresponding letter and invoice from DPNR files.

[23]   Exh. 4.

[24]  Exh. 4.

[25]  Doc. No. 1315 (Jt. Motion), at p. 3, Doc. No. 1314 (Statement of Facts in Support of Jt, Mot), No. 4.

[26]  Exh. 2, at pp. 14, 15 § 8.2 (b).

[27]  Exh. 4 (Copies of receipt, check, and cancelled envelope (all bearing the name "Glencore, Ltd.", produced and identified by SCA as documents copied from DPNR), corresponding letter and invoice from DPNR files).

In 2003, Glencore proffered an affidavit in support of its prior Motion for Summary Judgment wherein its 30(b)(6) representative swore under penalty of perjury, in relevant part, that "[t]he VIALCO stock was, **through 1995**, owned by VIALCO Holdings [and that] Glencore's **only** relationship to VIALCO was as a thrice-removed parent company".[28]  Glencore's representative further swore that:

> [i]n 1995, VIALCO Holdings transferred its interest in VIALCO to Century Chartering Company.  Century Chartering Company is not a subsidiary of VIALCO Holdings, Clarendon Holdings or Glencore.  Thus, at the time of Hurricane Georges in 1998, and at the time this action was filed in 1999, VIALCO was merely a *"former* thrice-removed indirect subsidiary of Glencore.[29]

In its fiings with the SEC, Century Aluminum Company has admitted that Century ALUMINUM Company, not Century CHARTERING Company, was the owner of the Vialco facility on St. Croix when it was sold in April 1995.[30]   Century ALUMINUM Company admitted in its 1996 10-K Form filed with the SEC that it was a wholly owned subsidiary of Glencore prior to April 1996.[31]   Century ALUMINUM Company admitted that it, not Century CHARTERING Company, sold the Vialco facility on July 24, 1995.[32]

In addition, Glencore falsely swore to the Court that it had no control over Vialco.[33]  Century Aluminum admits that Ravenswood, the entity that "acquired" Vialco

---

[28]  *See* Exh. 6,  Affidavit of Robert S. Prusak in Support of Glencore's Motion for Partial Summary Judgment, dated 12/8/03, at ¶ 4.

[29]  *Id.*, at ¶ 5.

[30]  Exh. 1 (Notes to Century Aluminum Co · 10-K · For 12/31/96), at p. 25.

[31]  *Id.*

[32]  Exh. 1 (Notes to Century Aluminum Co · 10-K · For 12/31/96, Filed On 3/27/97, Document 1 of 6), at p. 25.

[33]  Exh. 6, at ¶¶ 7, 13 ("Glencore did not control VIALCO's spending," "Glencore did not control VIALCO's decision-making processes," and "Glencore did not establish VIALCO's policies or practices.")

in April 1995 through "**a transfer of interests among companies under the common control of Glencore International**" was "**under the control of Glencore**" until 1996.[34]

Glencore further sworethat "Glencore and VIALCO assets were not intermingled."[35]   Century Aluminum admitted to the SEC that they were.   Pursuant to Century's 1996 10-K,

> on April 26, 1995, Berkeley and Virgin Islands Alumina Corporation ("Vialco"), whose principal asset was an inactive alumina refinery in the United States Virgin Islands . . . became subsidiaries of Ravenswood.  Substantially all of Vialco's assets were sold to an unrelated buyer on July 24, 1995.  **The difference between the assets and liabilities of Vialco was recorded as additional paid-in capital**" to Century Aluminum."[36]

Finally, Century Aluminum, Glencore's wholly-owned subsidiary, admits that when it sold the Vialco facility in 1995, it "retained liability for environmental conditions existing at the time of the sale," agreeing "to indemnify St. Croix Alumina against claims arising from environmental conditions for which the Company has retained extended to claims brought under the indemnity provision by July 24, 2001."[37]   The underlying lawsuit for the claims of the newly-certified class of Plaintiffs herein was commenced in the Territorial Court in February 1999 and removed to District Court in March 1999.[38]

## II.   Governing Law

---

[34] *Id.*, at pp. 2, 25 ("[p]rior to 1996, Ravenswood and Berkeley operated as separate entities, **under the control of Glencore**") (emphasis supplied).

[35] *Id.*, at ¶ 7.

