IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JOSEPHAT HENRY, et al. | : | CIVIL ACTION |
| v. | : | |
| ST. CROIX ALUMINA, LLC, et al. | : | NO. 1999-0036 |

MEMORANDUM OPINION

Bartle, C.J.                                                          September 25, 2009

        The seventeen plaintiffs filed the instant lawsuit as a putative class action in February, 1999. The Third Amended Complaint (the "Complaint") alleges that as a result of Hurricane Georges, plaintiffs, who were then residents of St. Croix, suffered personal injuries and property damage due to exposure to hazardous materials stored on St. Croix by defendants St. Croix Alumina, LLC ("SCA") and Alcoa, Inc. ("Alcoa"), and transported there by defendant Glencore Ltd. ("Glencore"). Their pending claims against defendants include maintaining an abnormally dangerous condition, nuisance per se, public and private nuisance, negligent abatement, and negligence. Now before the court is the motion of defendants SCA and Alcoa for summary judgment on plaintiffs' class claim seeking injunctive relief for the "cleanup, abatement or removal of the substances currently present on the Refinery property."

        This court initially certified a class under Rule

23(b)(3) of the Federal Rules of Civil Procedure. Henry v. St. Croix Alumina, LLC, Civ. A. No. 1999-0036, 2000 WL 1679502 (D.V.I. Aug. 7, 2000). We later decertified that class and certified a new class seeking only injunctive relief related to an ongoing public nuisance under Rule 23(b)(2). Id., 2008 WL 2329223 (D.V.I. June 3, 2008).

We recently granted partial summary judgment in favor of the defendants on plaintiffs' non-class claims seeking compensatory and punitive damages for their personal injuries, as well as for all claims for negligent and intentional emotional distress and for punitive damages. Id., 2009 WL 2778011 (D.V.I. Aug. 28, 2009). We denied their motion with regard to plaintiffs' non-class property damages claims. Id. On September 14, 2009 we also entered judgment in favor of defendant Glencore Ltd. on plaintiffs' class claim for injunctive relief based on the prior judgment in favor of Glencore on all nuisance claims (Doc. No. 1346).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254

(1986). After reviewing the evidence, the court makes all reasonable inferences from the evidence in the light most favorable to the non-movant. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

The undisputed facts, and those viewed in the light most favorable to plaintiffs, are well-known to the parties and have been extensively set forth in our prior ruling on defendants' previous motion for summary judgment. See Henry, 2009 WL 2778011 (D.V.I. Aug. 28, 2009). In brief summary, plaintiffs are current residents of St. Croix in the United States Virgin Islands who live in the vicinity of the SCA Refinery Plant (the "Refinery"). In 1995, ownership of the Refinery was transferred from then-owner Vialco to defendant SCA, a subsidiary of defendant Alcoa.[1] The Refinery is currently owned by St. Croix Renaissance Group, LLC ("SCRG"), a non-party, and has not been in operation since 2002 at the latest.

For over thirty years, the single primary function of the Refinery was the extraction of commercially valuable alumina from bauxite, a reddish ore having the consistency of dirt or dust. This process resulted in a necessary byproduct known as "bauxite residue," also known as "red mud." It is indistinguishable in color from bauxite but otherwise has different physical and chemical properties. Red mud can be a

---

1. The Refinery ceased operations in January, 2001. The following year, SCA sold the Refinery to SCRG.

highly alkaline substance with extremely high pH.

In 1998, nearly ten thousand metric tons of bauxite awaited processing on the Refinery premises in a single large, A-frame structure roofed with steel paneling.  An even larger amount of red mud was "dry-stacked" in seven enormous, uncovered "cells" around the Refinery.

Hurricane Georges struck the island of St. Croix on September 21, 1998.  Existing meteorologic data to some extent charts the direction, intensity, and duration of the storm's winds and rains.  At some point during the hurricane, strong winds ripped portions of the steel roof from the bauxite shed.  Witnesses on the Refinery premises saw large amounts of bauxite being blown into the air.