[36] *Id.*, at p. 25.

[37] *Id.*

[38] Doc. No. 943 (Magistrate's 3/29/06 Rprt. & Recomm), at p. 4, Finding 1.

The governing summary judgment standards are familiar.  Federal Rule of Civil Procedure 56(c) provides for summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." [39]  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  A fact is material when it "might affect the outcome of the suit under the governing law."  *Id.*  "To prove that no genuine factual issues exist, a movant must present a factual scenario without any 'unexplained gaps.'"[40]

In deciding a motion for summary judgment, the court is to "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party' but not weighing the evidence or making credibility determinations."[41]  "Contradictory testimony on fundamental facts may not be resolved as a matter of law and presents a bar to summary judgment."[42]  As this Court has recognized, "[summary judgment is an extreme remedy which is not to be granted unless the movant[] has] established their rights to a judgment with such clarity as to leave no room for controversy."[43]

---

[39]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[40]  *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579 (3d Cir. 1992), *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

[41]  *Hill v. City of Scranton*, 2005 U.S. App. LEXIS 10709 *13 (3d Cir. 2005), *citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). *See also Anderson*, 477 U.S. 242, 249 (the judge's role when adjudicating a motion for summary judgment "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.")

[42]  *Carty v. HOVIC*, 78 F. Supp. 2d 417, 421; 42 V.I. 125 (D.V.I. App. Div.1999), *citing* Fed. R. Civ. P. 56 advisory committee's notes (1963 amend.).

[43]  *Bussue v. Paradise Motors, Inc.*, 29 V.I. 181, 182 (D.V.I. 1994)(citation omitted).

The claims put at issue by the newly-defined class are that the conduct of Defendants with regard to the unsecured piles of bauxite and mountains of red mud at the St. Croix alumina refinery constitute a public nuisance. *Mathes v. Century Alumina Co. et al.*, involving the same refinery at issue here,[44] defines a public nuisance as "'an unreasonable interference with a right common to the general public.'"[45] Pursuant to the Restatement of Torts, § 821B(2), the factors to be considered for determining reasonableness include: (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience or; (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation or; (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.[46] "Necessarily subsumed in these inquiries are questions such as the extent of the toxicity of the dispersed materials and defendants' knowledge of such, and the extent of defendants' knowledge that the materials could be dispersed into surrounding properties."[47] "[W]hether the bauxite and red mud were stored properly and whether defendants are entitled to an "Act of God" defense are questions common to all putative class members."[48]

---

[44] *Mathes v. Century Alumina Co. et al.*, No. 2005/0062, 2008 U.S. Dist. LEXIS 90087, *1,*9 (D.C. V.I. Oct. 31, 2008).

[45] *Id.* at *29 (quoting Restatement 2d Torts §821B(1)).

[46] *City of New York v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296 (E.D.N.Y. 2007) addressed the concept of causation in the context of a public nuisance: "where the welfare and safety of an entire community is at stake, the cause need not be so proximate as in individual negligence cases." *Id.* 347-48.
[47] Doc. #: 1255 (6/30/08 Memo Op on certification), at p. 11.

[48] *Id.*, at p. 12.

### III.   Glencore Should Not be Permitted to Rely on its Prior Misrepresentations

In parts (1.) and (2.) of its current Motion, Glencore asks this Court to dismiss the claims of the new class Plaintiffs by applying findings made pursuant to Glencore's prior Motion for Summary Judgment, that was granted and denied in part on August 10, 2007.[49]   On June 3, 2008 a new class with additional class members and a different definition of the class was certified.   The evidence cited herein proves that the Affidavit filed by Glencore in support of its prior Motion, decided before some members of the new class were before this Court, is false.   In the Motion at Bar Glencore relies on no new evidence and has failed to correct its false filing.   Instead, Glencore asks the Court to rely on the findings arising from the false information to dismiss the claims of a new class of Plaintiffs.   Justice requires that the Court refuse to consider the facts supplied by the Prusak Affidavit, and revisit those findings that were founded on Glencore's false affidavit.