In the days following the storm, the Virgin Islands Department of Environmental Planning ("DEP"), now the Department of Planning and Natural Resources ("DPNR"), received numerous reports from residents of neighborhoods adjacent to the Refinery that the storm had deposited tremendous quantities of a substance described as "red mud" onto their properties and into their cisterns which are the primary source of potable water for many residents of St. Croix.  DEP staff investigated residences and found "entire homes including porches and driveways discolored by a pink to reddish substance."  The only direct evidence concerning the chemical nature of that material, however, comes from post-hurricane testing conducted by the DEP and the

Environmental Protection Agency ("EPA"). Those agencies collected samples from thirty-three allegedly affected cisterns, including two belonging to plaintiffs. They concluded that "the red dust [deposited in the neighborhoods surrounding the Refinery] is in fact bauxite."

Plaintiffs seek injunctive relief mandating the "cleanup, abatement or removal of the substances currently present on the Refinery property" to abate the alleged public nuisance. Defendants argue that plaintiffs cannot meet their burden of proof on their claim for injunctive relief because they have failed to develop the necessary expert evidence. Defendants further contend that plaintiffs can point to no evidence in the record that demonstrates a continuing nuisance at the Refinery or what remediation might be required in order to abate any such nuisance.

In the alternative, defendants also argue that they, as prior owners of the Refinery, cannot be liable for a continuing nuisance since the current owners have had sufficient time to abate (Defs.' Br. at 7). The Virgin Islands has adopted the Restatement (Second) of Torts, which states that a former owner is liable for nuisance only "until the vendee or lessee discovers the condition and has a reasonable opportunity to abate it." <u>See</u> Restatement (Second) of Torts § 840A. SCRG purchased the property from SCA in 2002, at which time SCRG had knowledge of the condition of the red mud piles and the allegations that red

mud was dispersed during Hurricane Georges. Defendants contend that the six years since the sale constitute a reasonable opportunity for SCRG to abate any continuing nuisance at the Refinery.

Finally, defendants argue that the court should dismiss plaintiffs' claim under the doctrine of primary jurisdiction (Defs.' Br. at 17). This doctrine holds that "the doctrine of primary jurisdiction applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute." MCI Telecommc'ns. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1105 (3d Cir. 1995). Defendants urge the court to defer to the DPNR's primary jurisdiction over this matter because the technical and policy considerations fall squarely within DPNR's particular field of expertise.

We address first defendants' contention that plaintiffs have not produced sufficient evidence to prove the existence of a continuing nuisance. To defeat summary judgment, the plaintiff must come forward with "significant probative evidence tending to support the complaint." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The Restatement (Second) of Torts notes that "[t]he appropriateness of an injunction against a tort is determined *as of the time of the order or judgment* unless special

circumstances otherwise require." See Restatement (Second) of Torts § 935 (emphasis added). At this stage, plaintiffs must come forward with evidence tending to create a genuine issue of material fact that a nuisance has been continuing at the property.

Unfortunately for the plaintiffs, they have produced no record evidence tending to show that a continuing nuisance ever existed at the Refinery. Plaintiffs point to their Statement of Material Facts (Numbers 21 through 46, 58, 60, 84, 85, and 86), Exhibit 40 at IV(2) and (3), and Exhibit 53 as evidence that there remains a significant risk to the health and property of people living and working in areas close to the Refinery (Pls.' Br. at 15-16).[2] The majority of these "facts" merely purport to review the conditions at the Refinery prior to and immediately following Hurricane Georges. The only actual record evidence

---

2. The court cannot rely on plaintiffs' alleged facts themselves as evidence; plaintiffs must point to record evidence. We have examined the evidence which plaintiffs cite in their Statement of Material Facts for the numbered paragraphs indicated. Facts 21 through 38 describe events prior to Hurricane George, which have no bearing on whether a nuisance existed after the hurricane. Facts 39 through 43 reference Exhibit 40, the administrative decision of the DPNR in its action against SCA for release of bauxite residue from the red mud piles. Fact 44 references Doc. No. 943, the Magistrate Judge's Report and Recommendation dated March 29, 2006. Fact 45 references Doc. No. 187, this court's memorandum opinion originally granting class certification dated August 7, 2000. Fact 46 references Doc. No. 249, a court order clarifying the certified class dated January 26, 2001. These three court documents do not serve as evidence of an existing nuisance at the Refinery. Facts 58 and 60 reference Exhibit 83, a consent order between SCA and the DPNR. Fact 84 does not cite to any document. Plaintiffs' Statement of Material Facts does not contain a Number 85 or 86.

that plaintiffs have pointed to are Exhibits 40, 53, and 83.