The earlier Court ruled that "[i]n 1995, VIALCO Holdings sold its interest in VIALCO to a company called Century Chartering Company," relying solely on the false statements in Glencore's Affidavit.[50]   In fact, Century ALUMINUM Company, not Century CHARTERING Company, was the owner of the Vialco facility on St. Croix when it was sold in April 1995. [51]   The Court also found that "Century Chartering Co. is not affiliated with Glencore or any of its subsidiaries."[52]   Whether that fact is true or not is

---

[49]   Doc. No. 1125.

[50]   *Id.*, at p. 2, *citing* Prusak Affid at ¶ 6.

[51]   Exh 1 (Notes to Century Aluminum Co · 10-K · For 12/31/96), at p. 25.

[52]   *Id.*, at p. 2, *citing* Prusak Affid at ¶ 6.

irrelevant to the inquiry with regard to Glencore's interest in Vialco.[53]   The fact that is relevant, and was never provided to the Court, is that Century ALUMINUM Company, the real owner of Vialco, has admitted in its SEC filing that it was a wholly owned subsidiary of Glencore prior to April 1996.[54]   Finally, the prior Court found that Century Chartering Company was an entity allegedly unrelated to Glencore who sold Vialco's interests in the St. Croix alumina refinery to Alcoa On July 19, 1995.[55]   The Century ALUMINUM Company has admitted to a federal regulatory agency, the SEC, that it, not Century CHARTERING Company, sold the Vialco facility on July 24, 1995.[56]

Finally, Glencore falsely swore to the Court that it had no control over Vialco.[57] The real facts are that Vialco was so completely controlled by Glencore, that it was "transferred" among Glencore subsidiaries and "acquired" by them.  Century Aluminum admits that Ravenswood, the entity that "acquired" Vialco in April 1995 through "**a transfer of interests among companies under the common control of Glencore International**" was "**under the control of Glencore**" until 1996.[58]   The sale of "substantially all of Vialco's assets," including its "principal asset", the alumina refinery in

---

[53]   An internet search found no company named Century Chartering Company and no such company received the transfer in interest of Vialco as the documents evidence that the correct name of the company was Century Aluminum Company and it was Ravenswood who actually acquired the interest in Vialco.

[54]   Exh. 1 (Notes to Century Aluminum Co · 10-K · For 12/31/96), at p. 25.

[55]   Doc. No. 1125, at p. 2.

[56]   Exh. 1 (Notes to Century Aluminum Co · 10-K · For 12/31/96) at p. 25.

[57]   Exh. 6, at ¶¶ 7, 13 ("Glencore did not control VIALCO's spending," "Glencore did not control VIALCO's decision-making processes," and "Glencore did not establish VIALCO's policies or practices.")

[58]   *Id.*, at pp. 2, 25 ("[p]rior to 1996, Ravenswood and Berkeley operated as separate entities, under the control of Glencore") (emphasis supplied).

St. Croix in July 1995, was recorded on the books of Century Aluminum Company, rather than Vialco. [59]

None of this information was before the Court deciding Glencore's prior Motion for Summary Judgment because Glencore sent Plaintiffs on the proverbial "wild goose chase" looking for information on a company called "Century Chartering Company" that Plaintiffs have been unable to verify even exists.   Under these circumstances, it is entirely proper and fair for this Court to revisit the findings in the August 10, 2007 Order that rely on the false affidavit, and to deny Glencore the ability to rely on the same Affidavit in its new Motion or on the conclusions flowing from those findings.   Absent the pseudo-factual support of the Prusak Affidavit, Glencore cannot show that it is entitled to summary judgment on the newly certified class claims for injunctive relief.

The Order granting partial summary judgment is an interlocutory Order.  In *U.S. v. Jerry*, the Third Circuit plainly stated the governing legal principle: "so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so."[60]   Glencore can claim no prejudice as it has moved to reopen the Summary Judgment Order, and "once the judgment is reopened '[a] judge may enlarge the issues to be considered . . . '"[61]

---

[59]  *Id.*, at p. 25.

[60]  *United States v. Jerry*, 487 F.2d 600, 604-605 (3d Cir. 1973).  (citation omitted).

[61]  *E.E.O.C. v. United Ass'n of Journeymen and Apprentices*, 235 F.3d 244, 255 (6th Cir. 2000), *cert denied*, 534 U.S. 987, 122 S.Ct. 416 (Mem) U.S., 2001 (Keith, C,J., concurring), *citing Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986).