Exhibit 40 is the DPNR's October 21, 1998 Notice of Violation and Order for Corrective Action, in which DPNR found that SCA released "fugitive [bauxite] emissions" from the Refinery during Hurricane Georges. This evidence proves nothing regarding the existence of any continuing nuisance *after* the hurricane subsided.

Exhibit 53 is SCA's statement of undisputed facts in a breach of contract suit between it and SCRG, the later purchaser of the Refinery. The defendants stated, as undisputed facts, that Geraghty & Miller, Inc. was retained by Alcoa in June 1995 to conduct an environmental assessment of the Refinery (Pls.' Ex. 53 at 6). The resulting report, produced in November 1995, noted that erosion may allow red mud and bauxite to migrate away from the containment areas (Pls.' Ex. 53 at 7). In the Statement of Facts, SCA contended that the report, given to SCRG as due diligence, provided notice to SCRG of the "open and obvious" condition of the red mud disposal area (Pls.' Ex. 53 at 8). These assessments, conducted *prior to* Hurricane Georges, provide no relevant evidence as to any continuing nuisance *after* the hurricane.

Exhibit 53 also notes that in 2002 SCRG representatives found what they believed to be red mud that had migrated from the Refinery into the Caribbean Sea, as well as evidence of groundwater with elevated pH. Plaintiffs rely on this later red

mud exposure as evidence that there is a continuing nuisance at the Refinery. This contention is unavailing. While Exhibit 53 may indicate that red mud continues to leave the Refinery, it does not indicate that any emissions continue to create a nuisance on *plaintiffs'* properties.

Exhibit 83 is a consent order between DPNR and SCA, whereby SCA agreed to pay a $20,000 civil penalty for a release of red mud in stormwater ditch near the coastal zone. Similarly, this evidence does not prove a nuisance regarding bauxite or red mud emissions into the plaintiffs' homes. The consent decree relates to red mud sediment in stormwater that ran through a wetlands and into the sea. It has no relevance to whether red mud or bauxite continues to affect plaintiffs' properties. The consent decree, moreover, admits no liability on the part of SCA. The evidence that plaintiffs present is inadequate to defeat defendants' motion for summary judgment.

Recognizing the lack of evidence regarding a continuing nuisance, plaintiffs ask the court to allow further discovery now that the court has recertified an injunctive class. Their argument that the recertification prompts a new discovery period is unavailing. As defendants correctly point out, plaintiffs' claim for injunctive relief was present in their original complaint when it was filed in 1999.

Plaintiffs have had ample opportunity for both factual and expert discovery throughout this ten-year litigation. The

original scheduling order, dated July 15, 1999, set factual discovery to be completed by January 15, 2000, nearly ten years ago (Doc. No. 40).  Factual discovery was extended at least twice, allowing plaintiffs to continue discovery until May 1, 2002 - a factual discovery period of nearly three years (Order dated Mar. 20, 2002, Doc. No. 416).  Expert discovery remained open even longer.  On September 20, 2001, the court set the deadlines for plaintiffs' and defendants' expert reports as February 28, 2002 and May 30, 2002, respectively (Doc. No. 340).  Expert depositions were to be completed by July 31, 2002.  The court extended the time period for plaintiffs' expert reports on six separate occasions (Doc. Nos. 340, 432, 451, 455, 502, and 507).  Plaintiffs were not required to file their expert reports until September 30, 2003 - more than four years after the onset of this litigation.  In addition, plaintiffs were given until May 16, 2005 to produce expert testimony to serve as rebuttal to defense experts (Doc. No. 768) and allowed to incorporate a late-produced 1995 Site Assessment into their reports in 2007 (Doc. No. 1124).

In sum, the court has been exceedingly patient in allowing extensions of the discovery period in this case.  Plaintiffs have had countless opportunities to produce evidence tending to show a continuing nuisance at the Refinery after Hurricane Georges.  They have not done so.  Fact discovery has been closed for over four years.  It is now too late to open it

up. It is time to move this action to a conclusion.

Plaintiffs cannot point to any evidence produced in the years of discovery that constitutes significant probative evidence tending to support a continuing nuisance after the hurricane abated. Given the lack of evidence presented by plaintiffs, the court need not address defendants' arguments regarding liability under § 840A of the Restatement (Second) of Torts or the doctrine of primary jurisdiction.

Accordingly, we will enter summary judgment in favor of defendants Alcoa and SCA on plaintiffs' class claims for injunctive relief.