On June 3, 2008, the Court certified a new class of plaintiffs under Rule 23(b)(2) who seek remediation of the bauxite and red mud piles currently remaining at the St. Croix Alumina facility.[62]   The newly-certified class consists of consists of "persons who currently reside, work, and/or own property in the projects of Harvey and Clifton Hill and the estates of Barren Spot, Profit, Clifton Hill, and La Reine . . ." in contrast to the prior class which was confined to those who were there during Hurricane Georges in 1998.[63] The newly certified class includes different Plaintiffs who have not yet had their day in Court.  It would be a travesty of justice if this Court fails to re-examine the evidence in light of the proof that Glencore's affidavit was false as that affidavit was the foundation for much of the prior decision.

## IV.   The Real Evidence of Glencore's Control of Vialco is Sufficient to Avoid Summary Judgment

The 2007 Summary Judgment Court determined that "liability based on a nuisance claim can be maintained against a defendant even if the defendant sold the property" and held that there was a question of fact with regard to Vialco's liability as a former owner of the St. Croix alumina refinery site. [64]   Because Vialco had not been named as a defendant, the Court proceeded to analyze Glencore's derivative liability based on Glencore's representation that Glencore's only relationship to Vialco was as a "thrice-removed parent".[65]

---

[62]   Doc. No. 1255 (6/3/08 Order), at p. 25.  *See also Henry v. St. Croix Alumina, et al.*, Civil Action No. 1999-0036, 2009 U.S. Dist. LEXIS 31352 *3 (D.V.I. Slip Op. April 13, 2009) (acknowledging certification of "new class" on June 3, 2008).

[63]   *Id.*

[64]   *Id.*, at p. 11, *citing*  Section 373 of Restatement (Second) of Torts.

[65]   *Id.*, at pp. 11-14, 15-19.

The prior Court weighed Glencore's potential liability under an agency theory, where "'the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary.'"[66] "'The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities [and] [t]here must be 'exclusive domination and control . . . to the point that the [subsidiary] no longer has legal or independent significance of [its] own.'"[67]  The actual truthful evidence now before the Court establishes that Vialco was so completely under Glencore's control that Vialco had no legal or independent significance.  Vialco's shift to another wholly-owned Glencore subsidiary was labeled an "acquisition" and accounted for as a mere "transfer of interests" among the companies controlled by Glencore.[68]  Once Vialco was "acquired" by that other Glencore subsidiary, Ravenswood, "substantially all of Vialco's assets were sold" by Ravenswood's parent, Century Aluminum Company, not by Vialco.[69]

Against the backdrop of the real facts, the testimony of Mr. Paul Arnold confirms the Glencore control evidenced by the admissions of Century Aluminum Company.  He swears that Vialco had to obtain approval for some of Vialco 's most basic decisions, such as the salaries and benefits of its employees, and improvements at the at the

---

[66]  *Id.*, at p. 17, *citing Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 658 F.Supp. 1061, 1084 (D.Del. 1984).

[67]  *Id.*, *citing Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, 1992 WL 127567, *11 (Del. Ch. 1992) (emphasis supplied).

[68]  Exh. 1 (Notes to Century Aluminum Co · 10-K · For 12/31/96), at p. 2.

[69]  *Id.*

facility.[70]   Four to six times a year, Glencore representatives would inspect the St. Croix

facility, hold progress meetings and discuss budget issues.[71]   As the Human Resources

Manager for many years, these matters are well within his personal knowledge.

Moreover, the only performance of record pursuant to the eighteen million dollar

($18,000,000) indemnification agreement contained in the Acquisition Agreement is by

Glencore.[72]   When penalties were assessed for environmental conditions that plainly

existed pre-closing, Glencore Ltd., not Vialco, paid the bill directly.[73]   Glencore's

payment is proof of Glencore's continued control of the site.  The retention of liabilities

included a coexistent right of access to the site pursuant to the terms of the Acquisition

Agreement.  Further, Defendants have steadfastly refused to produce any evidence that

Vialco has ever performed under the indemnification provision.

Finally, in this Motion, Glencore does not dispute the Court's prior determinations

that the evidence of record was sufficient for a jury to conclude that Glencore knew or

had reason to know that it was unlikely that the bauxite it supplied to the would be made

reasonably safe "before being put to its expected use," and, further, that "a reasonable

jury could conclude that Glencore knew that the bauxite supplied to VIALCO and St.

Croix Alumina had a high probability of blowing into the surrounding neighborhoods due

---

[70]  Exh. 7 (7/22/05 Affidavit of Paul Arnold), ¶¶ 2, 3, 6.  Per the terms of the 8/10/7 Order, ¶¶ 4, 7, and 8 have been stricken.  *See* Doc No. 1125, at pp. 8, 9.

[71]  Exh. 7. ¶ 6.

[72]  *See*, Copies of receipt, check, and cancelled envelope (all bearing the name "Glencore, Ltd.", produced and identified by SCA as documents copied from DPNR), corresponding letter and invoice from DPNR files, Exh. 4.

[73]  Exh. 4 (DPNR penalty docs); Exh. 1 (10-K), at p. 25 ("Glencore Ltd. [was] a U.S. branch of Glencore AG, which in turn, [was] wholly-owned by Glencore.")

to the condition of the storage sheds, the fact that the red mud was stored outside in large mud piles, and the fact that the refinery was in a hurricane zone." On this basis, summary judgment based on Glencore's negligence as a supplier of bauxite was denied in the prior decision.[74] The same undisputed factual findings support a conclusion that Glencore's failure to remediate the nuisance, as it has a contractual right to do under the Acquisition Agreement, subjects it to liability.

## V.   Glencore's Motion for Summary Judgment based on Its Lack of Control of the Site Should be Denied

Glencore argues in parts (1.) and (3.) that because it never owned the alumina refinery it cannot be liable for cleaning it up, and even if it might have been liable at one time, sufficient time has passed for it to be absolved of any liability as a former owner. Upon consideration of the briefings on certification, the Court determined that "plaintiffs have alleged and shown that certain defendants may retain an ability or obligation to perform cleanup on the refinery property pursuant to a contractual right of entry."[75] Noting that "a full inquiry into the merits is inappropriate at the certification stage . . .," the Court refused to deny certification based on "a possibility that the desired equitable relief may eventually prove unavailable after the issue is fully litigated".[76]

The decision was correct. "[O]ne who creates a public nuisance cannot avoid liability by selling the property on which the nuisance was created."[77] "While the

---

[74] Doc. No. 1125, at pp. 27, 28.

[75] Doc. #: 1255 (6/30/08 Memo Op on certification), at p. 24.

[76] *Id.*

[77] *New York v. Solvent Chemical Co.,* 880 F. Supp. 139, 144 (W.D. N.Y. 1995) (cit om.) (applying New York law). *See also Northridge Co. v. W.R. Grace & Co.,* 556 N.W.2d 345, 351 (Wis. Ct. App. 1996)

Case: 1:99-cv-00036-HB   Document #: 1326   Filed: 07/24/09   Page 19 of 22

Henry v. St. Croix Alumina, LLC, et al., CIVIL NO. 1999/0036
PLAINTIFFS' OPPOSITION TO GLENCORE LTD'S MOTION FOR SUMMARY JUDGMENT ON CLASS CLAIM FOR
INJUNCTIVE RELIEF
Page 19

appellant cannot be compelled to go upon the premises of the defendants . . . and abate the nuisance, a warrant can be issued to the sheriff under the provisions of [state law] which would empower that officer to so enter upon such premises and abate the nuisance, a proportional part of the expense of which would be chargeable against appellant."[78]   Moreover, a party cannot escape liability by "creat[ing] his own inability" to comply with a court order.[79]

In our case, Glencore and the Alcoa have agreed to "cooperate with each other regarding any action called for or taken with respect to Pre-Closing Environmental Conditions (including, but not limited to, any investigation of and/or the initiation and/or implementation of any remediation with respect thereto) so that such actions are carried out in the most efficient cost effective manner which will not impede operations."[80]   The right of access specifically contemplates "any investigation of and/or the initiation and/or implementation of any remediation with respect thereto." Moreover, the retained liabilities cover all qualified claims that were filed by July 24, 2001.  The underlying lawsuit for the claims of the newly-certified class of Plaintiffs herein was commenced in the Territorial Court in February 1999 and removed to District Court in March 1999.[81]   With respect to the nuisance at issue here, Glencore's argument that it "cannot be

---

(quoting *Kamke v. Clark,* 67 N.W.2d 841, 843 (Wis. 1955)) ("The fact that the defendant cannot enter to abate the nuisance does not excuse his liability, for it is his own wrong which has involved him in trouble."

[78]  *Kamke v. Clark,* 67 N.W.2d 841, 843 (Wis. 1955).

[79]  *Piambino v. Bestline Products, Inc.,* 645 F. Supp. 1210, 1215 (S.D. Fla. 1986) (quoting *Air America, Inc. v. Hatton Bros., Inc.,* 570 F. Supp. 747, 750 (S.D. Fla. 1983) (further cit. om.)).

[80]  Exh. 2, at p. 15, § 8,4.

[81]  Doc. No. 943 (Magistrate's 3/29/06 Rprt. & Recomm), at p. 4, Finding 1.

ordered to remove red mud piles on property that it does not and has never owned or controlled" is irrelevant.[82]

The Court conducted no analysis of Plaintiffs' claims for nuisance vis-à-vis Glencore as an owner/operator of the refinery, but concluded that "[e]ven assuming Glencore owned and operated the refinery, Glencore never controlled the premises after it was sold to St. Croix Alumina and thus, had no opportunity, or authority to abate the storage or containment of the bauxite."[83]   The evidence filed herewith of Glencore's indemnification responsibilities and corresponding right of access was not before the Court on Glencore's prior Motion, and proves that Glencore did control the premises for the specific purpose of remedying the nuisance at issue here, the bauxite and mountains of red mud it left behind.

In parts (4.) and (5.) of Glencore's Motion, they simply state a legal conclusion unsupported by argument or evidence.  In Opposition, Plaintiffs rely on their Statement of Facts and Response Defendants Alcoa, Inc. and St. Croix Alumina, LLC's Motion for Summary Judgment on Plaintiffs' Class Claim for Injunctive Relief, including their Motion for a Stay pursuant to Fed. R. Civ. P. 56 (f), incorporated herein by reference.

**CONCLUSION**

Based upon the foregoing, and Plaintiffs' Statement of Material Facts, Glencore's Motion for Summary Judgment on Class Claim for Injunctive Relief should be denied.

---

[82]  Glencore Motion, at p. 3.

[83]  *Id.*, at pp. 29, 30 (emphasis added.)

Dated: July 24 2009                    Respectfully Submitted:


                                       BY:    s/Lee J. Rohn


                                            LEE J. ROHN
                                            ROHN & CARPENTER, LLC
                                            1101 King Street
                                            Christiansted, St. Croix
                                            U.S. Virgin Islands 00820-4933
                                            (340) 778-8855
                                            (340) 773-2954 (FAX)

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2009, a true and correct copy of the above and foregoing **Plaintiffs' Statement of Material Facts In Support of their Response to Defendants Alcoa, Inc. and St. Croix Alumina, LLC's Motion for Summary Judgment on Plaintiffs' Class Claims for Injunctive Relief** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Bernard C. Pattie, Esquire
Law Office of Bernard C. Pattie PC
1244 Queen Cross Street, Suite 5
St. Croix, VI 00820-4932
Attorney for St. Croix Alumina LLC and
Alcoa Inc.

Derek M. Hodge, Esquire
MacKay & Hodge
19A-20 Kongens Gade
P.O. Box 303678
St. Thomas, VI  00802
Attorney for Glencore, Ltd.

Gordon Rhea, Esquire
Richardson, Patrick Westbrook &
Brickman, LLC
1037 Chuck Dawley Blvd. Bldg A
Mt. Pleasant, SC 29464
Attorney for Plaintiffs

Laura Baughman, Esquire
Baron & Budd, P.C.
3102 Oak Lawn Ave.
Dallas, TX 75219-4281
Attorney for Plaintiffs

Lori E. Jarvis, Esquire
Hunton & Williams
River Front Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Attorney for St. Croix Alumina LLC and
Alcoa Inc.

Renè P. Tatro, Esquire
Tatro Tekosky Sadwick LLP
333 S. Grand Avenue, Suite 4270
Los Angeles, CA 90017
Attorney for Glencore, Ltd.

_s/_ _Lee J Rohn_ (sb)